## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

**PATRICK JOSEPH CHAREST,**
    **Plaintiff,**

        **Vs.**                   **Case #2:07-cv-984-MHT**

**ALABAMA BOARD OF**
**PARDONS & PAROLES, et al.,**
    **Defendants.**

## ANSWER OF
## ALABAMA BOARD OF PARDONS & PAROLES
### And Defendants
## WILLIAMS, WEATHERLY and LONGSHORE

Comes now the Alabama Board of Pardons & Paroles, and members thereof, named as Defendants in this action, and shows unto the Court as follows:

1)     Defendant is an agency of the State of Alabama. As such, it is immune from suit in the courts of the United States pursuant to the Eleventh Amendment of the U.S. Constitution.

2)     As an agency of the State of Alabama, Defendant is not a "person" subject to liability under 42 U.S.C. §1983, *Will vs. Mich. Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). The Complaint fails to state a claim upon which relief may be granted.

3)   The first ground averred in the Complaint fails to allege sufficient facts from which the existence of a conspiracy may fairly be inferred, and the averments of the Complaint fail to allege sufficient facts to put any Defendant on notice of the charges they are to defend against.

4)   To the extent that Plaintiff seeks to allege that he was deprived of liberty without due process when he was denied parole, the Complaint fails to state a claim upon which relief may be granted, in that the law is well-settled that he does not enjoy a liberty interest in his desire to be paroled and in that the Constitution does not require that discretionary parole consideration processes be fair, S*locum v. Georgia State Board of Pardons and Paroles*, 678 F.2d  940, 942 (11th Cir.1982); *O'Kelley vs. Snow,* 53 F.3d 319 (11th Cir. 1995).

5)   The Complaint fails to state a claim against the Board for knowingly relying on false information, *Jones vs. Ray,* 279 F.3d 944 (11th Cir. 2001).

6)   The Complaint fails to state a claim under the Equal Protection Clause, in that the Complaint fails to identify similarly situated persons who are treated dissimilarly, and in that the only

classifications described in the Complaint are rational classifications of persons who are dissimilarly situated. In other words, it is rational for the State of Alabama to treat violent felons differently than offenders without a history of violence. Ground Two of the Complaint fails to state a claim upon which relief can be granted, *Jones vs. Ray,* 279 F.3d 944 (11th Cir. 2001).

7)    The *ex post facto* claim is barred by the applicable statute of limitations, in that the Complaint shows that Plaintiff knew or should have known in 2002 that the new guidelines for scheduling further parole consideration would apply to him, *Lovett vs. Ra,* 327 F.3d 1181 (11th Cir. 2003); *Porter vs. Ray,* 461 F.3d 1315 (11th Cir. 2006); *Brown vs. Ga. Bd. of Pardons & Paroles,* 335 F.3d 1259 (11th Cir. 2003).

8)    The Complaint fails to state a claim under the *Ex Post Facto* Clause of the Constitution, as there are no averments from which it may fairly be inferred that Plaintiff would have been likely to have been released from prison earlier under the former scheduling guidelines than under the current guidelines. Under both the former system and the current system, further consideration is scheduled by the Board after reviewing the file and hearing from persons

addressing the Board in its public meeting. The scheduling decision, like the actual decision to release or not, is highly discretionary and is highly dependent on the Board's assessment and prediction of a prisoner's future conduct.

9) Defendant denies that Plaintiff has been deprived of any right, privilege or immunity protected under the Constitution or laws of the United States.

10) Defendant denies that any changes in the Board's Operating Procedures have worked to increase the punishment that Plaintiff will endure for his life sentences on his convictions for rape first degree and sodomy first degree.

11) Defendant avers that, at all times relevant to this case, Alabama statutes have authorized the Board to exercise complete discretion in determining whether and when each individual prisoner may be released on parole, §15-22-24(a), Ala. Code.

12) Defendant denies entering into any conspiracy or agreement with any other Defendant or any other person to deprive Plaintiff of any rights protected under the laws of the United States or the laws of Alabama.

13)    Defendant denies all the material averments of the Complaint, and demands strict proof thereof.

14)    Defendant acknowledges that Plaintiff has served more than ten years on his life sentences, and that a majority of the Board could grant parole, pursuant to §15-22-28(e), Ala. Code, if persuaded that parole was consistent with society's welfare, as provided in §15-22-26, Ala. Code. However, no member of the Board is persuaded that parole is appropriate, or that it is likely to become appropriate in the near future.

15)    The Board's Operating Procedures provide a mechanism for earlier parole consideration if Plaintiff's circumstances change. However, as of 6 December 2005, the Board was of the opinion that further consideration should be scheduled on the December 2010 docket.

16)    Defendant expressly denies that Alabama statutes prohibit the Board from receiving information regarding a prisoner from persons other than those entitled to statutory notice of parole consideration. To the contrary, Defendant avers that Alabama law encourages the Board to receive information from as many sources as possible, and to assess the credibility and relevance of that

information in deciding whether release of the prisoner is compatible with society's welfare.

17)    Defendant expressly denies that Plaintiff has a right to be considered for parole at any particular time.

18)    Defendant Williams is no longer a member of the Board, and has no "official capacity" in which to take future actions regarding parole. No justiciable controversy exists between Williams and the Plaintiff as to potential prospective relief, as Williams could take no action benefiting Plaintiff even if ordered to do so.

19)    Neither Williams, Weatherly nor Longshore participated in the meeting on 6 December 2005 when Charest was considered for parole. At that time, the Board had four special members in addition to the three regular members, and sat in panels of three members each. The terms of the special members have expired.

WHEREFORE, premises considered, the Alabama Board of Pardons & Paroles moves the Court to dismiss the Complaint and to enter judgment in its favor.

Respectfully submitted,

TROY KING
ATTORNEY GENERAL

GREGORY O. GRIFFIN, SR.
CHIEF COUNSEL

s/HUGH DAVIS
DEPUTY ATTORNEY GENERAL
State Bar#: ASB-4358-D63F
Ala. Bd. Pardons and Paroles
301 South Ripley Street
P.O. Box 302405
Montgomery, Alabama 36130
Telephone: (334) 242-8700
Hugh.davis@paroles.alabama.gov

## CERTIFICATE OF SERVICE

I hereby certify that on 1-10-08, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to the following:

Joseph Patrick Charest AIS#182262
Limestone Correctional Facility
28779 Nick Davis Road
Harvest, Alabama 35749-7009

Done this 10th day of **JANUARY**, 2008.

Respectfully submitted,

s/HUGH DAVIS
DEPUTY ATTORNEY GENERAL
State Bar#: ASB-4358-D63F
Ala. Bd. Pardons and Paroles
301 South Ripley Street
P.O. Box 302405
Montgomery, Alabama 36130
Telephone: (334) 242-8700
Hugh.davis@paroles.alabama.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

PATRICK JOSEPH CHAREST,
     Plaintiff,

        Vs.                           Case #2:07-cv-984-MHT

ALABAMA BOARD OF
PARDONS & PAROLES, et al.,
     Defendants.

SPECIAL REPORT OF
ALABAMA BOARD OF PARDONS & PAROLES
And Defendants
WILLIAMS, WEATHERLY and LONGSHORE

Comes now the Alabama Board of Pardons & Paroles, named as a

Defendant in this action, and shows unto the Court as follows:

CLAIMS PRESENTED

Plaintiff attempts to plead claims under the Due Process Clause, the

Equal Protection Clause, and the *Ex Post Facto* Clause of the Constitution.

The Due Process claims attempt to incorporate both procedural due process

and substantive due process claims. In other words, Plaintiff claims that the

procedures were unfair, and deprived him of liberty without due process, and

he claims that the Board relied on false information to deny parole. The

allegedly false information is a statement by some person to the effect that

Charest has not changed during the years he has been in prison. Charest also

1

claims that he has been treated differently than unspecified persons whom he contends were similarly situated. However, he also complains that he is treated differently than prisoners who did not commit violent crimes. Charest also complains that the Parole Board changed its rules in 2002, so as to change the frequency of parole consideration after parole is denied the first time.

## DEFENSES

## Sovereignty

The Eleventh Amendment of the U.S. Constitution prohibits Plaintiff from prosecuting this action against the State of Alabama. The Board of Pardons and Paroles is an arm of the State of Alabama, and is not subject to suit.

Furthermore, the State of Alabama is not a "person" that can be liable under 42 U.S.C. §1983, *Will vs. Mich. Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Even if the Board were not immune, it could not be sued under §1983, as that statute creates a cause of action only against "persons" who act under color of State law. The U.S. Supreme Court has expressly held that States are not persons within the meaning of the statute on which Plaintiff relies.

2

Williams has retired, upon expiration of his term. Neither he nor Longshore nor Weatherly participated in the parole consideration hearing. The special members of the Board who served on the panel hearing this case left office at the end of September 2006, upon expiration of their terms. These Defendants have no personal knowledge of the facts surrounding the 2005 hearing underlying the Complaint.

Plaintiff does not seek monetary damages against the Members of the Board. Immunity defenses to such claims are reserved.

### Due Process

Alabama law does not establish a liberty interest in the desire to be released on parole. That desire is not protected by due process, *Thompson vs. Ala. Bd. of Pardons & Paroles,* 806 So. 2d 374 (Ala. 2001). The Constitution does not require a "fair" process to decide whether to grant discretionary parole, S*locum v. Georgia State Board of Pardons and Paroles*, 678 F.2d 940, 942 (11th Cir.1982); *O'Kelley vs. Snow,* 53 F.3d 319 (11th Cir. 1995). Plaintiff simply cannot state a claim for procedural due process violations when he does not enjoy a liberty interest protected by due process.

Plaintiff also seeks to present a substantive due process claim under *Monroe vs. Thigpen,* 932 F.2d 1437 (11th Cir. 1991). To make out such a

3

claim, he must identify some information that is in fact false, that the Board knew to be false, and that the Board relied upon in denying parole, *Jones vs. Ray,* 279 F.3d 944 (11th Cir. 2001). The alleged statement Plaintiff has identified appears, in the context in which he presented it, to be a statement of someone's opinion rather than a statement of fact. It is not susceptible of being proven clearly true or false. In any event, he has not alleged that the Board *knew* the statement to be false. The gist of his complaint is that he believes the Board could have and should have adopted further procedural safeguards to determine whether the statement was true.

Even reading these averments as generously as possible, Plaintiff fails to state a claim upon which relief can be granted.

## Equal Protection

The Complaint alleges that Plaintiff, who is serving life sentences for rape first degree and sodomy first degree, is treated differently than prisoners convicted of less serious crimes. He is simply not similarly situated to any such person. It is rational for the State of Alabama to treat violent offenders differently than less serious offenders. The Constitution does not prohibit dissimilar treatment of dissimilarly situated persons.

Plaintiff's conclusory averment that he is treated differently than similarly situated persons is not sufficiently specific to state a claim. He

simply fails to identify or describe a class of prisoners who can reasonably be considered to be similarly situated. In the absence of more specific factual averments, this ground fails to state a claim upon which relief can be granted, *Jones vs. Ray, supra.*

### Ex Post Facto

The *ex post facto* claims should have been presented within two years after Plaintiff knew or should have known that the 2002 amendments to the Board's guidelines could apply to Plaintiff, *Lovett vs. Ra,* 327 F.3d 1181 (11th Cir. 2003); *Porter vs. Ray,* 461 F.3d 1315 (11th Cir. 2006); *Brown vs. Ga. Bd. of Pardons & Paroles,* 335 F.3d 1259 (11th Cir. 2003).

The amendments at issue have been highly controversial for several years. There have been dozens of cases litigated over this issue, and there have been many news articles published over this issue. The three-year set-off guideline was first extended to five years in 2002, in a highly publicized meeting of the Board. This particular provision was the focus of animated debate during that meeting. The Board published its 2002 Operating Procedures on its internet website shortly after adopting the new guidelines. The subsequent amendment of these guidelines in 2004 was designed to improve the likelihood of a prisoner being given earlier consideration if appropriate circumstances arose. These guidelines are currently published on

the Board's website. It is difficult to imagine any Alabama prisoner not realizing, before the end of 2004 at the latest, that the Board had acted in early 2002 and again in early 2004, to amend the scheduling guidelines to extend the set-off window from three years to five years. The Board most recently amended and republished its Operating Procedures in February of 2004, but without extending the set-off window any further.

In designing the challenged provisions, the Board carefully followed the guidance of *Garner vs. Jones,* 120 S.Ct. 1362 (2000). The provision Plaintiff challenges is Art. VI, §11 of the Board's Operating Procedures. That provision reads as follows:

> 11. If parole has been denied, the Board shall determine whether and when the case shall next be docketed for consideration, not to exceed five (5) years. The case will be considered again as near as practicable to the specified month and year.

However, that provision must also be read in light of the provisions in Article II pertaining to rescheduling of consideration. The Board specifically provided that prisoners who had been set off longer than three years (which had been the longest set-off the Board used) should have an avenue available to get back on an earlier docket if circumstances changed. Article II establishes an organized review process to consider whether circumstances have changed that would warrant consideration earlier than otherwise scheduled. Art. II, §7 provides as follows:

7.   If the Board has denied or revoked parole, and scheduled the next consideration three years or more after denial or revocation, the Committee may consider earlier scheduling, but such review shall not begin earlier than eighteen months after the Board has denied or revoked parole.

The original version of this provision referred to cases scheduled *more than three years* after denial, and allowed the Review Committee to take these cases up *twenty-four months* after denial. The current version addresses cases set off "three years or more" and allows for further review after eighteen months.

Sections 2 and 5 of Article II also provide extraordinary means of bringing cases back on the docket, without regard to any minimum time periods established in the Board's Operating Procedures. The current version of the Operating Procedures, adopted in February of 2004, can be found on the Board's website at http://pardons.state.al.us/ALABPP.

The simple truth, as unpleasant as it may be for Plaintiff, is that very few sex offenders are ever paroled, and those who are paroled usually spend significant time in prison before being released. This is consistent with §15-22-26, Ala. Code, in that it is difficult for the Board to say with any degree of confidence that they are persuaded that sex offenders are likely to obey the law in the future or that their release is compatible with society's welfare. As a practical matter, it is even more difficult to persuade the Board

that a prisoner presents an acceptable risk when he is an adult who raped and sodomized a teenager. Charest was convicted of raping and sodomizing a sixteen-year old girl who became intoxicated with beverages he had provided.

It is highly unlikely that Charest would be any more likely to be released in 2008 than he would be in 2010. He has not pled any facts that would support an inference that he is likely to be released if considered earlier. If his circumstances have materially changed, the Board has procedures in place whereby those changed circumstances can be weighed against the very heavy negative circumstances of his case.

Plaintiff is serving life sentences for his crimes. He is not entitled to be released, and he is not entitled to be considered for release at any particular time. The Board has broad discretion to determine whether and when his release is compatible with society's welfare. If he is released on parole at all, he will have received a gift from the bounty of the State's mercy. His sentence was lawful and just, and we cannot say that his punishment is undeserved. It is conceivable that, at some point in the future, he may persuade a majority of the Board that he presents an acceptable risk. At this point, however, there is no reason apparent to the Board that this time

will come soon. In any event, the Board intends to periodically review his case to see whether his circumstances change for the better.

## Conspiracy

The Complaint contains conclusory allegations that a conspiracy exists between the Board, the Attorney General, and the nonprofit corporation known as VOCAL. There are no facts averred to support that conclusion. There are no facts to support that conclusion, which is simply erroneous.

## EVIDENTIARY MATERIALS

Attached hereto are copies of the following documents:

1)   Board order dated 6 December 2005;
2)   Board Operating Procedures, effective 23 February 2004;
3)   Affidavit of VeLinda Weatherly; and
4)   Affidavit of Robert Longshore;

## CONCLUSION

Plaintiff has sued the State of Alabama, which is immune from suit. The State is not a person subject to §1983 liability. Mr. Williams' term on the Board ended and he retired from State service at the end of June, 2007. He no longer has any "official capacity" with relation to the Board, and can take no action benefiting Plaintiff. Neither Williams, Weatherly nor Longshore participated in the meeting in which Charest was considered for parole. The terms of the special members serving on that panel have expired.

Even if the Complaint is read to name the members of the Board as Defendants, his factual averments are inadequate to state any claim. He does not enjoy a liberty interest protected by procedural due process, and his substantive due process claim is fatally flawed. The allegedly false statement is an opinion, rather than a fact, and he cannot establish that the Board knew this statement was false. His equal protection claim is equally flawed. He is not entitled to be treated the same as less serious offenders, and he has not identified a person or class of similarly situated offenders who were treated better than he. His *ex post facto* claim should have been presented years ago. Even if he could evade the two year limitations period, he simply cannot show that he is likely to suffer enhanced punishment as a result of the 2002 amendment of the Board's scheduling guidelines.

The Board respectfully moves the Court to enter judgment in its favor and to dismiss this action.

Respectfully submitted,

TROY KING
ATTORNEY GENERAL

GREGORY O. GRIFFIN, SR.
CHIEF COUNSEL

s/HUGH DAVIS
DEPUTY ATTORNEY GENERAL
State Bar#:  ASB-4358-D63F
Ala. Bd. Pardons and Paroles
301 South Ripley Street
P.O. Box 302405
Montgomery, Alabama 36130
Telephone: (334) 242-8700
Hugh.davis@paroles.alabama.gov


## CERTIFICATE OF SERVICE


I hereby certify that on 1-10-08, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to the following:


Joseph Patrick Charest AIS#182262
Limestone Correctional Facility
28779 Nick Davis Road
Harvest, Alabama 35749-7009


Done this 10th day of **JANUARY**, 2008.


Respectfully submitted,

s/HUGH DAVIS
DEPUTY ATTORNEY GENERAL
State Bar#:  ASB-4358-D63F
Ala. Bd. Pardons and Paroles
301 South Ripley Street
P.O. Box 302405
Montgomery, Alabama 36130
Telephone: (334) 242-8700
Hugh.davis@paroles.alabama.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

**PATRICK JOSEPH CHAREST,**
**Plaintiff,**

**Vs.**                                    **Case #2:07-cv-984-MHT**

**ALABAMA BOARD OF**
**PARDONS & PAROLES, et al.,**
**Defendants.**

**AFFIDAVIT OF**
**Defendant**
**Robert Longshore**

Comes now Robert Longshore, a member of the Alabama Board of
Pardons & Paroles, named as Defendant in this action, and shows unto the
Court as follows:

"My name is Robert Longshore. I am a member of the Alabama
Board of Pardons & Paroles, appointed and confirmed as provided in §15-
22-20, Ala. Code. This Board currently consists of three members. The
Legislature temporarily expanded the Board in 2003 to include four special
members, so that two panels could meet at the same time in different places.
The terms of the special members expired and the positions were abolished
on 30 September 2006.

"On 6 December 2005, a panel of special members met to consider whether to parole Patrick Charest. I was not present and did not participate in that meeting. I cannot discern from our file any basis for believing that those members relied on anything that they knew to be false in making their decision.

"I do not know whether any person at that meeting expressed the opinion that Charest had not changed while in prison. If such a statement was made, I do not know the context of the opinion, or the facts relied on by the speaker. If I had not been told of this lawsuit, I don't believe I would have been aware that this opinion had been expressed, and I still don't know whose opinion this is supposed to reflect.

"I don't know of any prisoner similarly situated to Charest who has been treated more favorably than he has. We try to evaluate each prisoner as an individual, with an eye toward all his circumstances, as we attempt to predict whether he is likely to succeed on parole. With that in mind, we try to be open to receive information from any available source, and we try to use good judgment in deciding which information is credible and reliable. Some information is politely listened to, but disregarded as unreliable. This is especially true of opinions. We are more interested in the facts underlying

opinions than we are in the opinions of people seeking to influence our decisions.

"It is not easy to form the opinion that certain prisoners present an acceptable likelihood of success. It is especially difficult if the offender has committed a very serious crime, as the consequences would be serious if he repeated that error. Nevertheless, we try to ensure that each prisoner is reviewed periodically, to reduce the risk that we might fail to notice a significant change in his circumstances. It is sometimes difficult to strike an effective balance between the frequency of review and the thoroughness of review. As the prison population has grown, the Board has tended to directly review the less likely candidates less frequently, so that we could spend more time reviewing the better candidates for parole. However, we have remained sensitive to the possibility that an apparently unlikely prisoner might experience a significant change in circumstances that could make him a better candidate for parole. For this reason, the Board has established a review committee, made of experienced staff members, to review cases like this. The Board has authorized the review committee to put cases on the Board's docket earlier than the scheduling guidelines or the Board's orders provide for, if there is a good reason for doing so. The Board consciously chose to delegate broad discretion to review committee, so as to allow the

committee to take appropriate action in cases that cannot, by definition, be anticipated and characterized by rigid rules.

"I did not participate in the 2005 hearing regarding Charest. After reviewing our file, I cannot see any obvious defect or error in the decisions made by the panel. I am not forming an opinion as to whether I would ever vote to parole this prisoner, because I have not heard all that may be said in a public meeting after notice, and I have not had the benefit of my colleagues' views in deliberation. However, I see no reason on the surface to believe that Charest would be more likely to be released in 2008 than in 2010 or later. The crimes he committed are serious enough to warrant caution in considering whether and when to grant parole. If I am on the Board when he is considered for parole, I will be cautious in weighing his likelihood of success on parole."

ROBERT P. LONGSHORE
ASSOCIATE MEMBER

SWORN TO AND SUBSCRIBED before me this _10th_ day of
_January_____ 2008.

NOTARY PUBLIC
Commission Expires: _10/10/08_

4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

**PATRICK JOSEPH CHAREST,**
    **Plaintiff,**

      **Vs.**　　　　　　　　　　　　　**Case #2:07-cv-984-MHT**

**ALABAMA BOARD OF**
**PARDONS & PAROLES, et al.,**
    **Defendants.**

### AFFIDAVIT OF
### Defendant
### VeLinda Weatherly

Comes now VeLinda Weatherly, a member of the Alabama Board of Pardons & Paroles, named as Defendant in this action, and shows unto the Court as follows:

"My name is VeLinda Weatherly. I am a member of the Alabama Board of Pardons & Paroles, appointed and confirmed as provided in §15-22-20, Ala. Code. I did not participate in the meeting of the second panel of the Board on 6 December 2005, when Patrick Charest was considered for parole. It appears that the panel considering this case was made up of special members. I do not have personal knowledge of what was said, or by whom, at this meeting.

1

"The statute authorizing and establishing the positions of special members of the Board expired on 30 September 2006. After that date, the office of special member ceased to exist.

"I am not aware of any information relied on by the panel that is obviously false. As a matter of practice, we do not rely on information that we consider unreliable. Other than the averments in the Complaint, I am not aware of any allegation that any person told the panel that Charest had not changed while he was in prison. Although we hear a lot of opinions, we try to look past the opinions to the underlying facts, so that we can form our own opinion as to the suitability of a particular prisoner for parole. I would not be inclined to give much weight to any opinion communicated to the Board unless I could see that the speaker had an opportunity to observe and could relate facts supporting the opinion.

"It is our practice to receive and consider information from as many sources as possible, and to weigh the credibility of that information. We assign officers to investigate and report on the circumstances of the crimes resulting in prison sentences. These officers also investigate and report on the prisoner's personal and social history and his prior criminal history. We also send officers into the prisons periodically to interview prisoners regarding their adjustment in prison, changed circumstances, and other

2

issues. These officers also check prison records to glean information regarding the prisoner's efforts and progress. We also ask wardens to report on prisoners' progress.

"We receive mail from any source regarding any case. Prisoners and their families and friends frequently write to us to report on completion of programs and other issues bearing on suitability for release. We also receive mail from others, some of whom are public officials or victims entitled by law to express their views, and some of whom simply believe they have some information that might be helpful. In any event, the information is retained in the file so the Board can determine whether it is credible and reliable.

"Before considering whether to release a prisoner, Alabama law requires this Board to send written notice of the consideration meeting to certain individuals, who have the right to express their views. The Board does not censor their expression, but exercises judgment and discretion in deciding what information should be relied upon.

"I have looked at our file regarding Patrick Charest. I don't see anything indicating that the panel relied on information that was known to be false. It would be inappropriate for me to try to resolve at this time my own belief on this point. It would be better for me to wait until I have heard

from all concerned and until I have had an opportunity to deliberate with my colleagues in a properly noticed meeting.

"This Board tries to separate prisoners into reasonable categories for purposes of scheduling parole consideration. We look at the nature of the crimes, the length of the sentence, prior criminal history, social history, ties to the community, and similar factors to determine when a prisoner should be scheduled for consideration. As we consider individual cases, we examine the individual's behavior and character in an effort to predict his future likelihood of success.

"Charest is a member of a class of prisoners who are difficult to parole. It is very difficult for members of the Board to conclude that a rapist is likely to obey the law in the future, or that his release would not be incompatible with society's welfare. We are concerned both with the likelihood that such an offender would re-offend and with the seriousness of the harm that could ensue if he did so.

"I cannot say that Charest would be any more likely to be paroled in 2008 than he would be in 2010 or later. Whenever the Board considers him for parole, it will take two members of the panel or a majority vote in favor of granting Charest parole.

The Board tries to ensure that no prisoner is forgotten. Our Operating Procedures call for periodic re-examination of each case, even those that appear unlikely ever to be paroled. This practice recognizes the possibility that circumstances may change for the better. For years, we scheduled the most difficult cases for re-examination within three years. We learned that a significant number of these cases did not change significantly within such a short time, so we extended that period to five years. We also set up a process so that prisoners who had been set off five years could be re-examined more frequently if a significant change occurred in his circumstances. This process was changed in 2002, to allow for the five-year set-off, and changed again in 2004, to allow such cases to be re-examined by the staff within eighteen months after the Board's action.

"I do not know of any person similarly situated to Charest who has been treated more favorably than he has. Of course, since each prisoner is a unique person, it is difficult to say that any two prisoners are truly comparable to one another. There are always unique factors, which may weigh in favor of or against the grant of clemency."

**VELINDA A. J. WEATHERLY**
**BOARD MEMBER**

5

**SWORN TO AND SUBSCRIBED** before me this _9th_ day of _January_
2008.

_Luietta Rhodes_
**NOTARY PUBLIC**
**Commission Expires:** _10/10/08_

6