# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

**PATRICK JOSEPH CHAREST,**
  **Plaintiff,**

    **Vs.**        **Case #2:07-cv-984-MHT**

**ALABAMA BOARD OF**
**PARDONS & PAROLES, et al.,**
  **Defendants.**

### RESPONSE OF
### Defendant
### LONGSHORE to PLAINTIFF's DISCOVERY REQUESTS

Comes now Robert Longshore, named as Defendant in this action, and shows unto the Court as follows:

### ANSWERS TO INTERROGATORIES

1)  My name is Robert Longshore. My business address is 300 South Ripley Street, Montgomery, Alabama. I **OBJECT** to the request for my date of birth and social security number, as disclosure of that information is unlikely to result in the discovery of admissible evidence in a §1983 claim alleging that parole procedures are somehow unconstitutional.

2)  **OBJECTION.** This interrogatory is unlikely to lead to the discovery of admissible evidence in a case predicated on a claim

that parole procedures somehow deprive the plaintiff of some right protected under the laws of the United States. I am eligible to hold office, and in fact hold office under the laws of the State of Alabama.

3) **OBJECTION.** This interrogatory is unlikely to lead to the discovery of admissible evidence in a case predicated on a claim that parole procedures somehow deprive the plaintiff of some right protected under the laws of the United States. I am eligible to hold office, and in fact hold office under the laws of the State of Alabama.

4) I have been employed by the Board of Pardons & Paroles continuously since July 1, 2005. Prior to that, I served on this Board as an interim appointee from October 16, 2003 to January 23, 2004. I retired from the position of Chief U.S. Probation Officer, Middle District of Alabama, on December 31, 2000. Between these periods of employment, I worked as a college instructor and contract investigator. Similar lawsuits are a matter of public record, and are as readily accessible to the plaintiff as to the defendants. It would be unduly burdensome for these defendants to make copies of litigation files for the plaintiff.

a)    Any contacts pertaining to any particular prisoner, or any particular applicant for pardon or remission, are part of the file pertaining to that person. Pursuant to Alabama law, the Board is not allowed to disclose any such document, §15-22-36(b), Ala. Code, as the Board's file is subject to an absolute and mandatory privilege, *Ex Parte Ala. Bd. of Pardons & Paroles,* 814 So. 2d 870 (Ala. 2001).

5)    **OBJECTION.** This interrogatory proceeds from the false assumption that *Greenholtz vs. Inmates of Nebraska,* 442 U.S. 1, 99 S.Ct. 2100 (1979), and *Wilkinson vs. Dotson,* 544 U.S. 74, 125 S.Ct. 1242 (2004), confer substantive constitutional rights on prisoners in Alabama. It is clear that *Greenholtz* does not apply to Alabama, as Alabama's discretionary parole system does not create a liberty interest in the mere desire to be paroled, *Thompson vs. Ala. Bd. of Pardons & Paroles,* 806 So.2d 374 (Ala. 2001). Furthermore, *Wilkinson* does not establish any constitutional right. It merely permits the use of a §1983 action to vindicate those rights established elsewhere by law. Beyond that, it is not clear what Plaintiff is asking in this interrogatory. The statutes governing the

Board are codified in the Alabama Code, and are available to him in the prison law library.

6)    I am not certain I understand the interrogatory. As a general proposition, unless a statute restricts the Board's jurisdiction, any prisoner could be considered for parole at any time. However, if the prisoner has not served a minimal period, parole may only be granted by unanimous affirmative vote. If a prisoner is eligible to be considered, the Board has total discretion as to whether and when parole may be granted, after affording certain officials and individuals an opportunity to express their views.

   a)    The procedures adopted in 1983 (and subsequently repealed) were published with the Legislative Reference Service, and are as readily available to the plaintiff as to the defendants. The procedures currently in effect are published on the Board's website, and are as readily available to the plaintiff as to the defendants.

7)    **OBJECTION.** This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff has not pled a justiciable controversy regarding the procedures for notifying victims of parole consideration, and lacks standing to do so, as he

is not adversely affected if the Board is unable to locate a victim and proceeds to consider his case after having exercised due diligence. Furthermore, this interrogatory seeks discovery of privileged information regarding victims.

8)   **OBJECTION.** This interrogatory seeks discovery of privileged material. Every document in the Board's file, except for the Board's order and the reasons, if any, given by a member favoring parole, are subject to an absolute and mandatory privilege. This interrogatory is not reasonably calculated to lead to the discovery of admissible evidence bearing on the question whether this defendant has deprived plaintiff of any right protected under the laws of the United States.

9)   Prisoners in Alabama have no reasonable expectation of parole. The cited decisions of the U.S. Supreme Court do not recognize any such rights as existing under Alabama's discretionary parole statute. Prisoners do not enjoy a liberty interest in the desire to be paroled, and the Supreme Court does not mandate that the State of Alabama establish procedural protections for this desire. There is no Federally protected right at stake when the State of Alabama decides whether to release a prisoner before he completes his

sentence. To the extent that the *Ex Post Facto* Clause might apply to changes in procedures, the previously submitted Special Report explains the procedural safeguard adopted pursuant to *Garner vs. Jones,* 120 S.Ct. 1362 (2000).

10)    Prisoners in Alabama have no reasonable expectation of parole. The cited decisions of the U.S. Supreme Court do not recognize any such rights as existing under Alabama's discretionary parole statute. Prisoners do not enjoy a liberty interest in the desire to be paroled, and the Supreme Court does not mandate that the State of Alabama establish procedural protections for this desire. There is no Federally protected right at stake when the State of Alabama decides whether to release a prisoner before he completes his sentence. To the extent that the *Ex Post Facto* Clause might apply to changes in procedures, the previously submitted Special Report explains the procedural safeguard adopted pursuant to *Garner vs. Jones,* 120 S.Ct. 1362 (2000).

11)    **OBJECTION.** I do not have personal knowledge, as I was not present. Any information I might obtain would be from review of a file that is subject to an absolute and mandatory privilege.

12) **OBJECTION.** I do not have personal knowledge, as I was not present. Any information I might obtain would be from review of a file that is subject to an absolute and mandatory privilege. Defendant further **OBJECTS** to the unwarranted, unsubstantiated, argumentative assumption that prior decisions of the Board were arbitrary and capricious.

13) **OBJECTION.** I do not have personal knowledge, as I was not present. Any information I might obtain would be from review of a file that is subject to an absolute and mandatory privilege.

14) **OBJECTION.** I do not have personal knowledge, as I was not present. Any information I might obtain would be from review of a file that is subject to an absolute and mandatory privilege. Defendant further **OBJECTS** to the unwarranted, unsubstantiated, argumentative assumption that prior decisions of the Board were a usurpation of State law. To the best of my knowledge, no tape recording was made.

15) **OBJECTION.** I do not have personal knowledge, as I was not present. Any information I might obtain would be from review of a file that is subject to an absolute and mandatory privilege. Plaintiff has not identified any person whom he considers to be similarly

situated, to the best of my knowledge. In any event, parole

consideration is such a unique, predictive decision that it is

difficult to imagine any two prisoners truly being in the same

situation as each other.

16) **OBJECTION.** I do not have personal knowledge, as I was not

present. Any information I might obtain would be from review of a

file that is subject to an absolute and mandatory privilege. Plaintiff

has not identified any person whom he considers to be similarly

situated, to the best of my knowledge. In any event, parole

consideration is such a unique, predictive decision that it is

difficult to imagine any two prisoners truly being in the same

situation as each other. This interrogatory is so overbroad as to be

impossible to answer.

17) **OBJECTION.** I do not have personal knowledge, as I was not

present. Any information I might obtain would be from review of a

file that is subject to an absolute and mandatory privilege. Plaintiff

has not identified any person whom he considers to be similarly

situated, to the best of my knowledge. In any event, parole

consideration is such a unique, predictive decision that it is

difficult to imagine any two prisoners truly being in the same

situation as each other. This interrogatory is so overbroad as to be impossible to answer.

## RESPONSE TO REQUEST FOR ADMISSIONS

18) Charest was scheduled for initial parole consideration. I deny that he had a reasonable expectation that he would be granted parole at that time, or at any other time, and I deny that he has a liberty interest at stake to be protected by due process.

19) Charest has been interviewed by parole officers prior to parole consideration. The documents referred to are subject to an absolute and mandatory privilege. I deny that he had a reasonable expectation that he would be granted parole at that time, or at any other time, and I deny that he has a liberty interest at stake to be protected by due process.

20) I was not a member of the panel that considered whether to grant parole in 2005, and have no knowledge. It was not and is not our practice to put notes in the file when we review the file prior to the hearing. I deny that the procedures described in the repealed 1983 operating procedures have any bearing on the 2005 consideration. I

deny all the argumentative bluster plaintiff included in this overly complex request for admissions, as he is proceeding from a false assumption about the state of the law.

21) I deny that the repealed 1983 operating procedures applied to the 2005 parole consideration. Section 15-22-36(b), Ala. Code, governed the sending of notices. I believe the notices were either sent, or due diligence was certified. However, I have no personal knowledge, and the file is subject to an absolute and mandatory privilege.

22) It appears that Plaintiff skipped numbers 22 through 25, inclusive.

23) It appears that Plaintiff skipped numbers 22 through 25, inclusive.

24) It appears that Plaintiff skipped numbers 22 through 25, inclusive.

25) It appears that Plaintiff skipped numbers 22 through 25, inclusive.

26) **OBJECTION.** This request is directed toward material that is subject to an absolute and mandatory privilege, which is intended, at least in part, to promote public safety. This request is not reasonably calculated to lead to the discovery of admissible evidence regarding plaintiff's claim that this defendant deprived him of a right protected under the laws of the United States.

27)   I was not a member of the panel that considered whether to grant parole in 2005, and have no knowledge. It was not and is not our practice to put notes in the file when we review the file prior to the hearing. I deny that the procedures described in the repealed 1983 operating procedures have any bearing on the 2005 consideration.

28)   **OBJECTION.** This request is not reasonably calculated to lead to admissible evidence bearing on plaintiff's claims that this defendant deprived him of some right protected under the laws of the United States. The Attorney General has a statutory right to express his views. I have no personal knowledge of this particular hearing, as I was not present. The documents in the file are privileged.

29)   **OBJECTION.** This request is not reasonably calculated to lead to admissible evidence bearing on plaintiff's claims that this defendant deprived him of some right protected under the laws of the United States. I was not a member of the panel that considered whether to grant parole in 2005, and have no knowledge. I have no personal knowledge of this particular hearing, as I was not present. The documents in the file are privileged.

30)    I have no personal knowledge, and **OBJECT** to this attempt to circumvent the absolute and mandatory privilege pertaining to material in the Board's file. This request is not reasonably calculated to lead to the discovery of admissible evidence bearing on plaintiff's claim that this defendant deprived plaintiff of some right protected under the laws of the United States.

31)    I have no personal knowledge, and **OBJECT** to this attempt to circumvent the absolute and mandatory privilege pertaining to material in the Board's file. This request is not reasonably calculated to lead to the discovery of admissible evidence bearing on plaintiff's claim that this defendant deprived plaintiff of some right protected under the laws of the United States.

32)    **OBJECTION.** The term "granted prospective consideration" is highly misleading. Charest was scheduled to be considered – nothing more, nothing less. This request is not reasonably calculated to lead to the discovery of admissible evidence bearing on plaintiff's claim that this defendant deprived plaintiff of a right protected by the laws of the United States.

33)    **OBJECTION.** This request is not reasonably calculated to lead to the discovery of admissible evidence bearing on plaintiff's claim

that this defendant deprived plaintiff of some right protected by laws of the United States. Plaintiff lacks standing to raise claims pertaining to notice of victims, and has pled no justiciable controversy pertaining to the notice statutes.

34)    I have no personal knowledge, and **OBJECT** to this attempt to circumvent the absolute and mandatory privilege pertaining to material in the Board's file. This request is not reasonably calculated to lead to the discovery of admissible evidence bearing on plaintiff's claim that this defendant deprived plaintiff of some right protected under the laws of the United States.

35)    I deny that the repealed 1983 operating procedures governed the Board's operations in 2005. I deny that either *Wilkinson* or *Greenholtz* created a substantive right for any prisoner in Alabama. The decision to deny parole was a reasonable, lawful exercise of discretion, consistent with the laws of Alabama and with Federal law as interpreted by the U.S. Supreme Court and the U.S. Court of Appeals for the Eleventh Circuit.

Respectfully submitted,

TROY KING
ATTORNEY GENERAL

GREGORY O. GRIFFIN, SR.
CHIEF COUNSEL


s/HUGH DAVIS
DEPUTY ATTORNEY GENERAL
State Bar#:  ASB-4358-D63F
Ala. Bd. Pardons and Paroles
301 South Ripley Street
P.O. Box 302405
Montgomery, Alabama 36130
Telephone: (334) 242-8700
Hugh.davis@paroles.alabama.gov


**<u>CERTIFICATE OF SERVICE</u>**


I hereby certify that on 3-14-08, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to the following:


Joseph Patrick Charest AIS#182262
Limestone Correctional Facility
28779 Nick Davis Road
Harvest, Alabama 35749-7009


Done this 14th day of **MARCH**, 2008.

Respectfully submitted,

s/HUGH DAVIS
DEPUTY ATTORNEY GENERAL
State Bar#:  ASB-4358-D63F
Ala. Bd. Pardons and Paroles
301 South Ripley Street
P.O. Box 302405
Montgomery, Alabama 36130
Telephone: (334) 242-8700
Hugh.davis@paroles.alabama.gov

STA    BOARD OF PARDONS AND PARO__S
MONTGOMERY, ALABAMA

ACTION BY THE BOARD

NAME CHAREST PAT                AIS# 182262                DOCKET 02/2005
                                                          1/3   02/08/2005

PAROLE IS THIS DAY ORDERED _____ BY:

MY REASONS FOR FAVORING PAROLE OF THE PRISONER ARE AS FOLLOWS:
_____ SUBJECT HAS SERVED SUFFICIENT PORTION OF SENTENCE.
_____ INVESTIGATION HAS BEEN MADE OF SUBJECT.
_____ SUBJECT'S PAROLE PROGRAM IS ACCEPTABLE.
_____ PRISON AUTHORITY REPORT IS SATISFACTORY.
_____ UPON ACCEPTANCE BY (STATE OF)_____.
_____ I AM OF THE OPINION THAT THERE IS A REASONABLE PROBABILITY THAT
        IF THE PRISONER IS RELEASED, (HE/SHE) WILL LIVE AND REMAIN AT
        LIBERTY WITHOUT VIOLATING THE LAW, AND THAT (HIS/HER) RELEASE
        IS NOT INCOMPATIBLE WITH THE WELFARE OF SOCIETY.
_____ INTERVIEWING PAROLE OFFICER RECOMMENDS.
_____ OTHER_____

MEMBER _____DATE _____

MY REASONS FOR FAVORING PAROLE OF THE PRISONER ARE AS FOLLOWS:
_____ SUBJECT HAS SERVED SUFFICIENT PORTION OF SENTENCE.
_____ INVESTIGATION HAS BEEN MADE OF SUBJECT.
_____ SUBJECT'S PAROLE PROGRAM IS ACCEPTABLE.
_____ PRISON AUTHORITY REPORT IS SATISFACTORY.
_____ UPON ACCEPTANCE BY (STATE OF)_____.
_____ I AM OF THE OPINION THAT THERE IS A REASONABLE PROBABILITY THAT
        IF THE PRISONER IS RELEASED, (HE/SHE) WILL LIVE AND REMAIN AT
        LIBERTY WITHOUT VIOLATING THE LAW, AND THAT (HIS/HER) RELEASE
        IS NOT INCOMPATIBLE WITH THE WELFARE OF SOCIETY.
_____ INTERVIEWING PAROLE OFFICER RECOMMENDS.
_____ OTHER_____

MEMBER _____DATE _____

MY REASONS FOR FAVORING PAROLE OF THE PRISONER ARE AS FOLLOWS:
_____ SUBJECT HAS SERVED SUFFICIENT PORTION OF SENTENCE.
_____ INVESTIGATION HAS BEEN MADE OF SUBJECT.
_____ SUBJECT'S PAROLE PROGRAM IS ACCEPTABLE.
_____ PRISON AUTHORITY REPORT IS SATISFACTORY.
_____ UPON ACCEPTANCE BY (STATE OF)_____.
_____ I AM OF THE OPINION THAT THERE IS A REASONABLE PROBABILITY THAT
        IF THE PRISONER IS RELEASED, (HE/SHE) WILL LIVE AND REMAIN AT
        LIBERTY WITHOUT VIOLATING THE LAW, AND THAT (HIS/HER) RELEASE
        IS NOT INCOMPATIBLE WITH THE WELFARE OF SOCIETY.
_____ INTERVIEWING PAROLE OFFICER RECOMMENDS.
_____ OTHER_____

MEMBER _____DATE _____
SPECIAL CONDITIONS _To detainer and/or program_____

_____

CONTINUED TO _____

_____

PAROLE IS THIS DAY DENIED _12-6-05_____ BY:
DATE                    MEMBER                              RESET

_12/6/05_____   _____        _12/10_____
_12/6/0_____    ____(signature)_____          _12/10_____
REMARKS

EXHIBIT
A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

PATRICK JOSEPH CHAREST,
Plaintiff,

Vs.                                    Case #2:07-cv-984-MHT

ALABAMA BOARD OF
PARDONS & PAROLES, et al.,
Defendants.

AFFIDAVIT OF
Defendant
VeLinda Weatherly

Comes now VeLinda Weatherly, a member of the Alabama Board of

Pardons & Paroles, named as Defendant in this action, and shows unto the

Court as follows:

"My name is VeLinda Weatherly. I am a member of the Alabama

Board of Pardons & Paroles, appointed and confirmed as provided in §15-

22-20, Ala. Code. I did not participate in the meeting of the second panel of

the Board on 6 December 2005, when Patrick Charest was considered for

parole. It appears that the panel considering this case was made up of special

members. I do not have personal knowledge of what was said, or by whom,

at this meeting.

EXHIBIT

B

"The statute authorizing and establishing the positions of special members of the Board expired on 30 September 2006. After that date, the office of special member ceased to exist.

"I am not aware of any information relied on by the panel that is obviously false. As a matter of practice, we do not rely on information that we consider unreliable. Other than the averments in the Complaint, I am not aware of any allegation that any person told the panel that Charest had not changed while he was in prison. Although we hear a lot of opinions, we try to look past the opinions to the underlying facts, so that we can form our own opinion as to the suitability of a particular prisoner for parole. I would not be inclined to give much weight to any opinion communicated to the Board unless I could see that the speaker had an opportunity to observe and could relate facts supporting the opinion.

"It is our practice to receive and consider information from as many sources as possible, and to weigh the credibility of that information. We assign officers to investigate and report on the circumstances of the crimes resulting in prison sentences. These officers also investigate and report on the prisoner's personal and social history and his prior criminal history. We also send officers into the prisons periodically to interview prisoners regarding their adjustment in prison, changed circumstances, and other

2

issues. These officers also check prison records to glean information regarding the prisoner's efforts and progress. We also ask wardens to report on prisoners' progress.

"We receive mail from any source regarding any case. Prisoners and their families and friends frequently write to us to report on completion of programs and other issues bearing on suitability for release. We also receive mail from others, some of whom are public officials or victims entitled by law to express their views, and some of whom simply believe they have some information that might be helpful. In any event, the information is retained in the file so the Board can determine whether it is credible and reliable.

"Before considering whether to release a prisoner, Alabama law requires this Board to send written notice of the consideration meeting to certain individuals, who have the right to express their views. The Board does not censor their expression, but exercises judgment and discretion in deciding what information should be relied upon.

"I have looked at our file regarding Patrick Charest. I don't see anything indicating that the panel relied on information that was known to be false. It would be inappropriate for me to try to resolve at this time my own belief on this point. It would be better for me to wait until I have heard

3

from all concerned and until I have had an opportunity to deliberate with my colleagues in a properly noticed meeting.

"This Board tries to separate prisoners into reasonable categories for purposes of scheduling parole consideration. We look at the nature of the crimes, the length of the sentence, prior criminal history, social history, ties to the community, and similar factors to determine when a prisoner should be scheduled for consideration. As we consider individual cases, we examine the individual's behavior and character in an effort to predict his future likelihood of success.

"Charest is a member of a class of prisoners who are difficult to parole. It is very difficult for members of the Board to conclude that a rapist is likely to obey the law in the future, or that his release would not be incompatible with society's welfare. We are concerned both with the likelihood that such an offender would re-offend and with the seriousness of the harm that could ensue if he did so.

"I cannot say that Charest would be any more likely to be paroled in 2008 than he would be in 2010 or later. Whenever the Board considers him for parole, it will take two members of the panel or a majority vote in favor of granting Charest parole.

4

The Board tries to ensure that no prisoner is forgotten. Our Operating Procedures call for periodic re-examination of each case, even those that appear unlikely ever to be paroled. This practice recognizes the possibility that circumstances may change for the better. For years, we scheduled the most difficult cases for re-examination within three years. We learned that a significant number of these cases did not change significantly within such a short time, so we extended that period to five years. We also set up a process so that prisoners who had been set off five years could be re-examined more frequently if a significant change occurred in his circumstances. This process was changed in 2002, to allow for the five-year set-off, and changed again in 2004, to allow such cases to be re-examined by the staff within eighteen months after the Board's action.

"I do not know of any person similarly situated to Charest who has been treated more favorably than he has. Of course, since each prisoner is a unique person, it is difficult to say that any two prisoners are truly comparable to one another. There are always unique factors, which may weigh in favor of or against the grant of clemency."

VELINDA A. J. WEATHERLY
BOARD MEMBER

5

**SWORN TO AND SUBSCRIBED** before me this *9th* day of *January* 2008.

NOTARY PUBLIC
**Commission Expires:** *10/10/08*

6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

**PATRICK JOSEPH CHAREST,**
**Plaintiff,**

**Vs.**                                    **Case #2:07-cv-984-MHT**

**ALABAMA BOARD OF**
**PARDONS & PAROLES, et al.,**
**Defendants.**

### AFFIDAVIT OF
### Defendant
### Robert Longshore

Comes now Robert Longshore, a member of the Alabama Board of

Pardons & Paroles, named as Defendant in this action, and shows unto the

Court as follows:

"My name is Robert Longshore. I am a member of the Alabama

Board of Pardons & Paroles, appointed and confirmed as provided in §15-

22-20, Ala. Code. This Board currently consists of three members. The

Legislature temporarily expanded the Board in 2003 to include four special

members, so that two panels could meet at the same time in different places.

The terms of the special members expired and the positions were abolished

on 30 September 2006.



EXHIBIT
C

"On 6 December 2005, a panel of special members met to consider whether to parole Patrick Charest. I was not present and did not participate in that meeting. I cannot discern from our file any basis for believing that those members relied on anything that they knew to be false in making their decision.

"I do not know whether any person at that meeting expressed the opinion that Charest had not changed while in prison. If such a statement was made, I do not know the context of the opinion, or the facts relied on by the speaker. If I had not been told of this lawsuit, I don't believe I would have been aware that this opinion had been expressed, and I still don't know whose opinion this is supposed to reflect.

"I don't know of any prisoner similarly situated to Charest who has been treated more favorably than he has. We try to evaluate each prisoner as an individual, with an eye toward all his circumstances, as we attempt to predict whether he is likely to succeed on parole. With that in mind, we try to be open to receive information from any available source, and we try to use good judgment in deciding which information is credible and reliable. Some information is politely listened to, but disregarded as unreliable. This is especially true of opinions. We are more interested in the facts underlying

2

opinions than we are in the opinions of people seeking to influence our decisions.

"It is not easy to form the opinion that certain prisoners present an acceptable likelihood of success. It is especially difficult if the offender has committed a very serious crime, as the consequences would be serious if he repeated that error. Nevertheless, we try to ensure that each prisoner is reviewed periodically, to reduce the risk that we might fail to notice a significant change in his circumstances. It is sometimes difficult to strike an effective balance between the frequency of review and the thoroughness of review. As the prison population has grown, the Board has tended to directly review the less likely candidates less frequently, so that we could spend more time reviewing the better candidates for parole. However, we have remained sensitive to the possibility that an apparently unlikely prisoner might experience a significant change in circumstances that could make him a better candidate for parole. For this reason, the Board has established a review committee, made of experienced staff members, to review cases like this. The Board has authorized the review committee to put cases on the Board's docket earlier than the scheduling guidelines or the Board's orders provide for, if there is a good reason for doing so. The Board consciously chose to delegate broad discretion to review committee, so as to allow the

3

committee to take appropriate action in cases that cannot, by definition, be anticipated and characterized by rigid rules.

"I did not participate in the 2005 hearing regarding Charest. After reviewing our file, I cannot see any obvious defect or error in the decisions made by the panel. I am not forming an opinion as to whether I would ever vote to parole this prisoner, because I have not heard all that may be said in a public meeting after notice, and I have not had the benefit of my colleagues' views in deliberation. However, I see no reason on the surface to believe that Charest would be more likely to be released in 2008 than in 2010 or later. The crimes he committed are serious enough to warrant caution in considering whether and when to grant parole. If I am on the Board when he is considered for parole, I will be cautious in weighing his likelihood of success on parole."

**ROBERT P. LONGSHORE**
**ASSOCIATE MEMBER**

SWORN TO AND SUBSCRIBED before me this _10th_ day of
_January_ 2008.

**NOTARY PUBLIC**
**Commission Expires:** _10/10/08_

4

# OPERATING PROCEDURES OF THE
# ALABAMA BOARD OF PARDONS & PAROLES

## Preamble

These Operating Procedures guide the Board and its staff in performing the duties imposed by law.  These Procedures are published in order to aid the public in sharing the Board's understanding of the applicable statutes, and in order to afford notice to the public of the Board's interpretation of those statutes.

Adoption of these Procedures repealed all other procedural rules regulating the Board's operations. In order to afford notice to the public of the procedures followed by this Board, we hereby publish these Procedures for the information of interested individuals. These procedures afford notice to the public of the steps necessary to present a case to the Board for decision.

These Operating Procedures are not intended to, and do not, create any substantive legal rights for any person. These Operating Procedures are designed to guide the Board's staff in preparing cases for the Board's consideration. To the extent that the Board may lawfully delegate discretion to its staff, these Operating Procedures guide the staff in exercising their discretion. The Board's staff will exercise that discretion to benefit the public in general, but these Operating Procedures do not create a duty owed to any individual. The staff is accountable to the Board, rather than to any individual.

The Executive Director and the division chiefs subordinate to him are authorized to develop standard operating procedure manuals, providing more detailed guidance to employees about the performance of their duties. Such manuals shall guide the employees as they perform the various duties assigned to them.

Nothing in these Procedures shall be construed to conflict with the Constitution or laws of Alabama. Nothing in these Procedures shall be construed to create or recognize any liberty or property interest in a prisoner's desire to be paroled. This Board construes the statutes regulating pardons and paroles in Alabama as demonstrating a clear legislative intent not to create such an entitlement.

The provisions of these Procedures should be construed as race and gender neutral. This Board intends to apply its discretion on the facts of each



case, without taking into account facts that have no bearing on its assessment of society's welfare. The authority exercised by the Board's staff will likewise be based on the facts of each case.

The staff of this department is authorized to develop standard forms to document the official acts of this department, including forms for prisoners, parolees, or the public to use in seeking action by the Board. Any employee developing a form shall submit it to the Executive Director and the Chief Counsel for their approval. Any form approved by these two individuals jointly may be used, without seeking an Order from the Board approving the form.

The Board is open for business from 8:00 a.m. until 5:00 p.m. on regular business days of State government. It normally meets in the Central Office Board Room. During any period that Special Members may serve, the Board may convene in panels, with one panel meeting at the Central Office and the second meeting at the alternate site leased by the Board. The three Regular Members of the Board, who are responsible for administering the agency, convene at 8:00 a.m. daily, or as soon thereafter as a quorum may be assembled, for the purpose of setting policy, serving as appointing authority, approving contracts and performing other administrative duties. The Regular Board may recess from time to time through the day in order for its members to serve on panels for consideration of clemency matters.


# Article One
## Intake

1.    As soon as practical after a prisoner is sentenced to prison, the Central Office staff shall prepare a file on the case. The appropriate field office(s) will be directed to forward a copy of any investigations to the Central Office. If no investigation has been done at that point, the field office shall promptly conduct its investigation and submit its report. When the appropriate investigations are in the file, the Board's designee shall study the file and schedule initial parole monthly docket. There shall be no presumption that the Board will grant parole.

2.    The Board's designee shall calculate the date at which a majority of the Board may act. In doing so, the total term of the prisoner's sentences shall be taken into account. A majority of the Board may lawfully grant parole after the prisoner has served one third of his sentence, or ten years, whichever is lesser. If a prisoner is serving one or more sentences at the time he commits his crime, the designee shall also calculate one third or ten years

2

of the new sentence, calculated from the date of the new sentence, with any applicable credits, and shall determine which of the two calculations results in the later date. The later of the two dates shall control.

3.    The Board's designee shall also determine whether correctional incentive time has been applied by the Department of Corrections. If correctional incentive time is applied, that fact shall be taken into account in scheduling initial parole consideration.

4.    A staff member designated by the Board shall also determine whether the investigation report is sufficient for Board action. If significant information is lacking, this designee shall direct the field office to provide further information.

5.    If a prisoner is receiving correctional incentive time, his initial parole consideration shall be scheduled as follows: (a) for terms of five years or less, set on current docket. (b) for terms of five to ten years, schedule initial parole consideration approximately twelve months prior to the minimum release date; (c) for terms of more than ten years and up to fifteen years, schedule initial parole consideration approximately twenty-four months prior to the minimum release date; (d) for total terms in excess of fifteen years, schedule initial parole consideration approximately thirty-six months prior to the minimum release date. The Board recognizes that most prisoners convicted of particularly violent or severe offenses, or with extensive criminal histories, or displaying a great propensity for future violence, or with significant community opposition are unlikely to receive a sentence subject to this provision.

6.    If the controlling sentence is not subject to correctional incentive time, initial parole consideration shall be scheduled as soon as practicable after the prisoner will become eligible for release by majority vote, unless the Board's designee finds other factors that indicate another docket would be more appropriate. In assessing the suitability of the majority vote set, the designee will examine the offender's prior record, the nature and severity of the present offense, the potential for future violence, and any information available regarding community attitude toward the offender. If the designee finds mitigating circumstances, the designee may recommend scheduling initial parole consideration earlier than the majority vote eligibility date; however, reasons for departure from the standard shall be documented in the file, and any such recommendation will be referred to the Review Committee for action.

7.    When an inmate is convicted of one or more of the Class A felonies Rape I, Robbery I with serious physical injury, Kidnapping I, Murder, Burglary I with serious physical injury, Attempted Murder, Sodomy I, Arson

3

I with serious physical injury, or Sexual Torture (who are eligible for parole), the initial parole consideration date shall be set in conjunction with the inmate's completion of 85 (eighty-five) per cent of his or her total sentence or 15 (fifteen) years, whichever is less, unless the designee finds mitigating circumstances. Serious physical injury in this paragraph is as defined in title 13A of the Alabama Code.

**8.**　　If the designee finds mitigating circumstances that appear to warrant a deviation from the guidelines, the designee shall document those circumstances, together with a recommendation for scheduling of consideration. In assessing the suitability of the standard set, the designee will examine the offender's prior record, the nature and severity of the present offense, the potential for future violence, and any information available regarding community attitude toward the offender. Any recommendation by the designee scheduling initial parole consideration, so as to schedule such consideration earlier or later than the most easily calculated set date, shall be supported by a memorandum setting forth the factors considered and the reasons for the deviation. This memorandum shall be placed in the file for the consideration of the Review Committee and the Board. The Review Committee shall schedule initial parole consideration in cases where the designee has recommended a deviation from the guidelines.

**9.**　　If the only sentence imposed on a prisoner is a split sentence, the Board will defer to the sentencing court to determine when the prisoner is ready for release. If the prisoner is serving a split sentence and one or more other sentences, the Board will exercise jurisdiction only over those other sentences to determine whether parole is consistent with society's welfare.

**10.**　　If a prisoner is serving two or more sentences, and the law authorizes parole consideration on some, but not all of his sentences, then he shall be scheduled for parole consideration on those sentences over which the Board has jurisdiction.

**Article Two**
**Rescheduling of Consideration**

**1.**    After a prisoner has served a minimum of five years, he may initiate contact with designated officers in the Board's Central Office, who may review the prisoner's progress to determine whether it may be appropriate to schedule earlier parole consideration. Such a rescheduling may be granted only for good cause shown and circumstances bearing on his probability to succeed on parole, not merely because the prisoner is following the rules in prison. If, after appropriate inquiry or investigation, the officer or agent is persuaded that earlier consideration may be proper, he may refer the matter to the Review Committee for consideration. He shall enter in the file the facts supporting his recommendation.

**2.**    Cases involving inmates facing imminent death may be referred to the Review Committee at any time.

**3.**    The Review Committee shall consist of no fewer than five members designated by the Board. Three members constitute a panel. The members shall be senior staff or employees having five years or more experience in the Central Office.

**4.**    The Review Committee may review any cases referred to them for earlier parole consideration, and determine whether it appears to be consistent with society's interest to schedule earlier parole consideration. If at least three Committee members reviewing a case concur in the action, they may reschedule parole consideration earlier than the docket previously set. They shall enter into the file a written statement of the action taken and the reasons for that action, and shall indicate which members of the Committee favored or declined to favor the action. The Review Committee's actions shall take effect immediately.

**5.**    The Executive Director or the Chief Counsel may refer any case to the Review Committee to consider whether rescheduling of consideration is appropriate, notwithstanding any other provision in these Operating Procedures.

**6.**    The Review Committee shall not review any case after the Board has denied or revoked parole on the sentences being served, except as provided herein.

**7.**    If the Board has denied or revoked parole, and scheduled the next consideration three years or more after denial or revocation, the Committee may consider earlier scheduling, but such review shall not begin earlier than eighteen months after the Board has denied or revoked parole.

## Article Three
### Dockets

**1.**      The Board will not consider or decide whether to order or grant any pardon, parole, conditional transfer or remission, except in an open public meeting. The Board will not entertain any case, unless that case is on the Board's docket for that meeting, as provided herein. Individual Board members will not meet or discuss with any person(s) other than departmental staff regarding any specific Board action outside an open public meeting.

**2.**      The docket unit shall schedule cases in advance of the meeting, so as to permit statutory notices to be sent and received, in the normal course of business, more than thirty days prior to the meeting.

**3.**      Before the docket unit sets a parole consideration case on a docket for consideration by the Board, a designated officer will determine whether a parole officer has interviewed the prisoner not more than three months prior to the open public meeting date. If there is no current interview in the file, this designee will direct an institutional parole officer to conduct the interview. The parole officer conducting this interview shall review the institutional file to evaluate his adjustment, and shall afford the prisoner an opportunity to make a statement regarding his current situation and his proposed plans for life after prison. The parole officer shall provide a form to the prisoner, so that he may submit information about his home and job plan.

**4.**      Four weeks in advance of each docketed meeting, a printed docket shall be available to the members of the Board, so they can know which files to study in preparation for that meeting. The printed docket shall identify the date, time and place of the meeting it refers to. The docket shall also specify whether it is a docket of parole consideration, pardon consideration, conditional transfer, or remission consideration cases. The docket shall also specify whether it is a docket of cases requiring unanimity to grant or of cases involving Class "A" felonies with injury. Each prisoner on the docket shall be identified by name and identifying number. Each week's docket shall be available to the public upon request.

**5.**      As the Board considers each case and takes action, their Secretary shall note on the docket whether the relief is ordered or denied. If, at the conclusion of the day's meeting, the Board has not ordered relief to any candidate or the case has not been continued, the relief is deemed denied. A completed copy of the docket, reflecting the actions taken, shall be included in the Board's minutes for the meeting. The Board's minute books are a public record. The minutes of each open public meeting shall be read and

6

approved at the conclusion of that meeting. Each member in attendance and the Secretary for the meeting shall sign the minute entry reflecting the actions taken in that meeting. The daily minutes shall be delivered to the Executive Director, or in his absence, such officer as he may designate, who shall also sign the minute entry reflecting that all cases on the docket have been addressed in the minutes. The Executive Director shall forward the completed minutes to the Chief Counsel or his designee, who shall also review and sign the minute entry and then return it to the Board's Secretary to file in the minute books.

**6.**     When the Board denies relief without specifying when a case may be docketed, it will be rescheduled at the discretion of the Board's designee.

**Article Four**
**Notice of Hearings**

**1.**     The Alabama Code specifies the public officials and individuals who are entitled to notice of meetings at which the Board considers and takes action to grant pardons, paroles, conditional transfer or remissions. The Alabama Code, §§ 15-22-23 and 15-22-36, requires that notice be sent on any felonies involving violence, death, or any physical injury to the person of another.

**2.**     If the victim entitled to notice is a minor, unless some other person or entity (including a State or public agency) is the legal guardian, the notice shall be directed to the minor in care of the custodial parent. If some other person is the legal guardian, the notice shall be directed to the minor in care of the guardian.

**3.**     If the victim was a minor at the time of the offense, but has attained majority by the time notice is to be sent, the notice should be directed to the victim.

**4.**     If the victim is deceased, the law provides that notice shall be sent to the victim's immediate family. The members of the "immediate family" shall be identified as of the time of the victim's death.

**5.**     If the victim is a minor at the time of death, his parents and his siblings are in his immediate family.

**6.**     If the victim is married at the time of death, the surviving spouse is in his immediate family, to the exclusion of his parents and siblings.

**7.**     If minor children survive the victim, they are in his immediate family.

**8.**     If the victim is an adult at the time of his death, but is not married and leaves no children, and is survived by his parents, they are regarded as his immediate family.

9.      In any other case, a relative of the victim shall be notified of the action being considered. Reasonable steps should be taken to identify a relative reasonably close to the definition of immediate family.

10.     The victim service office of this department shall have primary responsibility for identifying and locating the individuals who should receive notice. The victim service office will inform victims of the importance the Board places on their concerns as well as public safety.

11.     Any employee of this department assigned to identify and locate an individual entitled to notice shall document the steps taken to accomplish that goal. If unable to identify or locate a victim, or if it is not otherwise possible to notify a person entitled to receive notice, a certificate of due diligence shall be executed by an employee of the department certifying that the victim can not be located and detailing the steps taken to locate the victim. This certificate of due diligence form will become a part of the Board file and the Board will proceed with the hearing.

12.     Victims who decline to be notified through certified mail will be certified as a due diligence case.

## Article Five
### Preliminary Review of Docketed Cases

1.      After each consideration docket is prepared, a Board designee shall review each case on the docket and ensure that all necessary information and documents are in the file.

2.      Before the docketed cases are referred to the Board for their preliminary review, the file shall contain a thorough statement of the offender's personal and social history, his criminal history, the details of offense for each sentence under consideration, an assessment of his adjustment during the sentence, a proposed home and job program, and evidence that the statutory notices have been delivered or have been sent.

3.      Members of the Board shall review the file individually. Any notes that a Board member may make in such review shall be for his private reference, and shall not be included in the department's file pertaining to the case. No member of the Board will discuss any case or share his notes on the case with a colleague on the Board, prior to the meeting at which the matter is scheduled to be considered.

4.      Any member of the Board may order an investigation of any matter that may bear on the Board's decision.

5.      Before the date the case is docketed for consideration, the Board designee shall ensure that the proposed home and job program has been

requested. If the parole plan has not been verified before or during the Board hearing, parole may be denied and rescheduled by the Board in compliance with these rules.

### Article Six
### Board Action on Pardons, Paroles, Remissions of Fines and Forfeitures and Conditional Transfers

**1.**     On the date set for consideration, the Board will convene its open public meeting at the appointed place, at the appointed time or as soon thereafter as practicable.

**2.**     When the Board convenes its open public meeting to consider the matters on its docket, the bailiff shall notify all persons in the waiting rooms that the Board is convening to hear all business that may properly come before it, and that the meeting is open to the public.

**3.**     The Board will consider each case on the docket in such order as the Board may direct.

**4.**     All persons giving testimony before the Board shall testify under oath or affirmation.

**5.**     The individuals asking the Board to grant relief will be afforded the first opportunity to state the reasons relief ought to be granted. The officials and individuals entitled to notice under the statute will next be afforded an opportunity to express their views. The Board may, in its discretion, permit any other person to offer information that might be helpful in making its decision. If any member of the Board sees a need to do so, the Board may recess while a member of the staff interviews an individual to determine whether that individual should be asked or allowed to testify. The Board may question any person appearing before them. If a member of the Board desires information from any person not present, the Board may recess while the Board's staff seeks to contact that person.

**6.**     After the Board has received the available information, the Chair or other member presiding shall ask whether the Board is ready to take action. If any member is not ready to take action, he shall state whether additional information is needed, and if so, what that information might be. If the needed information cannot be obtained during the meeting, the Board shall decide whether to proceed without that information or to schedule another meeting.

**7.**     If any Board member desires, the Board may discuss the case before taking action. When the Board is prepared to take action, the members shall enter into the file their votes for or against the relief sought. Any member

favoring the order of relief shall enter into the file a detailed written statement of the reasons that they believe the relief is proper.

**8.** If the requisite number of votes have been cast in favor of the relief, that shall constitute an order for the relief, which shall become effective if not withdrawn by the Board in a timely manner.

**9.** If a quorum may grant relief and the Board members present are evenly divided the case shall be continued to a date certain and that date shall be announced in the open public meeting. The Secretary shall announce that the case will be taken up again at the appointed public meeting. Only one continuance shall be scheduled.

**10.** When each Board member has entered his vote, or declined to do so, the Secretary of the Board shall determine whether the requisite number of affirmative votes appears of record and that the record contains the detailed statements of each affirmative voting Board member's reasons for ordering the relief and that the order is accurately executed including proper dates. If so, the Secretary shall announce that the Board has ordered the relief sought. If not, the Secretary shall announce that the relief has been denied.

**11.** If parole has been denied, the Board shall determine whether and when the case shall next be docketed for consideration, not to exceed five (5) years. The case will be considered again as near as practicable to the specified month and year.

**12.** If at any time a quorum is not present, the Board shall stand in recess until a quorum is present. If a quorum is not present at the end of the day, or if it becomes apparent that a quorum probably will not be present that day, all cases that have not been decided shall be rescheduled for further consideration as early as is practicable, consistent with statutory requirements.

**13.** If only two members of the Board are present to hear a case requiring unanimous approval, the Board may pass over that case to hear other cases on the docket, pending arrival of the remaining member. If the third member does not return that day, the Board may offer those present an opportunity to express their views, and the two members present may ask questions, but the two members shall not deliberate in the absence of the third member. The case shall be continued to a date certain, which shall be announced in open public meeting, at which time the entire Board will take action. Only one continuance shall be scheduled. In the event that the Board is unable to decide the case on the date specified, the case shall be rescheduled for further consideration as early as is practicable, consistent with statutory requirements.

## Article Seven
## Certification and Reconsideration

**1.**     After the Board has entered an order of a pardon, parole, conditional transfer or remission, the Board's Secretary shall review the file to ensure that the requisite number of affirmative votes appear of record and that the record contains the detailed statements of each affirmative voting member's reasons for ordering the relief.

**2.**     If, prior to the effect of the certificate of relief, good cause is found by Board staff that suggests the relief could be held null and void, such cause shall be documented and placed in the file and the case should be returned to the Board for rescheduling.

**3.**     Any member of the Board may void his own vote to order relief prior to the effect of the certificate of relief. If any member of the Board voids his order for relief, the case shall be docketed for reconsideration. Each party entitled to notice pursuant to §15-22-23 and §15-22-36 shall be afforded notice of the reconsideration meeting and afforded an opportunity to express their views. This meeting shall be scheduled as early as practicable. The order previously entered shall be stayed pending such reconsideration.

**4.**     All official orders of the Board granting pardons, paroles, and/or restorations of civil and political rights, remissions of fines and forfeitures, and conditional transfers of prisoners shall be certified by the Executive Director, except as provided herein. In the absence of the Executive Director such certification shall be by his designee or by a member of the Board. The certificate shall bear the seal of this department as evidence that it represents the official act of the Board of Pardons and Paroles.

**5.**     If additional facts come to the attention of the Executive Director or his designee or any member of the Board, subsequent to execution of the certificate but prior to its taking effect, that could result in the grant being rescinded, such official may order, in writing, that the effective date of such certificate or the delivery of such certificate be stayed pending further review by each individual member of the Board who voted in the affirmative. A record of such information shall be entered into the file.

**6.**     If, after each individual member of the Board who voted in the affirmative has reviewed such information as provided in section three (3) above, the record still contains the requisite number of votes favoring the order, the stay shall be vacated, and the certificate shall be delivered and become effective.

**7.**     If an order to parole is withdrawn pursuant to this article, that case should be rescheduled for further consideration approximately twelve months after the order is withdrawn, unless the Board orders otherwise.

**8.**     After the certificate is executed a letter will be sent to each person specified by §§15-22-23 and 15-22-36, advising them that the relief has been granted and informing them of the conditions applicable to the grant.

**Article Eight**
**Pardons**

**1.**     Except as provided in the Alabama Code or in these rules, the procedure for deciding whether to grant a pardon shall be the same as the procedure for deciding whether to grant a parole.

**2.**     No pardon application shall be considered, except at the request of the person whose conviction is at issue.

**3.**     This Board will entertain petitions for pardon from convictions in the courts of the State of Alabama for violations of State law. The mayors of the respective municipalities in Alabama have jurisdiction to pardon violations of municipal ordinances. Convictions for violation of municipal ordinances are not considered to be criminal convictions. This Board will also entertain petitions for pardon from convictions in the courts of the United States or of other States, if the petitioner is, at the time of application and at the time of consideration, a resident of Alabama.

**4.**     The procedures set out herein apply to applicants who have either completed their sentence or who have successfully served at least three years on parole for that sentence. All other cases are governed by specific statutory provisions.

**5.**     The applicant must fully cooperate with this department's investigation of his criminal history, his personal and social history, and the circumstances of the crime in question.

**6.**     When the application and necessary investigations are complete, the case will be docketed for consideration. The general rules for docketing and notification apply.

**7.**     If the Board grants a pardon, the Board will also decide whether to restore any or all civil and political rights lost as a result of the conviction. Civil and political rights are not restored unless the Board affirmatively votes to do so. As required by law, the members of the Board favoring the grant of relief shall enter in the file a detailed written statement of the reasons supporting that decision.

**8.**     If the Board declines to grant a pardon, or to restore any or all civil and political rights, that applicant may not apply again until at least two years have passed from the date of the Board action, unless otherwise expressly ordered by the Board.

**9.**     Any application for pardon prior to completion of sentence or three years of successful parole shall adhere to requirements of §15-22-36, to include written approval of the judge or district attorney

**10.**     If the Board's designee finds that the statutory jurisdictional requirements are met, the case will be docketed for the Board's consideration. The general rules of procedure applicable to other cases apply to the meeting or meetings at which the Board considers such case. If the Board orders that the pardon be granted, the order will be made a matter of public record.

**11.**     The pardon procedures will apply to a request for a Certificate of Eligibility to Register to Vote, except where superceded by Ala. Code 15-22-36.1. This code section specifies certain procedures and requirements that must be met, as a matter of law.

**Article Nine**
**Remissions of Fines**

**1.**     The same general procedures followed for consideration of pardons or paroles shall apply to remissions of fines, except as specified herein.

**2.**     This Board will exercise this power only in cases to which the State of Alabama is a party.

**3.**     An individual seeking remission of a fine shall file an application on a form approved by this department. The application shall contain a short and plain statement of the reasons that the applicant believes it would be just for this Board to remit some or all of the fine imposed against him.

**4.**     The applicant shall cooperate in this department's investigation of the matter, and shall provide information about his personal, social and criminal history, the details of the offense, and the applicant's economic status.

**5.**     The investigating officer shall contact the sentencing judge and the district attorney or their successors and solicit their input.

**6.**     When the Board deliberates, they shall consider whether to deny remission entirely, to remit a portion of the fine (and, if so, what portion), or to remit the entire fine. Unless a majority of the Board agrees to a specific grant of relief, all relief is denied. No offender shall be permitted to file a

subsequent petition for remission in the same case after the Board decides his case.

**7.**     If the Board agrees to grant a remission, each member of the Board favoring the grant shall enter into the file a detailed statement of his reasons for favoring such remission. The remission order shall specify what portion of the fine is remitted.

**8.**     The Executive Director, or in his absence, his designee or a Board member shall issue a certificate, evidencing the Board's order to remit some or all of the fine. The certificate shall plainly express the terms of the Board's order. The certificate shall also state that the order will not be valid unless the beneficiary pays the court costs in the referenced case within sixty-three days of the date the certificate is issued.

### Article Ten
### Remissions of Forfeitures

**1.**     The same general procedures followed for consideration of pardons or paroles shall apply to remissions of forfeitures, except as specified herein.

**2.**     This Board will exercise this power only in cases to which the State of Alabama is a party.

**3.**     An individual seeking a remission of forfeiture shall file an application on a form approved by this department. The application shall contain a short and plain statement of the reasons that the applicant believes it would be just for this Board to remit some or all of the forfeiture imposed against him.

**4.**     No application will be considered unless the principal has been convicted of the underlying offense. No application will be considered unless the principal and the sureties join in the application.

**5.**     The applicants shall cooperate in this department's investigation of the matter. In addition to the usual information about the applicant's personal, social and criminal history and the details of the offense, the investigation shall provide a clear picture of the applicants' economic status.

**6.**     The investigating officer shall contact the sentencing judge and the district attorney or their successors and solicit their input.

**7.**     When the Board deliberates, they shall consider whether to deny remission entirely, to remit a portion of the forfeiture (and, if so, what portion), or to remit the entire forfeiture. Unless a majority of the Board agrees to a specific order of relief, all relief is denied. No applicant may

14

submit a subsequent petition for relief in the same case after the Board makes its decision.

**8.**     If the Board agrees to grant a remission, each member of the Board favoring the grant shall enter into the file a detailed statement of his reasons for favoring such remission. The remission order shall specify what portion of the forfeiture is remitted.

**9.**     The Executive Director or in his absence his designee or a Board member shall issue certificates, evidencing the Board's order to remit some or all of the forfeiture. The certificates shall plainly express the terms of the Board's order. The certificates shall also state that the order will not be valid unless the beneficiary pays the court costs in the referenced case within sixty-three days of the date the certificate is issued. The principal and each surety named in the forfeiture action shall each receive an original certificate, bearing the signature of the Executive Director or other designated officer and the seal of the Board of Pardons and Paroles.

## Article Eleven
## Parole Violations

**1.**     A parole officer who has received information indicating that a parolee under his supervision may have violated a condition of parole should investigate the alleged violation in a timely manner. The thoroughness of the investigation shall be proportionate to the seriousness of the alleged violation.

**2.**     After investigating the alleged violation and determining that the allegations are well founded, the parole officer shall submit a written report to Field Services Division. The parole officer should make a preliminary determination of the seriousness of the charges. If the parole officer believes no further action is required, he may report the investigation in the "Notice of Violation" format. If the parole officer believes further action is appropriate, he should report the investigation in the "Report of Parole Violation" format.

**3.**     If the parole officer has reason to believe that the public would be endangered or that the parolee would abscond supervision if the parolee is left at liberty pending further action, he may issue an "authorization to arrest" writ and cause the parolee to be held in the local county jail.

**4.**     The Executive Director or other designated officer will review notices and reports of parole violation when received by Field Services. The reviewing officer will determine whether there is reasonable cause to believe the parolee has violated the terms of his parole in an important respect. The

reviewing officer shall base his decision on facts appearing in the record. If he relies on any facts outside of the delinquency report, he shall document those facts in the record. The reviewing officer shall decide whether the alleged violation is sufficiently serious to warrant referral to the Board for declaration of delinquency and/or to the Parole Court for hearing. The reviewing officer shall also determine whether the alleged violation is sufficiently serious to authorize the Department of Corrections to issue a fugitive warrant. Notice bearing the signature of the Executive Director or his designee shall be forwarded to the Department of Corrections authorizing the issuing of a fugitive warrant.

**5.**     The charges may be referred to the Parole Court for hearing prior to the decision to refer to the Board for declaration of delinquency and/or prior to the decision to authorize the Department of Corrections to issue a fugitive warrant. In such event, the Executive Director or other designated officer shall direct the investigating parole officer to direct the parolee to appear before the Parole Court for an evidentiary hearing.

**6.**     The decision whether to incarcerate the parolee pending Parole Court may be reconsidered at any point in the process.

**7.**     The Board retains jurisdiction to reconsider whether to enter a declaration of delinquency at any point in the process.

**8.**     The officer submitting the delinquency report shall coordinate with the regional Hearing Officer to schedule Parole Court. The Hearing Officer, in cooperation with Field Services, may assign a case to a designated parole officer for hearing.

**9.**     After the case is docketed for Parole Court, Field Services shall also docket the case for the Board to decide whether the parolee should be declared delinquent. Declarations of delinquency should be docketed on a weekly basis, unless the Board has no regularly scheduled meetings during a particular week. Field Services will notify the Department of Corrections of the date the Board declares a parolee delinquent.

### Article Twelve
### Parole Court Hearings

**1.**     The Board has, pursuant to law, appointed or designated officers to hold parole court and to determine the facts pertaining to alleged parole violations. These hearing officers are authorized to determine whether the parolee is guilty, as well as to determine whether there is probable cause to detain the parolee pending final resolution of the charges.

**2.**     The Board prefers to have a single fact-finding hearing, at which the Hearing Officer will decide whether parole violation charges are proven or not, evidence in mitigation will be heard, and the Hearing Officer will determine whether it is appropriate to continue detaining the parolee pending the Board's decision on revocation. However, the Hearing Officer may determine whether probable cause exists to detain the parolee, and continue the hearing until a later date for determination of guilt. The evidence taken at the preliminary hearing, if admissible, shall be considered in the determination of guilt. If there is no reasonable cause to detain the parolee pending further hearing, the Board shall be promptly so notified in writing.

**3.**     The investigating parole officer shall provide the parolee with a copy of the Report or Notice containing the charges prior to or contemporaneously with notice of the date, time and place of Parole Court, whether the parolee is incarcerated or not. If the parolee is not incarcerated, the parole officer may deliver these documents by U.S. mail, addressed to the parolee's address of record (as reflected in the parole officer's supervision notes). The officer serving these papers shall return a written certificate of service to the Parole Court.

**4.**     The Hearing Officer may accept a knowing, intelligent guilty plea to parole violation charges. Before doing so, he shall ensure that the parolee is aware of the specific charges, and understands the rights he waives by entering such plea. The Hearing Officer shall not accept a guilty plea unless the parolee does, in fact, acknowledge that he violated the conditions of parole. The Hearing Officer shall document the facts admitted by the parolee.

**5.**     The parolee is responsible for notifying his counsel and his witnesses of the date, time and place of the Parole Court hearing. He is also responsible for forwarding a copy of the charges to his counsel. The parole officer is not forbidden from contacting counsel or witnesses as a courtesy to the parolee, nor is the parole officer prohibited from providing copies of the charges or other documents pertaining to Parole Court to the parolee's counsel. Papers will be served on the parolee, either by personal service or by mail to ensure that he has received reasonable notice of the charges and the proceedings.

**6.**     The Parole Court hearing officer may exercise reasonable discretion if any party or witness requests a continuance of a hearing. The entire hearing may be rescheduled, or the Parole Court may hear such evidence as is available and continue the hearing for further evidence, as may best serve the ends of justice. If the parolee requests a continuance and the continuance is denied, the Parole Court should enter the request and stated grounds in the

17

record. The Parole Court should also state the reasons for denying the request.

7.      The Hearing Officer shall preside over the hearing and govern its conduct. The Hearing Officer shall ensure that the record accurately reflects all necessary notices and that the record accurately reflects compliance with all procedural safeguards. A Probation and Parole Officer shall present the case of the alleged parole violations. The parolee shall be allowed to cross-examine witnesses accusing him, unless the Hearing Officer specifically finds good cause to believe the witness would be endangered by confrontation. If confrontation is disallowed, the Hearing Officer will make reasonable efforts to balance the parolee's need for cross-examination. The parolee shall be allowed to present evidence in his own defense, either personally or through counsel. The parolee's witnesses shall be subject to cross-examination. The Hearing Officer may question any witness, and should permit each side to ask follow-up questions.

8.      The investigating parole officer shall present the evidence supporting the parole violation charges. The parole officer shall question any witnesses other than himself. The parole officer may testify in narrative format if he is a competent witness as to any issue. The parole officer may also question witnesses testifying in the parolee's defense. All witnesses against the parolee are subject to cross-examination. The Parole Court may exercise reasonable discretion in deciding whether to question witnesses, in order to arrive at the truth. The Parole Court may exercise reasonable discretion to disallow any question that seeks to elicit information not pertinent to the issues, or which tends to be abusive. The Parole Court should include in the record any questions disallowed and the reasons for the ruling.

9.      For purposes of determining whether probable cause exists, the Hearing Officer may consider any relevant information, including hearsay. For purposes of determining guilt, the Hearing Officer shall consider any evidence that would be admissible under either the Alabama Rules of Evidence or the Federal Rules of Evidence. The Hearing Officer may also consider any other evidence that appears to be reliable and probative. Commonly accepted treatises on evidence, including Gamble's, McElroy's, Wigmore's and McCormick's, should be considered persuasive authority for admission of evidence. If the Hearing Officer relies on evidence that does not appear to be admissible under the rules of evidence, the Hearing Officer should explain the reasons that he considers it to be reliable.

10.     The Parole Court shall allow the parolee great leeway in presenting information that may be considered as mitigating circumstances. For purposes of mitigation, the Hearing Officer shall consider any information

18

offered by the parolee. Any objections shall go to the weight of the evidence, not to its admissibility.

**11.**    The Hearing Officer shall take judicial notice of conditions of parole imposed by this Board or by another State pursuant to the Interstate Compact. The parolee may introduce evidence that he was not aware of a condition. The Hearing Officer shall take judicial notice of the laws of the State of Alabama. In the absence of proof to the contrary, the Hearing Officer may rely on a copy of a municipal ordinance or of a statute of another jurisdiction as evidence of the law in that jurisdiction. The Hearing Officer may presume, in the absence of proof to the contrary, that each municipality in Alabama has adopted an ordinance incorporating the penal provisions of the Alabama Code into its municipal law. The Hearing Officer may accept a certified copy of a judgment of conviction as conclusive evidence that the parolee is guilty of violating a law, provided that, in the case of a conviction in municipal court or district court, the time for appealing to circuit court for trial de novo had run before the certification was issued.

**12.**    The Hearing Officer may determine that a parolee is guilty of violating a law, but that the offense was less than that named in the delinquency report. The Hearing Officer may also determine that a parolee is guilty of violating a law other than that named in the delinquency report, if the report provided fair notice to the parolee of the wrongful behavior at issue. The Hearing Officer may determine that a parolee is guilty of violating a condition of parole other than that named in the delinquency report, if the report provided fair notice to the parolee of the wrongful behavior at issue.

## Article Thirteen
## Parole Court Reports

**1.**    The Hearing Officer shall file a detailed written report, detailing the evidence considered and deciding the facts. The report shall also state what evidence was relied upon in the findings of facts. The report shall clearly state whether each charge was proven or not. If the parolee is found guilty of violating the terms of his parole, the Hearing Officer shall also include in his report a detailed assessment of the mitigating circumstances. The Hearing Officer shall then recommend whether parole should be revoked or reinstated. The parolee shall be provided a copy of the Hearing Officer's Findings of Fact and Recommendation. The Hearing Officer's report shall detail the reasons supporting his recommendation. This report shall also

apprise the parolee of his right to promptly submit written comments or objections for the Board's consideration. The Parole Court hearing officer is responsible for ensuring that a copy of the report is served on the parolee, and shall return a certificate of service to the Parole Court Docket Clerk verifying the date of service.

2.    The written report is the official record of the Parole Court Hearing.

3.    If the Parole Court determines that no charges have been proven, but that there is probable cause to believe any charge may be proven, the case may be continued pending further hearing. The Parole Court should also determine whether it is appropriate to detain the parolee pending such further hearing. These findings are to be reduced to writing, and a copy is to be served on the parolee.

4.    Except as provided in the preceding section, if no charges are proven to the reasonable satisfaction of the Hearing Officer, the Hearing Officer shall forthwith prepare a draft order, for the Board's signature, directing withdrawal of any warrant issued by authority of this department. That draft order and the Hearing Officer's report shall be filed with the Board, and copies forwarded to the Executive Director (or designated officer) and members of the Board, by the most expeditious means. The Clerk of the Hearing Office shall prepare a monthly docket of acquittals for the Board's review. A copy of that docket shall be forwarded to the Executive Director or designated officer. A parolee who has been accused of a specific parole violation, after the charge is found "not proven," shall not have his parole revoked for that violation unless the charge is subsequently proven in a new evidentiary hearing or unless he is convicted of an underlying criminal charge. The Board's review of acquittals is for the purpose of ensuring that Hearing Officers are properly evaluating the evidence presented to them. The Board will also review the files pertaining to proven charges as they determine whether parole should be revoked.

5.    If the parolee is found guilty of any charge, the Hearing Officer's report shall be filed with the Clerk of the Hearing Office. The Clerk shall prepare two separate dockets. The cases in which Hearing Officers recommend reinstatement shall be presented to the Board separately from those cases in which the Hearing Officers recommend revocation. The cases in which Hearing Officers recommend revocation shall be presented to the Board no earlier than three weeks after service of the Parole Court report, so as to allow the parolee an opportunity to submit any written comments or objections to the Board.

6.    If the parolee believes the Parole Court's written report misstates the facts adduced at the hearing, he or his counsel shall submit to the Board a

20

written objection to that report within fourteen days of receipt of the report. Any objections not raised are deemed waived. The parolee should state what facts he contends were omitted or misstated in the report, or in what other way the proceedings appeared to be unfair. The Board's counsel may remand any case for the parole court to address issues presented by such objections.

7.　　If the parolee has not been incarcerated pending the Parole Court hearing, the Parole Court shall determine whether he should be incarcerated pending the Board's final decision.

8.　　If the Parole Court recommends reinstatement, the written report should be submitted to the Board at the earliest practicable time. When reinstatement is appropriate, the Board believes that society benefits when this decision is made and carried out as soon as possible.

9.　　If the Parole Court recommends revocation, the written report should be submitted to the Board within a reasonable time after the time has run for the parolee to file his objections to the report.


### Article Fourteen
### Board Action Subsequent to Parole Court

1.　　The records of Parole Court proceedings shall be maintained in the department's file pertaining to the affected parolee.

2.　　The Board shall take up its parole court dockets during regularly scheduled open public meetings. After consideration of the parole court report and any written objections submitted by the parolee, the Board shall decide whether to revoke parole.

3.　　Any Board order, revoking parole shall state the reasons for revocation and shall refer to the evidence relied on in determining that revocation is appropriate.

4.　　If the Board is inclined to reinstate to parole supervision any parolee found guilty of parole violation, the case may be continued to a later meeting, pending verification of his home and job plan.

5.　　If the Board is of the opinion that the interests of justice will be served by remanding a case for further hearing, either to ensure that the parolee has had due process or to ensure that society is properly served by a more thorough fact-finding process, such proceedings shall be conducted as promptly as may be practicable and just.

6.　　The Clerk shall notify the Department of Corrections of any order revoking parole or returning the parolee to parole supervision.

**7.**    The Clerk shall ensure that the Executive Director receives copies of any dockets, orders, or records he may need.

**8.**    The Board shall consider the record of proceedings and vote to revoke or reinstate parole, as they deem proper. The Board will only consider revocation on charges proven to the reasonable satisfaction of the Parole Court. However, the Board may remand any charge for further hearing.

**9.**    The Board retains jurisdiction to reconsider any revocation that they may later determine to have been improvidently ordered.

**Article Fifteen**
**Records**

**1.**    The records of the Board pertaining to each prisoner are confidential. Prior to enactment of the statutory privilege in 1951, the Legislature regarded these files as privileged by common law. The Legislative history of Act 599 of 1951 indicates that the Legislature was concerned about the risks of abuse if individuals, including public officials, had access to the sensitive information in these files. Act 83-750 of 1983 increased the likelihood that the Board would receive useful, but sensitive, information from crime victims and public officials. The context of this act indicates that the Legislature intended for communications from these individuals to be kept confidential.

**2.**    The records maintained in the Board's Minute Books are public records. As provided herein, copies of the Board's dockets, including a record of the action taken, will be filed in the Board's Minutes for public inspection.

**3.**    Board Orders granting pardons, with or without restoration of civil and political rights, paroles, or remissions of fines or forfeitures are public records. The statement of reasons filed by each member voting in favor of such grant are public records.

**Article Sixteen**
**Flexibility in Responding to Crises**

**1.**    When the Board determines that circumstances exist manifesting a critical need for the Board to expedite parole consideration, the Board may direct its staff to implement these procedures, consistent with available resources.

2.    The staff will survey the prison population, with a view toward assisting the Board in exercising its discretion in setting priorities for special dockets.

3.    After reviewing the data assembled by the staff, and considering advice offered by our staff, the Board may set criteria for Special Dockets. The Board may also set criteria for a Secondary Docket. These criteria will be adopted by special order of the Board, entered into the minutes and published on the Board's web site.

4.    Clerical staff will be assigned to initially screen files that appear to meet these criteria. These cases will be divided into three categories: those that clearly are excluded, those that may be excluded from the Special Docket but appear to be candidates for the Secondary Docket, and those that are clearly not excluded from the Special Docket. Cases that are clearly excluded from the Special Docket will remain scheduled for parole consideration on the tentative dockets previously established according to these procedures, except as otherwise provided herein. Cases that are not excluded from the Special Docket will be forwarded to a designated officer for further review. Cases that may be considered for a Secondary Special Docket will be forwarded to the Review Committee for further review.

5.    Special Docket cases are those in which the current offense does not require victim notification under §15-22-36, Ala. Code. The cases will be initially screened by knowledgeable clerical employees.

6.    Secondary Dockets may be established for closer review of prisoners who have been convicted of violent crimes, with a view toward identifying individual prisoners who appear less likely to commit violent crimes in the future. Because of the potentially higher stakes, the staff must exercise proportionately greater discretion in reviewing these files to identify candidates for earlier consideration. More experienced officers will review these cases.

7.    The designated staff officers reviewing Special Docket cases will consider the nature and severity of the current offense, the seriousness of prior criminal history, and the length of sentence and time served; and may consider events occurring since incarceration to determine the rescheduled consideration dates. These designees are authorized to order rescheduling of consideration, within the parameters established by the Board's emergency order.

8.    The staff officers and clerical employees involved in Special Docket reviews will meet frequently and consult with other staff as appropriate, and will ensure that the Executive Director and the Board are kept apprised of their progress and of any potential obstacles.

**9.**    The Review Committee members reviewing Secondary Docket cases will consider the nature and severity of the current offense, the seriousness of prior criminal history, the length of sentence and time served, and community attitude toward the offender; and may consider events occurring since incarceration to determine the rescheduled consideration dates. The Committee is authorized to order rescheduling of consideration, within the parameters established by the Board's emergency order.

**10.**    While any Secondary Docket order is in effect, the Review Committee will meet frequently and consult with other staff as appropriate, and will ensure that the Executive Director and the Board are kept apprised of their progress and of any potential obstacles.

**11.**    Backlogged victim notification cases may be screened by a senior officer or senior VSO Officer, who may direct the Victim Service unit to expedite notice in cases where the information appears to be current, even if there are other cases more overdue. This officer may also screen backlogged cases to determine whether any other backlogged case should be expedited, and if so, he may direct that such case be processed.


### Article Seventeen
### Organization of Panels

**1.**    The provisions of this article apply during the time that the Legislature has provided for temporary expansion of the Board by appointment of special members.

**2.**    For purposes of this article, the term "all members" refers to both special members and regular members; the term "regular members" refers to those members appointed to the six-year terms of the permanent Board; and the term "special members" refers to those members appointed for the limited purpose of hearing and deciding cases.

**3.**    The Chair will designate the membership of panels, so that all members of the Board will know in advance which dockets they are assigned to hear and which dockets they are assigned to relieve, and will be able to prepare for those dockets by studying the files.

**4.**    Two panels, each of three members, will be established for each day that cases are docketed for consideration. Each panel will be assigned to hear the cases on specified dockets at a specific site. The remaining member of the Board will be the primary alternate for that day. In the event that a member of either panel must absent himself for all or part of the meeting,

24

this primary alternate will relieve that member as needed. These assignments will be stated in the Chair's notice to the Board of the meetings of each panel, which shall also be published in the Board's minutes.

5.    The Chair may also designate a secondary alternate from each panel to relieve members of the other panel, in the event of the unavoidable absence of two members of the panel for all or part of the meeting. This alternate may relieve a member of the other panel after ensuring that he meets his obligations to his own panel.

6.    Two members of a panel constitute a quorum of the panel, and may act in cases that can lawfully be decided by a majority vote.

7.    Notwithstanding the general provisions of these operating procedures, during the terms of the special members, three members will hear and decide each case that could not be granted without unanimous agreement.

8.    In the event that a panel of the Board finds it necessary to continue a case, as provided in the general provisions of these operating procedures, the case will be considered by the same panel originally assigned to hear the case.

9.    Individual members of the Board should not seek to alter the docketed panel assignments merely for personal convenience or for other personal motive. The Board recognizes that its best interest as an institution, as well as the public's best interest, is better served if substitution of alternates is a rare event.