## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

Patrick Joseph Charest, #182262

       Plaintiff,

Vs.

Alabama Pardon & Paroles et. al.,

       Defendants.

2009 APR 22  A 10 00

DEBRA P. HACKETT
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA**2:07-CV-984-MHT**

## RESPONSE / REPLY TO DEFENDANTS
## WILLIAMS, WEATHERLY AND LONGSHORE
## UNSUPPORTED ANSWER FILED 1/10/08

COME NOW Patrick Joseph Charest (hereinafter "CHAREST") moves this Honorable Court to respectfully review as shown upon this Court as follows:

FIRST, Defendants answered collectively, so Charest more than likely would assume that Document No #21, dated above as received by Charest on or about February 6th, 2008 will necessarily be responded to accordingly, throughout as answered:

DEFENDANTS' stated at page 1, §§ 1 -2 that:

> 1)     "Defendant is an agency of the State of Alabama. As such, it is immune from suit in the courts of the United States pursuant to the Eleventh Amendment of the U.S. Constitution.

> 2)     "As an agency of the State of Alabama, Defendant is not a "person" subject to liability under 42 U.S.C. §1983, *Will vs. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). The Complaint fails to state a claim upon which relief may be granted." *Id.*

§ 1.     Charest maintains, and replies as does the Eleventh Circuit –that the "*Eleventh Amendment*," only bars suit(s) directly against a **state** or its **agency**, see *Papasan v. Allian*, 478 U.S. 265 (1986); *Pennhurst State School & Hosp. V. Halderman*, 465 U.S. 89 (1984), thus since Charest is suing individual defendants, and not the state,

or the agency itself under §1983, only those *persons,*" who Charest stated in this instant action which "*subjects or causes to be subjected,*" the deprivation of his Constitutional rights are personally actionable for their individual wrongdoings.

## A.    <u>Eleventh Amendment Immunity</u>:

§ 2.      The Eleventh Amendment to the Constitution of the United States provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

> While the Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another State. *Edelman v. Jordan*, 415 U.S. 651, 663-64, 94 S. Ct. 1347, 39 L.Ed.2d 662 (1974). "Thus the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred by the Eleventh Amendment." <u>Id. at 664</u>. The immunity provided to the states by the Eleventh Amendment also attaches to and protects individuals who are sued in their official capacities as well as state agencies and entities. This is because a suit against a state employee in his official capacity or against a state agency is in essence a suit against the state, as any monetary judgment obtained would be satisfied from state funds. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S. Ct. 2304, 105 L.Ed.2d 45 (1989).

Since Charest is neither suing the State as a Defendant, nor is he requesting or asking for any money damages against these three (3) named specific individual Defendants the State has "*no real interest,*" *see Hoffman v. Connecticut Income Department*, 492 U.S. 96, 106 L.Ed.2d 76, 109 S.Ct. 2818 (1989); likewise Charest avers that these three (3) Defendants are not being sued as governmental officials in their official capacity because such would actually be a suit against the governing entity itself. See *Kentucky v. Graham*, 473 U.S. 159, 167 n.14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), notwithstanding the Eleventh Amendment interpretation which would then, bar such instant action, absent Defendants S. Williams, V. Weatherly and R. Longshore fitting

such criterion –the Eleventh Amendment immunity is herein inapplicable to said remaining defendants –as in artfully raised by Defendants.

"Whether a defendant is an 'arm of the state' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Manders v. Lee*, 338 F.3d 1304, 1309 (11th Cir. 2003). In making this determination, the Court considers four factors: (1) how the entity is defined by state law, (2) the State's degree of control over the entity, (3) the source of the entity's funding, and (4) who is responsible for judgments against the entity. Id., absent the Defendants asserting such, said affirmative defense is also deemed "waived."

In the landmark decision *Ex parte Young*, 209 U.S. 123, 52 L.Ed. 714, 28 S.Ct. 441 (1908), the Supreme Court recognized an exception to the general rule that a state official, acting in his official capacity, is immune from suit. The *Young* court held that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law by a state official. Id. at 155-56, 159. In *Eldeman v. Jordan*, the Supreme Court interpreted *Young* expansively, holding that a federal court may impose an injunction that governs the official's future conduct but not one that awards retroactive monetary relief. 415 U.S. 651, 664-66, 39 L. Ed.2d 662, 94 S.Ct. 1347 (1974).

Simply put, the Eleventh Amendment does not bar claims for equitable relief against the individual Defendants in their official capacities, as long as those claims are only for prospective injunctive relief. *Ex Parte Young*, *supra*. *Young* and its progeny provide for prospective injunctive relief for the ongoing violations of federal law, and Charest requested for "*prospective declaratory and injunctive relief,*" against further, future discriminatory actions. Therefore, the Eleventh Amendment as to the individual

Defendants does not bar these claims in their capacity.       Moreover,   the   Eleventh Amendment sovereign immunity does not apply to bar relief under 1983 when a state official is sued for prospective injunctive relief to "*end a continuing violation of federal law*," as herein alleged, requested by Charest. *See Seminole Tribe of Florida*, 517 U.S. 44, 73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Although "*neither a State nor its official acting in their official capacities are 'persons' under 1983*," *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), a state official sued for prospective injunctive relief in his or her official capacity is a person under 1983, *see id. at 71 n.10*, as are state officials sued in their individual capacities. *See Hafer v. Melo*, 502 U.S. 21, 31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), thus Charest's named Defendants having not properly plead said immunity doctrine defense under *Will v. Michigan Dept. of State Police*, progeny their application remains insufficient. Cf. Doc. #21, at page 1, § 2.

Moreover this Court well knows better than I that State officials acting in their individual capacities are not protected by the sovereign immunity conferred by the Eleventh Amendment. *See Harden v. Adams*, 760 F.2d 1158, 1164 (11th Cir. 1985). The Eleventh Amendment also does not bar claims (for monetary or injunctive relief) against the individual Defendants in their individual capacities. *See Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992). Thus Charest's specific named Defendants: "1) Sidney Williams, 2) Velinda Weatherly and 3) Robert Longshore as mentioned are not entitled to the "Eleventh Amendment" immunity, as erroneously mentioned in their *ANSWER*, *see Adams, supra*.

"Because qualified immunity is a defense not only from liability, but also from suit, it is 'important for a court to ascertain the validity of a qualified immunity defense "*when*

asserted by the named Defendants" in the lawsuit.'" *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1370 (11th Cir. 1998)). "The qualified immunity defense may be raised and addressed on a motion to dismiss, and will be granted if the complaint 'fails to allege the violation of a clearly established constitutional right.'" *Smith v. Siegelman*, 322 F.3d 1290, 1294 (11th Cir. 2003) (quoting Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001)), however this Court in it's December 6th. 2007 ORDER specifically directed, that before parties could primarily file a[ny] summary judgment / or motions to dismiss –this Court directed that said parties were required, first, to seek permission for filing such at the initial stage, the Defendants have "yet" to seek such permission thus Charest requests that this Court enforce its issued directives against the Defendants for their disobedience to have first sought "for leave, permission for such, in the interests of federal comity."

Charest maintains that for the Defendants "to [have] received qualified immunity, those official's must first prove [they] were acting within the scope of discretionary authority when the allegedly wrongful acts occurred." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). "[A] government official [must] prove that he [or her] acted within his [or her] discretionary authority by showing [the] 'objective circumstances which would compel the conclusion that his [or her] actions were undertaken pursuant to the performance of his [or her] duties and within the scope of his authority.'" *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (quoting Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988)). At all times relevant to this issue, Charest asserts, maintains that said Defendants usurped their performance of duties and acted outside the scope of his [or her] authority and as such acted without his [or her] discretionary authority.

Not only have Defendants S. Williams, V. Weatherly and R. Longshore failed to properly assert such defense, all have failed to place any acceptable attestations in the "record proper" to support their *ANSWER*.

Only when a Defendant "[E]stablishes that he was acting within his [or her] discretionary authority, then and only then would the burden shift to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002), Charest maintains, although the Defendants have failed to meet that stricture, for the sake of argument Charest asserts the that such has not been asserted by the remaining named Defendants. In order to decide if the plaintiff is required to meet the shifted burden, it will be necessary for the court to apply a two-part test. First the court must determine "whether plaintiff's allegations, if true, establish a constitutional violation." *Smith v. Siegelman*, 322 F.3d 1290, 1295 (11th Cir. 2003). In the event the court finds that the allegations do state a constitutional violation, the court must go on to determine "whether the right was clearly established." Id. at 1295.

Since Charest's "suit" is in fact against specific named defendants and not against the "State" itself, nor did Charest seek a[ny] monetary relief, but only declaratory and future injunctive relief, thus the Eleventh Amendment proscriptions as applied to this instant case are not applicable to Charest's distinguishable §1983 claims. ·

Charest respectfully asserts, maintains that *Young* supra, and its progeny provide for prospective injunctive relief for ongoing violations of federal law, worthy of this Court's judicial scrutiny under the United Supreme Court's holding in *Wilkinson v. Dotson*, 544 U.S. 74, 161 L.Ed.2d 253, 125 S.Ct. 1242 (2005), *inter alia*.

In the present case, Charest's Complaint sought a simply declaration that certain acts by specific named Defendants be ruled unconstitutional and unlawful and asked the

Court to enjoin such practices and take remedial action to ensure that Defendants 1) S. Williams, 2) V. Weatherly and 3) R. Longshore comply with all such laws in the future. As such, the _Young_ exception applies therefore no rational basis remains for dismissal of said Defendants. Accordingly, any relief afforded these three (3) Defendants based on the Eleventh Amendment should be denied. *See Ex Parte Young*, 209 U.S. at 159-160; *Sandoval v. Hagan*, 197 F.3d. 484, 492 (11th Cir. 1999); *Ocean v. Kearney*, 123 F. Supp.2d 618, 621 (S.D. Fla. 2000).

**B.    Defendants**:

§ 3.        With respects to the remaining Defendants 1) S. Williams, 2) V. Weatherly and 3) R. Longshore as specifically named in this Federal action –the Supreme Court has expressly recognized that the Eleventh Amendment is not limited in its application to suits against a state, as allegedly asserted by Defendants Doc. # 21 (January 10, 2008) *ANSWER* -but rather that its application is to be determined by the essential nature and effect of the suit in question, thus Charest maintains:

Although an earlier Supreme Court case took an opposite view, the following Supreme Court decisions have expressly recognized that the Federal Constitution's Eleventh Amendment is not limited in its application to suits against a state as a named defendant, but rather that its application should be determined by the essential nature and effect of the suit in question: "1) *Poindexter v. Greenhow* (1884) 114 U.S. 270, 29 L.Ed. 185, 5 S.Ct. 903; 2) *Pennoyer v. McConnaughy* (1891) 140 U.S. 1, 35 L.Ed. 363, 11 S.Ct. 699; 3) *Scheuer v. Rhodes* (1974) 416 U.S. 232, 40 L.Ed.2d 90, 94 S.Ct. 1683, 71 Ohio Ops 2d 474; and 4) *Ex parte Young*, (1908) 209 U.S. 123, 52 L.Ed. 714, 29 S.Ct. 441 as follows:

1.    **Suit(s) held not precluded by Eleventh Amendment**:

1).        "It was observed by the Supreme Court in *Poindexter v. Greenhow* [114 U.S. 270] -that the question whether a suit is within the prohibition of the Eleventh Amendment is not always determined by reference to the nominal parties on the record –the prohibition must be determined by a consideration of the nature of the case as presented on the record and that the Eleventh Amendment is to be substantially applied in furtherance of its intention, and not evaded by technical and trivial subtleties –as attempted by these Defendants hereinafter, Charest requests that this Court apply the forgoing reasoning under the holdings of this Circuit's progenies.

The Supreme Court held, under the circumstances of the following cases, that the Federal Constitution's Eleventh Amendment did not preclude a federal action against state officials, in that the state was not a real or substantial party in interest in the action:

Also announced by the Supreme Court in *Poindexter, supra.,* was an additional case which arose in a state court as-applied in the companion cases of *White v. Greenhow* (1885) 114 U.S. 307, 29 L.Ed. 199, 5 S.Ct. 923; and *Allen v. Baltimore & O. R. Co.* (1885) 114 U.S. 311, 29 L.Ed. 200, 5 S.Ct. 925 -both of which arose in the federal courts -it was held that actions against state officials who had acted pursuant to a state statute which violated the Federal Constitution were not precluded by the Eleventh Amendment. (Emphasis-added).        In all three cases, it was alleged that the statute, which provided that certain bond coupons would not be accepted by the state as a means of paying taxes, violated the Federal Constitution's contract clause (Art I, 10, cl 1). Addressing the contention that the Eleventh Amendment barred such suits, the court noted that the suits (1) had not named the state as a party; (2) were not directly upon a contract between bondholders and the state; (3) had not been brought for the purpose of controlling the discretion of executive officers or administering funds actually in the public treasury; (4) were not attempts to compel officers of the state to do the acts which

constituted the performance of a contract by the state; and (5) were not cases in which the state was a necessary party. The Supreme Court further stated that suits between individuals, unless the state was a party in a substantial sense, were untouched by the Eleventh Amendment, no matter how much the determination of such suits might accidentally and consequentially affect the interests of a state or the operation of its government. " _Id_.;

2).            "In _Pennoyer v. McConnaughy_ [140 U.S. 1] -a case in which a citizen of one state brought an action in Federal Circuit Court against another state's board of land commissioners, which board had as members the state's governor, secretary of state, and treasurer, the Supreme Court, affirming the Circuit Court's judgment, held that such action was not a suit against the state within the meaning of the Eleventh Amendment. The state in which the citizen's land was located had enacted a statute, which authorized the board of land commissioners to cancel its certificates of sale with respect to parcels of land owned by the state. One of the canceled certificates had been issued to a prior owner of the land held by the citizen at the time of the statute's enactment. In filing his Circuit Court action against the board of land commissioners, the citizen contended that such cancellation violated the Federal Constitution's contracts clause. Holding that the Eleventh Amendment did not bar such action, the court stated that it had to be borne in mind that the suit was not against the governor, secretary of state, and treasurer as such officers, but against them collectively as the board of land commissioners. Furthermore, continued the court, the citizen did not seek any affirmative relief against the state or any of its officers, nor did he seek to compel the state officers to do and perform any acts in connection with the subject matter of the controversy requisite to complete his title to the land.

Denying a county sheriff's petition for a writ of habeas corpus where the sheriff had been held in contempt by a Federal Circuit Court for refusing to turn over to a railroad company's receiver, who had been appointed by the Circuit Court, property upon which the sheriff had levied

while it was in the hands of the receiver, the Supreme Court stated in *Re Tyler* (1893) 149 U.S. 164, 37 L.Ed. 689, 13 S.Ct. 785, that, even if the receiver's action to enjoin the sheriff from interfering with the property were regarded as a plenary bill in equity properly brought for the purpose of testing the legality of state tax which the sheriff was attempting to enforce when he levied upon the property, such action would not constitute a suit against the state in contravention of the Eleventh Amendment. A suit was not an action against the state within the meaning of the Eleventh Amendment, said the court, where the suit-whether it sought damages, injunctive relief, or the issuance of a writ of mandamus to enforce the performance of a purely ministerial legal duty-was brought against defendants who claimed to act as officers of the state and who, under color of an unconstitutional statute, injured or wrongfully held money or property unlawfully taken on behalf of the state." *Id.*;

3).       "In *Scheuer v. Rhodes* [416 U.S.232] -which involved a federal civil rights action against a state governor and other state officials, the Supreme Court stated that it was well established that the Eleventh Amendment barred suits against the state only when it was the named party, when it was the party in fact. Because the Eleventh Amendment did not in all instances bar actions for damages against state officials charged with depriving a person of a federal right under color of state law, the Federal District Court below had acted prematurely in dismissing complaints, which had been brought by personal representatives of students who had been killed on the campus of a state-controlled university, in which damages were sought under 42 U.S.C.S. §1983 against the state governor, other state officials, and members of the state National Guard, where the personal representatives alleged facts that demonstrated that they were seeking to impose individual and personal liability on the named defendants for their alleged deprivation of the students' rights under color of state law. The court observed that (1) the Eleventh Amendment provided no shield for a state officer confronted by a claim that the officer had deprived another of a federal right under the color of

state law, and (2) such an officer could thus be subjected in his person to the consequences of his individual conduct when he acted under a state law in a manner violative of the Federal Constitution." _Id._;

a.    **Prospective payment or expenditure:**

i).        "The Federal Constitution's Eleventh Amendment does not preclude a federal court's imposition of monetary liability on a state in the form of a "prospective" payment or expenditure from state treasury funds for future or continuing conduct in violation of federal law, the Supreme Court has recognized." _Id._;

ii).       "In _Milliken v. Bradley_ (1977) 433 U.S. 267, 53 L.Ed.2d 745, 97 S.Ct. 2749, the Supreme Court, noting that it had previously recognized that a suit for money damages against a state was proper under the Eleventh Amendment to the extent that such action sought the payment of state funds as a necessary consequence of prospective compliance with a substantive federal-question determination, held that a Federal District Court's order in a school district desegregation case, which order mandated that the state pay one-half of the additional future costs attributable to remedial programs directed to the educational components of reading, teacher training, testing, and counseling, did not violate the Eleventh Amendment. The court said that such order fit squarely with the prospective-compliance exception to a state's Eleventh Amendment immunity, which exception permitted federal courts to enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury. The fact that the programs were compensatory in nature did not change the fact that such programs were part of a plan that operated prospectively to bring about the delayed benefits of a unitary school system, the court concluded." _Id._;

iii).      "The court stated in _Hutto v. Finney_ (1978) 437 U.S. 678, 57 L.Ed.2d 522, 98 S.Ct. 2565, reh den 439 U.S. 1122, 59 L.Ed.2d 83, 99 S.Ct. 1035, that the line between retroactive

monetary relief against the states-which was prohibited by the Eleventh Amendment-and <u>prospective relief-which the Eleventh Amendment did not prohibit</u>-should not be so rigid as to defeat the effective enforcement of prospective relief," (Emphasis-added), citing *Edelman v. Jordan*, [415 U.S. 651] as stated in *Kentucky v. Graham*: "that monetary relief is ancillary to injunctive relief is not barred by the Eleventh Amendment," and *Papasan v. Allain*, [478 U.S. 265] "the court stated that relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment, even though accompanied by a substantial ancillary effect on the state treasury." *Id.*;

iv).        "Vacating a Federal Court of Appeals judgment insofar as such judgment had affirmed a Federal District Court's dismissal of claims that a state had deprived some counties of the use and benefits of certain lands purportedly set aside for school use when granted to the state by the Federal Government, in violation of the equal protection clause of the Federal Constitution's Fourteenth Amendment, the Supreme Court ruled in *Papasan v. Allain* (1986) 478 U.S. 265, 92 L.Ed.2d 209, 106 S.Ct. 2932, that such an alleged violation was precisely the type of continuing violation for which a remedy permissibly could be fashioned, notwithstanding the Eleventh Amendment. It was stated by the court that a remedy to eliminate a current disparity in the distribution of benefits of state-held assets-even where such remedy might require the expenditure of state funds-would not violate the Eleventh Amendment, since such a remedy would insure compliance in the future with a substantive federal-question determination, rather than bestow an award for accrued monetary liability." *Id.;*

4).        "In Ex parte Young [209 U.S. 123] -<u>it was held that the Eleventh Amendment did not prohibit the prosecution of an action in Federal Circuit Court against a state attorney general</u>, in which action stockholders of several railroad companies sought <u>to enjoin the attorney</u>

general from enforcing certain orders and acts of the state railroad commission which allegedly violated the stockholders' rights under the Federal Constitution. The court said that the state was not a party to the action simply because the state railroad commission was a party," (Emphasis –added), citing as sufficient authority for, not only the above, and Charest's current proposition are 1) *Smyth v. Ames*, [169 U.S. 466] "enjoining state officials from enforcing a state statute which violated the Federal Constitution, that a suit against individuals for the purpose of preventing them as officers of the state from enforcing an unconstitutional enactment to the injury of the rights of the plaintiff was not a suit against the state within the meaning of the Eleventh Amendment," and 2) *Prout v. Starr*, [188 U.S. 537] "granting injunctive relief –an action against the members of the state board of transportation, which action had been brought for the purpose of preventing the enforcement of the a state statute was invalid under the Federal Constitution –was not a suit against the state within the meaning of the Eleventh Amendment." *Id*.

§ 4.        Notwithstanding the Federal Constitutional's Eleventh Amendment, corporations or *agencies* that have been created by a state could be sued in federal court. Therefore Charest maintains and assert that the state is not the "entire party" in the action, the Supreme Court ruled in *Bank of United States v Planters' Bank of Georgia* (1824) 22 U.S. 904, 6 L.Ed. 244, that:

> "The Eleventh Amendment did not preclude a Federal Circuit Court from asserting jurisdiction over an action brought by a federally chartered bank against a state bank, with respect to which action the state itself held a partial interest as a corporator. The court, noting that a suit against the state bank was no more a suit against the state than against any other individual corporator of the bank, said that the state, by giving the bank the capacity to sue and be sued, had voluntarily stripped itself of its sovereign character and waived all its sovereign privileges. It was a sound

13

principle, observed the court, that when a government became a partner in any trading company, that government divested itself-so far as concerned the transactions of such company-of its sovereign character and took the character of a private citizen.

Reversing a Federal Court of Appeals judgment, insofar as it had held that an agency created pursuant to a compact between two states was protected by sovereign immunity under the Eleventh Amendment, the Supreme Court held in *Lake Country Estates, Inc. v Tahoe Regional Planning Agency* (1979) 440 U.S. 391, 59 L.Ed.2d 401, 99 S.Ct. 1171, that the agency could not claim Eleventh Amendment immunity. The court pointed out that the protection afforded by the Eleventh Amendment was available only to "one of the United States." Although it was true, said the court, that agencies exercising state power could invoke the Eleventh Amendment in order to protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the state itself, the Eleventh Amendment did not afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a "slice" of state power. If an interstate compact disclosed that the compacting states created an agency comparable to a county or municipality, which had no Eleventh Amendment immunity, the court continued, the Amendment should not be construed to immunize such an entity. According to the court, unless there is good reason to believe that the states structured the agency to enable it to enjoy the special constitutional protection of the states themselves, and that Congress concurred in that purpose, there appeared to be no justification for reading additional meaning into the limited language of the Eleventh Amendment. In the case at hand, the court emphasized, both of the states involved had disclaimed any intent to confer immunity on the agency." *Id*.

Although the Alabama Board of Pardon & Paroles remains in fact an agency created by state statute, nevertheless, in accordance with the cases cited above these individual named Defendants are not entitled to immunity under said asserted doctrine.

2.    **State Officers or Agents**:

1).    In viewing, the Supreme Court further held "that the State must be the real or substantial party interest: citing the following Supreme Court cases explicitly, that support –in order for the state's immunity under the Federal Constitution's Eleventh Amendment to be invoked in a suit against a[ny] state official, the state must be the real or substantial parting in interest in the suit. In *Pennoyer v. McConnaughy* [140 U.S. 1] -the court observed that such principle application stated, two classes of cases existed, the first class, said the court, consisted of cases against a state within the meaning of the Eleventh Amendment, in which cases suit was brought against the officers of a state as representing the state's action and liability, thus making the state, although not a party to the record, the real party against which the judgment would operate so as to compel it specifically to perform its contracts. The other class of cases, the court continued, were those in which suit was brought against defendants who, while claiming to act as officers of the state and under color of an unconstitutional statute, committed acts of wrong and injury to the rights and property of the plaintiff which had been acquired under a contract with the state. As to this class, the court said that such a suit was not within the meaning of the Eleventh Amendment as an action against a state, where the suit was brought either (1) to recover money or property in the hands of such defendants which they had unlawfully taken in behalf of the state, (2) for compensation in damages or, in a case where the remedy at law was inadequate, for an injunction to prevent wrong and injury, or (3) for mandamus to enforce the performance of legal duties which are purely ministerial." *Id*.

Thus Charest asserts for the most part Defendants S. Williams, V. Weatherly and R. Longshore are not duly entitled to the immunity requested in their *ANSWER* (Doc. #21, filed January 10th, 2008, furthermore it was held in *Hopkins v. Clemson Agricultural College* (1911) 221 U.S. 636, 55 L.Ed. 890, 31 S.Ct. 654, that, the court recognized that the

Eleventh Amendment was not intended to afford freedom from liability in any case, as herein, where an officer, under color of office, injures one of the state's citizens.

In *Smyth v. Ames* (1898) 169 U.S. 466, 42 L.Ed. 819, 18 S.Ct. 418, modified on other grounds 171 U.S. 361, 43 L.Ed. 197, 18 S.Ct. 888, the Supreme Court, affirming Federal Circuit Court decrees enjoining state officials from enforcing a state statute which violated the Federal Constitution, stated that a suit against individuals for the purpose of preventing them as officers of the state from enforcing an unconstitutional enactment to the injury of the rights of the plaintiff was not a suit against the state within the meaning of the Eleventh Amendment. Citing *Smyth*, *supra*, as sufficient authority for the proposition, the court held in *Prout v Starr* (1903) 188 U.S. 537, 47 L.Ed. 584, 23 S.Ct. 398, in affirming a Federal Circuit Court decree granting injunctive relief, that an action against the members of a state board of transportation, which action had been brought for the purpose of preventing the enforcement of a state statute which fixed minimum railroad rates on the ground that the statute was invalid under the Federal Constitution and federal statutes, was not a suit against the state within the meaning of the Eleventh Amendment.

In *Young*, [209 U.S. 123] the Supreme Court stated that there was ample justification in its Eleventh Amendment jurisprudence for the assertion that individuals who, as officers of the state, were clothed with some duty in regard to the enforcement of the laws of the state, and who threatened to commence either civil or criminal proceedings to enforce an unconstitutional statute, could be enjoined by a federal court of equity from such conduct. Accordingly, the Supreme Court held that the Eleventh Amendment did not prohibit the prosecution of an action in Federal Circuit Court against a state attorney general, in which action stockholders of several railroad companies

sought to enjoin the attorney general from enforcing certain orders and acts of the state railroad commission which allegedly violated the stockholders' rights under the Federal Constitution's Fourteenth Amendment. The attorney general had objected to the jurisdiction of the Circuit Court over him, on the grounds that the action against him was, in effect, one against the state, in violation of the Eleventh Amendment, and that the issuance of the injunction illegally prohibited the state's enforcement of obedience to its statutes. Rejecting such contention, the court said that, if the acts which the attorney general sought to enforce violated the Constitution, the attorney general came into conflict with the superior authority of the Constitution in proceeding under such acts, and in such a case he was stripped of his official or representative character and was subjected in his person to the consequences of his individual conduct. The court therefore dismissed the attorney general's petition for a writ of habeas corpus, which the attorney general had filed after the Circuit Court, had committed him to custody for his contempt in violating the Circuit Court's injunction order. Immunity is not absolute in this instant action.

DEFENDANTS' stated at page 2, § 3 that:

> 3)     "The first ground averred in the Complaint fails to allege sufficient facts from which the existence of a conspiracy may fairly be inferred, and the averments of the Complaint fail to allege sufficient facts to put any Defendant on notice of the charges they are to defend against." *Id.*

§ 5.        Pursuant to 42 U.S.C. 1985(3), a 1985(3) claim requires proof of: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of

United States." *Park v. City of Atlanta*, 120 F.3d 1157, 1161 (11th Cir. 1997)(Emphasis-added)). "In order to prove a private conspiracy in violation of the first clause of 1985(3), a plaintiff must show, *inter alia*, (1) that 'some racial, or <u>perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' action</u>(s),' and (2) that the conspiracy '<u>aimed at interfering with rights' that are 'protected against</u> private, as well as <u>official, encroachment</u>.'" *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68, 122 L.Ed.2d 34, 113 S. Ct. 753 (1993)(Emphasis-added).

§ 6.          With respects to Charest's First Ground in the §1983 Complaint –Charest continues to maintain that post 2002 and 2004 amended *"procedural parole consideration guidelines,"* affected Charest's December 2005 parole review violating the Federal Constitution –whereas Charest sought both *"prospective declaratory and injunctive relief,"* challenging both the Defendant's retroactive and constitutionality of Alabama's unfair and discriminatory parole *"eligibility"* and *"considerations"* resulting in rendering invalid Alabama's procedures as held unconstitutional in *Wilkinson v. Dotson*, [544 U.S. 74] 2005; whereas Charest requests that this Court "<u>take judicial notice of</u>:"

> <u>First</u>, (The U.S. District Court case S.D.N.Y. a §1983 suit challenging New York's *sub rosa* blanket parole denial policy. *See Graziano v. Pataki*, 2006 WL 2023082) –citing <u>*Wilkinson v. Dotson*</u>, progeny;
>
> <u>Second</u>, (The U.S. District Court case E.D.Mich., for the Southern Division, held that cumulative changes to parole eligibility regulations for Michigan's Life –sentenced prisoners violated the U.S. Constitution's ban on *ex post facto* laws. See *Foster Bey v. Rubitschum*, Case No# 2:05-CV-71318-MOB-VMM October 23, 2007) –citing <u>*Wilkinson v. Dotson*</u>, progeny;
>
> <u>Third</u>, (The U.S. District Court case M.D. Pa. for the Middle District of Pennsylvania held that its 1997 law created a *"significant risk"* of

increasing life-prisoners' punishment in violation of the *ex post facto clause*. See *Penn. Prison Society v. Rendall*, Case No# 1:97-CV-01731-ARC March 13, 2006);

Fourth, (Two Ohio prisoners –challenged state's parole procedures, held permitted to bring actions under 42 USCS §1983 in the U.S. District Court for the Northern District of Ohio –claiming the state's parole procedures violated the Federal Constitution. See 329 F.3d 463 (2003 FED App. 147P) remanded by United States Supreme Court in <u>*Wilkinson v. Dotson*</u>, 544 U.S. 74 (2005).

When Charest was convicted / sentenced in 1994 Alabama's guidelines in effect, then, referred to hereinafter, marked and exhibited heretofore as Charest's **Exhibit-1** entitled Alabama's Administrative Codes 1) 640-X-2.01 –2.15 (Board Action in Granting, Denial and Supervision of Parole . . . Rights, Remissions of Fines and Forfeitures, and Investigations and Supervision of Probationers;" and 2) 640-X-3-01 –3-.11 (Forms and Instructions used by the Board of Pardon and Paroles in Granting, Denial and Supervision of Paroles, Pardons, . . . and Investigations and Supervision . . . applicable to the Public) –which were both requested by Charest's Doc. # 41, 42 under Rule 26 et. seq., and likewise ORDERED by this Court first on December 6th, 2007 (Doc. ?) then again, secondly on February 13th, 2008 (Doc# 43) to date said Defendants have "**failed to produce**" specific limited documents, records –guidelines to which Charest <u>must</u> utilize to compare to the subsequent twice amendatory "Articles" now challenged herein to be in violation of the Federal Constitutional *ex post facto* laws governing States –as partially admitted by Defendants (Exhibit-D)(Operating Procedures of the Alabama Board of Pardon & Paroles).

Charest maintains that said named Defendants were acting, in some sense, in concert when they circumstantially agreed to deny him parole, prior to the actual

December 2005 hearing, day –date based upon the 'class-based, invidiously discriminatory animus behind the conspirators' actions.'" *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268-69, 113 S. Ct. 753, 122 L. Ed. 2d 34 (1993)(quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971)), *see* also *Burrell v. Bd. of Tr. of Ga. Military Coll.*, 970 F.2d 785, 789 (11th Cir. 1992), cert. denied, 507 U.S. 1018, 113 S.Ct. 1814, 123 L.Ed.2d 445 (1993); *Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001)

§ 7.         Charest maintains that Defendants S. Williams, V. Weatherly and R. Longshore did on, or before December 6[th.] 2005 through a continuous series of discriminatory acts "collectively, separately and or individually while acting under color of State law under §15-22-20 (Board's creation); §15-22-24 (Duties); §15-22-25 (Investigations); §15-22-26 (Standards for release on parole); §15-22-28 (Investigation for parole); §15-22-29 (Conditions of parole); §15-22-38 (Duties of Board members – mandatory, powers, strictly enforced); §15-22-39 (Penalty for neglecting or failing to perform), *inter alai,* Code of Alabama, 1975 –conspire denying Charest Federal protected rights enjoined through the Fourteenth Amendment violating both §1983 and §1985(;3) strictures, in that said Defendants conspired for the purpose of depriving Charest of equal protection of the laws while said Defendants engaged in active communications during the investigation of considering Charest's parole consideration between October of 2005 up to, and including December 2005 with 1) Governor B. Riley's office, 2) General T. King's office and 3) director M. Shehane at VOCAL –said individual's did arbitrarily, capriciously usurp Legislative intendments, cited above, in denying Charest parole, under the newly intrusive amendatory enactments of 2002, and 2004 parole board guidelines,

known as the Board's "Articles," inapposite to Alabama Administrative Code 640's in effect at the time Charest was in fact, convicted / sentenced.

Additionally Charest maintains that the associated press in Montgómery on March of 2006 released, exposed to the public –which Charest requests that this Court "take judicial notice of, under Rule 201, Fed.R.Evid.," whereas the State was investigating Alabama's two-year college system when General King had asked, requested that Chancellor Roy Johnson help in obtaining grant money for the executive director Miriam Shehane of Victims of Crime and Leniency (VOCAL) where King himself accompanied Shehane to a meeting with Johnson –requesting money for VOCAL.

The newspaper article brought out, that King and Shehane "had talked about VOCAL's losing some funding and the possibility that law enforcement grants could be available from the two-year college system," as odd as that may otherwise seem to some, but not so especially to this Court's learned eye, that is "the very system that Troy King's office was already in fact 'investigating, for almost two consecutive years'" was the same persons, parties Troy King sought after to assist in financing VOCAL's troubled future –as was alleged in Charest §9183 Complaint claim one.

Worthy of particular interest is that it was not until November of 2006 that Defendant King had "removed himself from the college system probe," well enough after Charest was likewise also erroneously denied parole in December 2005. See Charest's **Exhibit-2.**

Charest avers that post –2002 and 2004 Board rules, guidelines when applied to Charest's pre –2002 and 2004 sentence as a Lifer, acted to effectively *increase* his punishment in violation of *Ex Post Facto* and *Due process Clause of the United States*

*Constitution*, see Charest's **Ground Three** at §1983 COMPLAINT page 3, October 19th,

2007.

The challenged rules, regulations and or classified "guidelines now in effect," i.e.,

"Articles" affect Charest's former rights of:

> "1)     Parole review of every three (3) years under Alabama's
> Administrative Code 640-X-2-.02 (Scheduling Cases for Parole
> Consideration) at subsection (8) —whereas, said pre —2002 and
> 2004 guideline stated: "A parole calendar date may be changed by
> order of Board . . . When an inmate is denied parole, the Board will
> determine when his case is to be reset but **in no event shall it be
> reset for more than three (3) years from the date of
> denial**." *Id.* at Exhibit-1;
>
> "2).     Pre-parole **personal interview with prisoners** being
> considered for parole will be conducted by an agent of the Board
> who will then submit a **written report to the Board of his
> [her] findings and evaluations**," cited in 640-X-2-.03. *Id.* at
> Exhibit-1;
>
> "3)     A Parole review worksheet **shall** be completed in each case
> by the parole officer, immediately after he /she completes the
> investigation of a case. This worksheet is reviewed by a senior staff
> officer in the Central Office for consistency and appropriateness
> and for a final evaluation." See (Charest's **Exhibit-3**)(Parole
> Review Worksheet)(PBF 118 rev. 4-86), cited in 640-X-3-.02. *Id.*;
>
> "4)     Basic criteria for pre -parole inmates interviews [under
> Alabama's Administrative Code 640-X-2-.03 at Charest's Exhibit-1]
> —inclusive to a subsequent written reason for the Board's
> subsequent denial under Alabama's Administrative Code 640-X-3-
> .04 (Interview / File Review Worksheet) which should suffice a
> Federal mandated protective stricture, granting either:

"(a)    **Reason Favoring Parole** or

"(b)    **Reasons Favoring Denial** (Charest's **Exhibit-4**),

*infra.*" *Id.*

(Emphasis-added).  Absent this form, first being produced either to Charest or in fact this Court by ORDER *sua sponte* for an in camera hearing (review) according to 640-X-3-.04 strictures the Defendants commingled efforts will continue predicating –depriving Charest of right to know, whereas the language utilized therein, states "This form is used by the board when it is considering an inmate for parole. It has a checklist showing the reasons for favoring parole and the reasons for denial of parole and the reasons for not resetting for parole consideration." **Id**. No comparison can ever effectuate federal comity of Charest's claim against said named –specific Defendants, absent the above anomaly being adequately resolved by this Court's learned eye reviewing said Parole documents.

In Charest's instant action, the only person, agent –field officer whom Charest ever saw, briefly in 2005 was none other than Mrs. Wynn, at Limestone Correctional Facility. *See* Charest's **Exhibit-5**, *infra.*        Charest after receiving his denial in December 2005 –consequentially requested a courtesy copy of, for remedial review –from Mrs. Wynn "attempting to gather and disclose Alabama's evidentiary reason for its arbitrary reason suggesting a denial of parole, however Mrs. Wynn shortly thereinafter only stated: "You need to forward your request to the Legal Dept. of the Parole Board in Montgomery. I do not have the authority to release any type of information or report." See Charest's **Exhibit-6**, attached.  After finding out that Alabama law does not effectively provide for Appellate review a parole board denial under certiorari -Charest immediately requested said same "*documents,*" from Parole Board attorney Mr. Steve Simon, on December 23, 2007, see Charest attached **Exhibit-7** whereupon no response ever surfaced –leading Charest to seek other remedial measures to secure, produce evidentiary materials under

Federal Procedures Rule 26 et. seq., *inter alia*, for DISCOVERY, see Doc.'s # 41, 42 (2/06/08).

Charest maintains this §1983 action remains his sole remedy to right Defendants wrong(s) under Federal standards yet to be clearly addressed under the auspice invoked above, herein; thus Charest requests for an in toto review to appropriately determine if in fact the Defendants post -enactments of said "Articles," remain an *ex post facto* violation when compared to pre −2002 and 2004 guidelines provided Charest, and others similarly situated −under juridical measures of the protective umbrella envisioned beneath the Due Process Clause as well as an Equal Protection vein within our Federal Constitution, see pre-guidelines and forms, attached hereinafter as Charest's Exhibits, supporting a direct contradiction to Defendants' unsupported *ANSWER*, at page two (2) ¶ 3). Additionally Charest avers lost through the *ex post facto* amendments, as challenged, preserving for plenary review a prime juridical cause−federal intervention, as follows:

> "4)    the victim(s) request for a thirty (30) day notice or a waiver of notice to be given to them by the Board before considering a prisoner for . . . parole . . ." under Alabama's Administrative Code 640-X-3-.05 (Victim Request or Waiver Notice) and attached Board's form (Charest's **Exhibit-8**), *infra*.;
>
> "5)    the Board's action(s) to grant, deny, or to continue to a future date, inmate being considered for parole under Alabama's Administrative Code 640-X-3-.06 (Action by Board) and attached Board's form (Charest's **Exhibit-9), infra.**"

Under the current legislative authority −the Board is statutorily mandated to "Notify" the Attorney General's Office pursuant to §15-22-36(d)(The Board) "[S]hall have no power to grant . . . a parole . . . until 30 days' notice that the prisoner is being considered therefore has been given by the board to the Attorney General . . ." Id. Then

again, under subsection (e)(1)(i) "[A] statement that all persons required be notified under the provisions of this section will be allowed, at their option, <u>to either appear before or give their **views** in writing.</u>" Id.                Charest maintains that during said specific bureaucratic procedure, said Defendants acted in concert —engaged in conduct constituting a tortuous act, actions or shortly thereinafter upon receipt of such -said Attorney General took a position to adamantly protest Charest's then upcoming parole consideration —scheduled for December 6[th.] 2005; worthy of particular note, is that Charest attempted to retrieve admissible evidence but said Counsel likewise thwarted the DISCOVERY process denying "documents, records, communications," to prove Defendants' collusion. Cf. Charest's Doc's. # 41 at page 7, § 7 whereas Charest requested an ORDER "for Defendants to forward any and all copies of memoranda between 1) Williams, 2) Weatherly, 3) Longshore or its agents, employees involved in, prior too, and including the December 6[th.] 2005 hearing; inclusive to disclosing those mysterious four special members the Defendants are attempting to shift blame upon; moreover important was Charest's § 8 discovery request under subsections (a) through (u) at pp. 7 –9 which to date have not been produced nor objected by party Defendants to which Charest will in fact, lawfully address —fully —correctly during his "REPLY to Defendants answers to said Interrogatories / Admissions still deficient [?].                Additionally for this Courts learned juridical eye remains Charest Doc. # 42, at page 9, @ Section III to-wit: <u>Interrogatories</u>: starting at § 4 "*Identify by document* . . . b) the type of work performed; c) your discretionary functions, duties and responsibilities;" <u>Id</u>; then at page 10: "*produce by document* any and all other Complaints . . . along the same, similar vein of the allegations as-applied and challenged in this civil tortfeasor, <u>additionally answer, respond and disclose the foregoing</u>:

"a). Disclose any and all contacts *relating to* the following: "1) the Governor's Office, moreover Governor Riley, 2) the Attorney's Generals Office, moreover Tory King, 3) Vocal, moreover M. Shehane, there agents, employees, officers, whether direct, and / or indirectly as to each, every and any representative(s) primarily associated with, dealing, concerning the Board's *review -relating to* protesting paroles, specifically Charest, but not limited thereto, *identify by specific document.*" Id.

(Originally –emphasized).      It still remains within the parameters of both DISCOVERY for Charest to bring forth significant –sufficient proof necessitating the "wheel" as often referenced, and narrowly pinpoint which "spoke" did what –where and how to this Honorable Court for the conspiracy claim –this Circuit holds that "*circumstantial evidence,*" is sufficient to sustain a colorable claim to further investigate Charest's claim; only because Counsel "*failed to disclose evidentiary materials,*" is Charest unable to articulate a sufficient response by Affidavit or otherwise –but Charest will in fact *OBJECT* accordingly and effectuate the proper motion henceforth.

The seminal case of *Kotteakos v. U.S.*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), is still the guidepost of connecting a "wheel" conspiracy. Thus prior to the Defendants amendatory enactment of pre 2002 –2004 guidelines, many prisoners sentenced to "*Life,*" under Alabama's guidelines of being "hard on violent crimes" granting unto most, if not all an incentive to rehabilitate themselves, rewarding them with potentiality for discretionary parole, for example 640-X-2-.02 (Scheduling Cases for Parole Consideration), said guideline stated at section: "(1) As soon as practical after a prisoner is sentenced to prison, the Board causes a file to be prepared on the case. When complete, the Board members or their designee study the file and set a parole calendar date. This parole date is for initial parole consideration . . ."; inclusive to section: "(2) On cases involving crimes committed before May 19, 1980, the parole calendar date is set at

26

one-third of the person term or ten years [1] whichever is less. In cases involving multiple convictions, the parole calendar date is set at one-third of the total term, whichever is less, or at one-third or ten years, whichever is less, of an individual sentence or combination of sentences whichever results in the latest parole calendar date. This calculation also determines the time at which majority vote parole may issue. Further said pre -guidelines state: "(3) On cases committed on or after May 19, 1980, as-applied to Charest, the Board uses the guidelines in establishing the initial parole calendar date. The guidelines take into account past criminal record, pattern and nature (severity) of present offense, and the community attitude toward the offender. Unless the Board determines that the guidelines should not apply, calendar dates will be as follows:

"a)    If sentence is of ten years or more —and the offense is of a particular heinous nature or the present offense is of a violent nature and his previous behavior indicates a high risk potential for future violence —case shall be set on the maximum scale.

. . . .

"c)    All cases will be set in accordance with the guidelines rating in Section III of the parole review worksheet and the scale for parole calendar dates. A copy of each document is included in Chapter 640-X-3 of this Administrative Code; see Charest's attached Exhibits 1; inclusive too, correspondingly Exhibit 3 (640-X-3-.02 Parole review Worksheet), and Exhibit-4 (640-X-3-.04 Interview / File Worksheet), infra.
. . . ." Id.

DEFENDANTS' stated at page 2, § 4 that:

4)    "To the extent that Plaintiff seeks to allege that he was deprived of **liberty** without due process when he was

---

[1]    Alabama statute provides that earned incentive good time apply to time calculations for determining the time at which majority vote parole may issue. The Board also applies this credit in establishing a parole calendar date.

> denied parole, the Complaint fails to state a claim upon
> which relief may be granted, in that the law is well-settled
> that he does not enjoy a **liberty interest** in his desire to be
> paroled and in that the Constitution does not require that
> discretionary parole consideration process be fair. . ." _Id._
> (Emphasis-added).

§ 8.        Charest can only reply, as this Court well knows, as does Charest that under

Alabama law, "the right to parole is a privilege granted by the people of Alabama to those

committed to [y]our penal institutions as punishment for crimes." _Andrus v. Lambert,_

424 So.2d 5, 9 (Ala.Cr.App. 1982); _Holley v. State,_ 397 So.2d 211, 216 (Ala.Crim.App.),

cert. Denied, 397 So.2d 217 (Ala. 1981).    Thus obtaining release through parole, like

obtaining a pardon, is wholly contingent upon either the grace of the detaining authority

or some affirmative statutory entitlement. _United States v. Chagra,_ 669 F.2d 241, 264 (5th·

1982), and although while "no constitutional or inherent right of a convicted person to be

conditionally released prior to the expiration of a valid sentence exists, _Greenholtz v._

_Nebraska,_ [442 U.S. 1], a prisoner, even like Charest "has the right to be properly

considered for parole." _Christopher v. U.S. Board of Parole,_ 589 F.2d 924 (7th· Cir. 1978);

_Wallace v. Turner,_ 525 F.Supp. 1072 (S.D. Fla. 1981).

        Paroling authorities **must** comply with constitutional requirements and may not

determine parole eligibility [or consideration] on improper grounds. _Wallace v. Turner,_

_supra.,_ parole cannot be denied on false, insufficient, or capricious reasons. _Christopher,_

_supra. Tedder v. Alabama Bd. of Pardon & Paroles,_ 677 So.2d 1261 (Ala.Crim.App. 1996),

see also _Tucker v. Alabama Bd. of Pardon & Paroles,_ 781 So.2d 358 (Ala.Crim.App.

2000).

        Counsel for Defendants is wholly wrong, as previously made mention of by Charest

in Document # 41, at page 2 to-wit: "Charest never once argued, nor attempted to present

to this Court as an inmate under Alabama law, that he was **deprived of liberty without due process** . . ." Id.  Such defense by Counsel remains a sham, should be stricken.

Nowhere can this Court, as mentioned by counsel "find in Charest's three (3) succinct claims," that Charest –complained of, ensuing, a denial of parole down a *liberty interest* vein whether under the due process clause or the equal protection clause –to the extent that *liberty* is challenged, Counsel is simply being disingenuous to this Court and attempting to steer Charest's dispositive first impression issue to lead said parties down a well beaten trail Charest can't win if he were to argue the liberty interest vein.

Secondly, Counsel partially admitted, openly to this Court, Plaintiff that "*the Constitution does not require that discretionary parole consideration process be fair* . . ." Id. at State's Answer p. 2 ¶4. If such a statement is true that the Board's process does not have to be fair then not only has Counsel openly admitted albeit partially one of Charest's elements for relief sought, –this Court too can likewise juridically speaking "*take judicial notice of said* fact" and sufficiently move towards taking a closer look at the Board's process of being at least "*fair*" when, how it reviews Alabama inmates as-applied to Charest's parole *eligibility* or *consideration* needing to be brought into the 21st. Century –which Charest strenuously challenges the Boards flagrant process, however given Counsel assertion that "fairness has no place in Alabama's Constitutional parole consideration process," the same likened deprivation was most recently overturned in *Wilkinson v. Dotson*, 544 U.S. at 74 (2005) (challenging "*prospectively, the unfair parole policies*" ) –the due process complaint was quite unique, because as herein –it too, did not challenge the way the Board exercised its discretion; rather it alleged as Charest, that the Board was actually not exercising its discretion at all. This instant case follows the same line of reasoning, that the United States Supreme Court found interesting enough to

consider and changed Ohio's Parole Board procedures indistinguishable to the facts and circumstances as a whole which arguably demonstrate Alabama's Parole Board procedures are illegal at best –the statistical trends, and recurring pretextual "*reasons*" for denials and common threads of reliance solely upon the crime [versus Alabama's 640-X guidelines inclusive to title §15-22-20 through §15-22-40] are not in accord with statutory criteria, a single denial "*does not a policy make*," it takes a group attack as requested herein your Honor to gain the juridical eye of Federal Court comity in road with *Wilkinson v. Dotson*, supra.

The basic tenet established above now graciously admitted by the Defendants has a fundamental substantive underpinning to Charest's three colorable claims, grounds for immediate intervention and plenary review by this Court under *Wilkinson*, supra.

Charest respectfully requests that this Court give no attention to Defendants *ANSWER* at page two (2) § 4 –based upon it being a moot defense –because their currently remains "NO-CLAIM for a[ny] liberty interest issue before this Court by Charest. <u>DEFENDANTS' stated at page 2, § 5 that:</u>

> 5) "The Complaint fails to state a claim against the Board for knowingly relying on false information . . . " *Id*.

§ 9.        Charest maintains that "erroneous –false information was spoken, asserted by one Maria LeBreton a person contacted by the Defendants outside Alabama's State law notification(s) ("640-X-2-.06 [notices of pending parole consideration, Act #83-750]; 640-X-2-.07 [protests]; 640-X-3-.05 [Victim Request of Waiver of Notice]"), whom worked in concert –collusion with either VOCAL or the Attorney Generals Office -at the 2005 parole hearing, whereas said parties absent any first hand knowledge, either through contacts, such as (i) visits, (ii) phone conversation, or (iii) letters collectively stated that

"*Charest had not changed over the years of imprisonment*," id. at Charest §1983 Complaint Claim 2. In *Monroe v. Thigpen*, 932 F.2d 1437, 1442 (11th. Cir. 1991) -the Court of Appeals for the Eleventh Circuit stated:

> "It is true that the Alabama parole statute is framed in discretionary terms and therefore does not confer a liberty interest in parole. Ala.Code §15-22-26 (1975); *Thomas*, 691 F.2d at 489. Nevertheless, this discretion is not unlimited. A parole board may not engage in 'flagrant or unauthorized action.' *Thomas*, 691 F.2d at 489. Section §15-22-26 cannot be read as granting the Board the discretion to **rely on the false information in determining whether to grant parole**. Therefore, by relying on the false information in Monroe's file the Board exceeded its authority under §15-22-26 and treated Monroe arbitrarily and capriciously in violation of due process. *Thomas*, 691 F.2d at 489." Id.

(Emphasis-added).                    Charest relies on the progeny of *Thomas v. Sellers*, 691 F.2d [487], 489 (11th Cir. 1982), *Monroe*, 932 F.2d at 1442., and other cases along said same holding, Charest made a colorable claim, that "*false information*," was used, considered by the Board in 2005, thus confirming he was effectively deprived of due process based upon said, specific false information by Maria LeBreton which caused the injury –denial for fair consideration of parole –therefore the Parole Board Defendants relying on such "*false information*," exceeded their lawful authority under §15-22-26, Ala.Code, 1975 and treated Charest both arbitrarily and capriciously in violation of due process. *See Monroe*, *supra*, see Charest's attached Affidavit –supporting said "*false information*," above.

To analyze Charest's procedural due process claim, effectively, under the vein asserted under the plenary review of *Wilkinson*, *supra*, this Court must first determine whether a constitutional interest exists in the context of which the United States Supreme

31

Court holds that "retroactive procedural changes in the parole board process is prohibited as-applied to [one's] sentence, whereas it creates a significant risk of increasing his punishment," *see Harris v. Hammonds*, 217 F.3d 1346, 1347 (11th Cir. 2000)(per curiam)(quoting *Garner v. Jones*, 529 U.S. 244, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000). Simply put, Charest asserts, that "[a] person suffering legal wrong because of a an agency actions, or is adversely affected or aggrieved by an agency action within the meaning of a relevant statute, is entitled to judicial review." *See, e.g., St. Cyr,* 121 S.Ct. at 2285 –86.

Charest was entitled too, under the Constitution –for the Board Defendants to "have not relied on the false information -statement made by Maria LeBreton –to have denied him a fair parole consideration in 2005." *See Tefel,* 180 F.3d at 1229 ("the necessary first step in evaluating any procedural due-process claim is determining whether a constitutionally protected interest has been implicated.") Following such a finding, the Court must access the extent of process due. *See Haitian Refugee Center,* 676 F.2d at 1037 ("once we find that a protected interest is implicated, the question remains what process is due.")(quoting Morrissey v. Brewer, 408 U.S. 471, 481, 33 L.Ed.2d 484, 92 S.Ct. 2593 (1972)).

The procedural component of the Due Process Clause of the Fifth Amendment protects against the deprivation Charest suffered, i.e., *"false information relied upon,"* during, the special board's parole consideration in December 2005. Thus, Charest is protected by the Constitution –forbidding said Defendants from relying on such. The Due Process Clause: (1) the right to petition the government and have that petition fairly adjudged "at a meaningful time and in a meaningful manner." *Haitian,* (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 14 L.Ed.2d 62, 85 S.Ct. 1187 (1965)).

As explained by Judge Friendly, among the most attributes of a fair hearing are: (1) notice of the proposed action and grounds on which it is asserted; (2) the right to know the evidence presented against the individual; (3) a decision based solely on the evidence presented; (4) a proceeding open to the public. *See Henry J. Friendly*, Some Kind of Hearing, 123 U. Pa. L. Rev. 1267, 1275 (1975), *see also Mathews v. Eldridge*, 424 U.S. at 348 ("The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.")(quoting Joint Anti-Fascist Committee v. McGrath, 341 U.S. 123, 171-72, 95 L.Ed. 817, 71 S.Ct. 624 (1951)(Frankfurter, J., concurring)).

Further evidence for this Court's plenary review –remain the uncontroverted assertions by at least two (2) Board Defendants, inapposite to Defendants two (2) exhibited Affidavits hereinafter as "**Exhibit-B**, by Defendants Velinda Weatherly at page one (1) to-wit: "**I do not have personal knowledge of what was said, or by whom, at this meeting . . .**" **id**., (i.e., Charest's December 6th, 2005 parole hearing) –thus Defendant Weatherly "could be" relieved, released forthwith as having a responsibility to claims against her in her capacity, as an individual party to this instant action –"if she openly admits not being either present, nor directly, indirectly involved with the two (2) special parole board members on 12/06/05"; Charest therefore moves to strike her testimony as moot –inclusive to her subjective opinion. This Court ORDERED the Defendants on December 6th, 2007 to ANSWER and file WRITTEN REPORT with "*sworn statements of all persons having personal knowledge of the subject matter of the Complaint,*" id., thus since Defendants V. Weatherly has no first hand knowledge of the "subject matter because she didn't participate in the parole procedures at bar" she is DISMISSED from civil liability.

Likewise secondly, is Defendant R. Longshore's Affidavit "**Exhibit-C**, by his own averment at page two (2) in his first paragraph, that "**On 6 December 2005, a panel of special members met to consider whether to parole Patrick Charest. I was not present and did not participate in that meeting** . . ." **id.,** thus Defendant Longshore "could likewise be" relieved, released forthwith as having a responsibility to claims against him in his capacity, as an individual party to this instant action —"if he too would openly admit not being either present, nor involved directly or indirectly —like Weatherly, on 12/06/05 with the two (2) special parole board members"; Charest therefore moves to strike his testimony too, as moot —inclusive to any subjective second hand information - opinion. This Court ORDERED the Defendants on December 6[th,] 2007 to ANSWER and file WRITTEN REPORT with "*sworn statements of all persons having personal knowledge of the subject matter of the Complaint,*" id., thus since Defendant R. Longshore has no first hand knowledge of the "subject matter because he didn't participate in the parole procedures at bar" he is DISMISSED from civil liability.

Rule 56(e) makes it plain that affidavits submitted in support of or opposition to a motion for summary judgment shall be made **on personal knowledge,** shall set forth such facts as would be **admissible in evidence,** and shall **affirmatively show that the affiant is competent to testify to the matters stated therein.** *Fed. R. Civ. P.* 56(e)(emphasis added). It is clear that the Federal Rules of Civil Procedure also provide for the submission of deposition testimony in support of or in opposition to motions for summary judgment. Such testimony is also required to be made on personal knowledge from a witness competent to testify on the matters stated and to set forth facts as would be admissible in evidence. *See, e.g., Rowell v. Bellsouth Corp.,* 433 F.3d 794, 799-800 (11th Cir. 2005)(affirming a decision granting an employer's motion for summary

judgment and explaining that deposition testimony from plaintiff could only be considered if it could "be reduced to an admissible form" at trial); *Randle v. LaSalle Telecomms., Inc.*, 876 F.2d 563, 570 n.4 (7th Cir. 1989); *Home Oil Co. v. Sam's East, Inc.*, 252 F. Supp. 2d 1302, 1308 (M.D. Ala. 2003)(Thompson, J.).

The requirements of Rule 56 make it plain that "affidavits or depositions which set forth conclusory arguments **rather than statements of fact based on personal knowledge are improper.**" (Emphasis-added) *See, e.g., Thomas v. Ala. Council on Human Relations, Inc.*, 248 F. Supp. 2d 1105, 1112 (M.D. Ala. 2003)(Fuller, J.); *Story v. Sunshine Foliage World, Inc.*, 120 F. Supp. 2d 1027, 1030 (M.D. Fla. 2000). *Accord, Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). Testimony that fails to meet the standards set forth in Rule 56(e) is subject to a motion to strike. *See, e.g., Thomas*, 248 F. Supp. 2d at 1112; *Givhan v. Electronic Eng'rs, Inc.*, 4 F. Supp. 2d 1331, 1334 (M.D. Ala.1998)(DeMent, J.), see Charest's attached 1) Motion to Strike and 2) Supporting Affidavit fully adopted and incorporated hereinafter as evidentiary materials opposing Defendants inadmissible affidavits.

See *Macuba v. Deboer*, 193 F.3d 1316 (11th Cir. 1999) (inadmissible hearsay cannot be considered on a motion for summary judgment). To that extent, in addition to Defendants failure to have first requested leave, permission to have filed for summary judgment, as previously court ordered, therefore, the Defendants' exhibited affidavits and statement of facts contain inadmissible, unsupported, or irrelevant statements –under the rule of hearsay, thereby prejudicing Charest; those statements as well as their Affidavits should be disregarded, for purposes of this next stage. *See Rule 56(e)*, Fed.R.Civ.P.

DEFENDANTS' stated at pages 2, 3 § 6 that:

> 6)     "**The Complaint fails to state a claim under the Equal Protection Clause**, in that the Complaint fails to identify similarly situated persons who are treated dissimilarly, and in that only classification described in the Complaint are rational classifications of persons who are dissimilarly situated. In other words, it is rational for the State of Alabama to treat violent felons differently than offenders without a history of violence. Ground Two of the Complaint fails to state a claim upon which relief can be granted." *Id.*

(Emphasis-added).                    First and foremost –Charest points out to this Court, once again Counsel is twisting or attempting to conjoin the Second (2nd) Claim (a Denial of [an] **Equal Protection** [violation]–based upon *false and erroneous information*) into Charest's First (1st) Claim (Denial of Effective Due Process of Article 1, U.S.C. 14th. Amendment [violation]–the *political predisposed parole denial effectuated through conspiracy*) –two entirely different claims respectively not to be intertwined for the sake of argument, and relief –Charest thus moves to strike said "defensive entanglement to Charest real issue," see Charest's attached 1) Motion to Strike and 2) Supporting Affidavit fully adopted and incorporated hereinafter as evidentiary materials opposing Defendants misapplication of Claim One (1).

§ 10.         For the sake of preserving an Objection or Reply Charest will attempt to respond accordingly to Defendants misapplied *ANSWER*, as follows:

## A.    The Theory of Equal Protection and And Equal Protection:

The Equal Protection Clause requires that the government treat similarly situated individuals in a like manner. U.S. Const. Amend. XIV, 1; *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). As a general rule, "legislation is presumed to be valid and will be sustained if the classification

drawn by the statute is rationally related to a legitimate state interest." _Cleburne_, 473 U.S. at 440. When "social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude." **Id.** This general rule gives way, however, "when the statute classifies by [gender,] race, alienage, or national origin," and because such factors "are seldom relevant to the achievement of any legitimate state interest," such laws are subject "to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest." **Id.** Thus, if legislation classifies people in such a way that they receive different treatment under the law, the degree of scrutiny the court applies to the legislation depends on the basis for the classification. _Gary v. City of Warner Robins, Ga._, 311 F.3d 1334, 1337 (11th. Cir. 2002). Where a fundamental right or a suspect class is involved, the court reviews the classification with strict scrutiny. **Id.** On the other hand, "[i]f an ordinance does not infringe upon a fundamental right or target a protected class, equal protection claims relating to it are judged under the rational basis test; specifically, the [regulation / guideline] must be rationally related to the achievement of a legitimate government purpose." **Id.** (quoting **Joel v. City of Orlando**, 232 F.3d 1353, 1357 (11th. Cir. 2000)).

Viewing the limited evidence in the light most favorable to Charest, said evidentiary assertions between suspect class treatment disparities challenged herein, offer sufficient facts for a legal argument to support the assertion that the newly amended regulations are facially unconstitutional under the Equal Protection Clause –in light of the first impression issue for Alabama under the _Wilkinson v. Dotson_, progeny --that Charest has been in fact treated fundamentally dissimilar as a definable group –suspect class with respects to the laws concerning non-violent offenders, and at times some violent offenders too –inapposite to Federal standards, accommodated others. Simply

put, these Defendants cannot predicate any lawful standing to uphold these post amendatory Board "Articles" under the current challenge, therefore said post-guidelines remain both "*irrational and arbitrary*," under *Wilkinson*, when viewed cumulatively to the 640-X's in effect at the time Charest was both convicted / sentenced in 1995.

Strictly speaking, the Equal Protection Clause prohibits these Defendants from unfairly discriminating between equivalent groups. The Defendants may not act in an invidious or arbitrary manner, the key to determining whether these Defendants, in treating one group differently from another, has stepped over the line is to ascertain the level of justification that these Defendants provided to explain their actions. No "single" standard defines the level of justification that is required; instead the Supreme Court has articulated three (3) distinct standards, the **first** and most lenient standard from the standpoint of prison administration, is the rational basis standard. It requires only that the classification be drawn for the purpose of serving a legitimate governmental interest and that the means chosen actually serve that interest. *See, e.g.. San Antonio Independent School Dist. v. Rodriquez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Rinaldi v. Yeager*, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966); *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed 369 (1911); *Metropolitan Life Ins. Co. v. Ward*, 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985); *Gregory v. Ashcroft*, 501 U.S. 452, 11 S.Ct. 2395, 115 L.Ed.2d 410 (1991); *Nordlinger v. Hann*, 505 U.S. 1, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992); *F.C.C v. Beach Communications, Inc.*, 508 U.S. 307, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993).

However, in a stark, marked contrast, the **second** standard, the strict scrutiny standard, commands a close connection between the legislation or practice under examination and a compelling state interest. *See, e.g., Graham v. Richardson*, 403 U.S.

365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (9174); *Miller v. Johnson*, 515 U.S. 900, 115 S.Ct. 2475, 132 L.Ed.2d 762 (1995).    In between these two (2) positions lies the **third** standard, the intermediate standard of review; under it, there must be a substantial relationship to an important (although not compelling) state interest. *See, e.g., Califano v. Goldfarb*, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977); *Plyer v. Doe*, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786, 4 Ed. Law Rep. 953 (1982); *I.N.S. v. Nam Nguyen*, 533 U.S. 944, 121 S.Ct. 2582, 150 L.Ed.2d 743 (2001).    Under traditional equal protection theories, the *"rational basis test,"* is most commonly applied to regulations in the social and economic field when nonfundamental rights are at issue, and when the regulations do not exclude *"suspect groups,"* such as racial or religious minorities. *See, e.g., Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Romer v. Evans*, 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855, 109 Ed. Law Rep. 539 (1996); <u>*Rodriquez*</u>; <u>*Lindsley*</u>, *supra*.

Charest maintains, as does the United States Supreme Court, that the *"strict scrutiny,"* will be the appropriate test when fundamental rights are at stake or a suspect classification is involved. *See, e.g., Police Dept. of City of Chicago v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972)(free speech); *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1996); <u>*Edelman*</u>, *supra*.

Under current law, the intermediate standard applies to gender-based classifications. *See Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); <u>*Califano*</u>, *supra*. This Circuit, as well as others *"suggest,"* that the intermediate standard may also apply in cases involving important, but not fundamental, rights. *See, e.g., L. Tribe, American Constitutional Law*, 1591 –92 (2d.ed. 1988)(contending that the intermediate standard should apply to cases involving children or childhood). Whether to

raise an equal protection claim-rather than one focusing solely on violation of a substantive right-depends in part, therefore, on an assessment of the standard of review used to resolve the equal protection claim. The reason is that the likelihood of a prisoner's suit resulting in relief on an equal protection claim can very well turn on the stringency of the equal protection standard applied by the court. However, in lieu of what's at stake, not only for Charest but also per se for others to follow if the *Turner v. Safley*, [482 U.S. 78] (1987) standard is applied to quell the equal protection claims, then the nature of the interest at stake, or in this case −in jeopardy than Charest's claims don't matter.

The invoked equal protection claim is one of first impression −in Alabama under the ruling recently viewed in Four (4) other states, under the guidance −holding through *Wilkinson v. Dotson*, that "the [parole board] retroactive application of new[er], harsher guidelines to pre-guidelines violate the Constitution's Ex Post Facto and Due Process Clauses . . .", *inter alia*; thus Charest asserts, for the most part -what is in fact occurring at Alabama's parole board −based upon cumulative amended rules, regulations and guidelines being utilized to deny a suspect class of Lifer's parole, is likewise unconstitutional.

For the most part −this Court is more likely to fully grasp and understand a few seminal cases worthy of mentioning (i) in *Morrisey v. Brewer*, 408 U.S. 471 (1972) "it determined that due process imposed certain minimum procedural requirements which must be satisfied before parole could be revoked, that court defined 'it's minimum requirements'"; similarly that court in 1997 found (ii) in *Young v. Harper*, 520 U.S. 143 (1997) that "pre-parole or parole like programs fall under the same umbrella of creating a 'liberty interest,' that cannot be revoked without proper due process procedures"; then in another vein the Supreme Court came to a completely different conclusion (iii) in

*Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1 (1979) —which dealt with "due process issues involving a group of Nebraska prisoners who filed a class action under 42 U.S.C. §1983 claiming, that they had been unconstitutionally denied parole by the Board of Paroles." **Id.** In like manner Charest asserts that "If the board determined that the prisoner was not a good risk for release, it denied parole, inform[ing] the prisoner *why release was deferred and made recommendations designed to help correct any deficiencies observed.*" **Id.** In its opinion on the case, the Supreme Court noted, although there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence . . . There is a crucial distinction between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires." **Id.** It went on to state: "The Nebraska procedure affords an opportunity to be heard, and when parole is denied '*it informs the inmate in what respects he falls short in qualifying for parole; this affords the process that is due under these circumstances, the Constitution does not require more.*" **Id**. Charest envisions from this Honorable Court nothing more, nothing less —than adequate Constitutional plenary comity in accord with the Supreme Court's views on true justice. Change for Alabama is a necessity under *Wilkinson, supra*.

Charest maintains that he is similarly situated with other prisoners who received more favorable treatment and that he was treated differently based on some constitutionally protected interest, as follows:

§ 11.        First for review is Charest's **Exhibit-10** the parole board Defendants 2005 "Action form" similar to "Exhibit-9, listed as 640-X-3-.06 evidence" whereas Charest was arbitrarily denied parole inapposite to the claims listed in said instant §1983 complaint, but moreover interesting is Legislatives §15-22-20(j)(k) to-wit:

(j)     "During the term of _the special members of the board **shall**_ _sit in two panels_ **of three for the purpose of conducting hearings and making determinations concerning paroles** . . . Membership on _each panel_ **shall** be designated by the chairman of the board [then Sidney Williams] from among the remaining regular and special members of the board as the chairman determines from time to time shall be necessary to hear all pending matters in an expeditious manner. **_The chairman of the board shall serve as an alternative with members of either panel_** and shall re-designate panel membership as necessary to carry out the hearing duties of the board." _Id._;

(k)     "When **_the board sits in panels of three members as herein authorized, each panel shall   act in the same manner and under the same authority as the full board_**. . . . Decisions of **_each panel shall constitute a decision of the board. All procedures of the board relating to the conduct of the hearings shall apply to hearings before either panel of the board_**." _Id._

(Emphasis-added)(Act 2003 −415, p. 1205, § 1).     As notable in the above styled language under statutory construction of the word "**shall**," Charest points out several things worthy of reversible error herein, in Exhibit-9 "Board's 2005 Action," there only exists two (2) signatures −dated 12/06/05 inapposite to the §15-22-20(j) to-wit: "_the special members of the board_ **shall** _sit in two panels_ **of three for the purpose of conducting hearings and making determinations concerning paroles** . . ." **Id.** Charest had only two special members thus the 2005 proceeding remains moot, a complete nullity to be exact cause for immediate re-scheduling for another legislative parole board hearing −absent the challenged claims from hindering, obstructing or otherwise inferring with another adequate parole hearing.

As interesting as such remain, is Defendants' Exhibit-D, at pp. 9 –10 under "Article Six" (Board of Pardons, Paroles) at section thirteen (13) to-wit:

> "13.    If only two [2] members of the Board are present to hear a case requiring unanimous approval, the Board may pass over that case to hear other cases on the docket, **pending arrival of the remaining member. If the third member does not return that day, the Board may offer those present an opportunity to express their views, and the two [2] members present may ask questions, but the two [2] members shall not deliberate in the absence of the third member**. The case **shall** be continued to a date certain, which **shall** be announced in open public meeting, **at which time the entire board will take action**. Only one continuance **shall** be scheduled. In the event that the Board is unable to decide the case on the date specified, the case **shall** be rescheduled for further consideration as early as is practicable, consistent with statutory requirements." **Id**.

(Emphasis-added). Clearly scene, these two (2) special parole board members "**yet disclosed**" remain responsible for violating Charest's statutory parole board hearing on 12/06/05 (Exh-9), now ripe for judicial intervention and cause for remand consistent with Alabama's legislative language; both 640-X-2 and –3 were effectively abridged congruent to a normal reading of §15-22-20(j)(k), Code of Alabama, 1975.

§ 12.        Furthermore, are the foregoing evidentiary documents, marked –entered as **Exhibit-11[a],** that of "Quentin Gales, #174529 docketed for parole review September 2001, whereas all three (3) parole board members signed, and completely filled out their "Action form" as mentioned by Charest in Exhibit-3 (640-X-3-.04)(Paroling Gales); another review of Gales case –after returning to imprisonment from Parole is his parole hearing day, date of May 2006 marked, entered as **Exhibit-11[b]** again all three (3)

parole board members involved, albeit though this time (5/080/06) the Board denied Gales parole, resetting his next review to May 2007 (a one year set off); then again, is **Exhibit-11[c]** dated May 22, 2007 all three (3) members sign and reset until May 2008.

§ 13.        Another marked, entered is **Exhibit-12**, is inmate Willie Lee White, #140147 docketed for parole review on September 8th, 2005 but not scene until March 7th, 2007, all three (3) members sign, date setting off White, three (3) additional years until next review.

§ 14.        Another marked, entered is **Exhibit-13**, is inmate Bernies Burnett, Jr., #132146 docketed for parole review on October 2006, but not scene until February 20, 2007 again all three (3) members 1) S. Williams, 2) V. Weatherly and 3) R. Longshore sign, date his denial for parole, setting off Burnett until February 2012 (a five year set off).

All the above-cited inmates −referenced herein to this Court remain similarly situated but as evidenced to this Court −Charest was in fact dissimilarly treated for the most part −with exception to Burnett he too was set off five years inapposite to the 640-X regulations in effect when time was meted out.

DEFENDANTS' stated at pages 3 -4 §§ 7, 8 that:

> 7)        "The *ex post facto* claim is barred by the application of limitations, in that the Complaint shows that Plaintiff knew or should have known in 2002 that the new guidelines for scheduling further parole consideration would apply to him . . ." *Id.*

> 8)        "The Complaint fails to state a claim under the *Ex Post Facto* Clause of the Constitution, as there is no averments from which it may fairly be inferred that Plaintiff would have been released from prison earlier under the former scheduling guidelines than under the current guidelines. Under both the former system and the current system, further consideration is scheduled by the Board after reviewing the file and hearing from persons addressing the Board in its public meeting. The scheduling decision, like the actual decision to release or not, is highly discretionary and

is highly dependent on the Board's assessment and prediction of a prisoner's future conduct." *Id.*

§ 15.        Charest maintains, and avers in regards to § 7, supra., that the statute of limitations for a 1983 action in Alabama is two years. *Lufkin v. McCallum*, 956 F.2d 1104, 1106, 1108 (11th Cir.), cert. denied, 506 U.S. 917, 113 S.Ct. 326, 121 L.Ed.2d 246 (1992); *Thigpen v. Bibb County*, 223 F.3d 1231, 1243 (11th Cir. 2000), see Alabama Code §6-2-38(l)(n) to-wit "1) Statute of limitations for injury actions is two years under Ala. Code §6-2-38(l); a cause of action accrues when a party suffers an injury or loss or damage entitling him or her to maintain an action, 2) all actions commenced to recover damages for injury to the person or property of another wherein a principal or master is sought to be held liable for the act or conduct of his agent, servant, or employee under the doctrine of respondent superior must be brought within two years." *Nelson v. Estate of Frederick*, 855 So.2d 1043, 2003 Ala. LEXIS 56 (Ala. 2003).

The statute of limitations "does not begin to run until the facts which would support a cause of action are apparent to a person with a reasonably prudence with regards for his rights." *Calhoun v. Alabama Alcoholic Beverage Control Board*, 705 F.2d 422, 425 (11th Cir. 1983) (quoting *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 930 (5th Cir. 1975)). Thus §1983 actions do not accrue until the plaintiff knows or has reason to know that he has been **injured**. (Emphasis-added). *Calhoun*, 705 F.2d at 424; *Rubin [v. O'Koren]*, 621 F.2d [114,] 116 [(5th Cir. 1980)]; *Lavellee [v. Listi]*, 611 F.2d [1129,] 1131[(5th Cir. 1980)]. Nor will a §1983 action accrue until the plaintiff is aware or should have been aware **who has inflicted the injury**. *Lavellee*, 611 F.2d at 1131 (quoting United States v. Kubrick, 444 U.S. 111, 100 S. Ct. 352, 62 L.Ed.2d 259 (1979)). *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987).

Charest's parole denial came on December 6th. of 2005 –and it was not until after said only denial under the amendatory parole board "Articles" giving rise for a §1983 claim to have accrued, did Charest have a right to redress the injury –whereupon the statute of limitations begins to run when "facts which would support a cause of action (or standing due to an injury caused, by the effect of said parole denial) apparent to a person with reasonable prudence for his rights." *Mullinax, supra, see also Ashcroft v. Randel,* 391 F.Supp.2d 1214, 1219 (N.D. Ga. 2005)(Story, J.)(noting that the federal "discovery rule" governing the accrual of a §1983 action provides that "a claim accrues when the injured party knew (1) he **suffered the injury that form[ed] the basis of his complaint** and (2) who **inflicted that injury**"). **Id.**

Charest argues that he is entitled to have his requests for parole considered under the statutory guidelines / regulations in effect at the time of his 1995 convictions. Specifically, Charest maintains that at the time of said convictions he was entitled to: 1) be personally interviewed before the parole consideration –hearing; 2) be heard by the parole board; 3) question evidence against him before the parole board, prior to adverse ruling; 4) present evidence on his fundamental behalf; and 5) be free from protests, by Maria LeBreton, Miriam Shehane (VOCAL) and per se the Attorney General's Office, absent full statutory compliance with the above substantive predicates.

Consequently for certain inmates respective to the Board's 640-X's –such as Charest who committed crimes before the cumulative amendments were enacted by the "Articles" which substantially altered the consequences to said previous crimes already configured into previous "*eligibility*" criteria Charest maintains retroactively "changed the quantum of [his] punishment." *Dobbert v. Florida,* 432 U.S. 282, 298, 53 L.Ed.2d 344, 97 S.Ct. 2290 (1977).        Inclusive to the above detriments applied to

Charest's 2005 denial were subversions of Alabama's Code §15-22-36 and Alabama's Code §15-23-79, "creating further sufficient risks that time in prison will [be] increased because of Charest's inability to present evidence on his behalf, pointing out erroneous information, stop unnecessary protests from people who know neither the victim nor Plaintiff, [and] enabling Charest to protect himself from false witnesses before the Parole Board." See *Weaver v. Graham*, 450 U.S. 24, 67 L.Ed.2d 17, 101 S.Ct. 960 (1981) –setting grounds for analysis –inquiry by this Court into whether an ex post facto violation occurred cause for applying the two (2) prong test: first, has a change in the law been given a retrospective effect; and second, has the change [challenged herein] disadvantaged Charest.

Because §1983 does not contain a statute of limitations, reference must be made to the limitation periods prescribed by the state in which the litigation arose. *Burnett v. Grattan*, 468 U.S. 42, 49, 104 S.Ct. 2924, 2929, 82 L.Ed.2d 36, 44 (1984). In an attempt to avoid uncertainty and to provide a workable analysis for determining the applicable statute of limitations in section 1983 claims, the Supreme Court recently held that the most appropriate statute of limitations for all §1983 actions is the personal injury statute of limitations of the state whose law is to be applied. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). *Majette v. O'Connor*, 811 F.2d 1416, 1419 (11th Cir. 1987) –thus inapposite to Defendants mere conclusory allegations that Charest's 2005 parole denial is barred is injudicious at best under Alabama's two (2) year holding from the time of the injury in fact sustained.

§ 16.        Charest maintains, and avers in regards to § 8, supra, that Article I, 10 of the U.S. Constitution prohibits the states from passing any "ex post facto law, so much importance did the [C]onvention attach to [the ex post facto prohibition], that it is found

twice in the Constitution." *Kring v. Missouri*, 107 U.S. 221, 227, 27 L.Ed. 506, 2 S.Ct. 443 (1883); which ultimately forbids Congress and States from enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Cummings v. Missouri*, 4 Wall 277, 325-326, 18 L.Ed. 356 (1867). See *Lindsey v Washington*, 301 U.S. 397, 401, 81 L.Ed. 1182, 57 S.Ct. 797 (1937); *Rooney v North Dakota*, 196 U.S. 319, 324-325, 49 L.Ed. 494, 25 S.Ct. 264 (1905); *In re Medley*, 134 U.S. 160, 171, 33 L.Ed. 835, 10 S.Ct. 384 (1980); *Calder v Bull*, 3 Dall 386, 390, 1 L.Ed. 648 (1798)("The enhancement of a crime, or penalty, seems to come within the same mischief as the creation of a crime or penalty" after the fact. *Calder*, at 397, 1 L.Ed. 648 (Paterson, J.). See also *Fletcher v Peck*, 6 Cranch 87, 138, 3 L.Ed. 162 (1810)("An ex post facto law is one which renders an act punishable in a manner in which it was not punishable when it was committed")).

Through this prohibition, the Framers sought to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed. *Dobbert, supra; Kring v. Missouri*, 107 U.S. 221, 229, 27 L.Ed. 506, 2 S.Ct. 443 (1883); *Calder v. Bull*, supra, at 387, 1 L.Ed. 648. The ban also restricts governmental power by restraining arbitrary and potentially vindictive legislation. *Malloy v. South Carolina*, 237 U.S. 180, 183, 59 L.Ed. 905, 35 S.Ct. 507 (1915*); Kring v. Missouri*, supra, at 229, 27 L.Ed. 506, 2 S.Ct. 443; *Fletcher v Peck*, 6 Cranch 87, 138, 3 L.Ed. 162 (1810); *Calder v. Bull*, supra, at 395, 396 1 L.Ed. 648 (Paterson, J.); the Federalist No. 44 (J. Madison), No. 84 (A. Hamilton).

The **Ex Post Facto** Clause is directed at laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43, 110 S. Ct. 2715, 111 L.Ed.2d 30 (1990). In *California Department of*

*Corrections v. Morales*, the Supreme Court rejected the argument that the **Ex Post Facto** Clause prohibits "any legislative change that has any conceivable risk of affecting a prisoner's punishment." *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 508, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). Instead, the Court held that the clause forbids only those retroactively applied laws that "**produce[] a sufficient risk of increasing the measure of punishment attached to the covered crimes**." Id. at 509.

Charest maintains prior to the Defendants amendatory enactment of post 2002 – 2004 guidelines, many prisoners sentenced to "*Life*," under Alabama's guidelines granting unto most, if not all "violent crimes" an incentive to rehabilitate themselves, rewarding with potentiality for discretionary parole, for example as stated in 640-X-2-.02 (Scheduling Cases for Parole Consideration) -inclusive to pre -guidelines section "(3) On cases committed on or after May 19, 1980, <u>as-applied to Charest</u>." the Board used guidelines established <u>prior to these two challenged amendments</u> 1) 2002 amendment (increasing setting off inmates for parole review from three (3) years to five (5) before next parole consideration); and 2) 2004 amendment (process for re-examination by staff -within eighteen (18) of next eligibility for parole consideration); for Charest's initial parole calendar date. The pre- 2002, 2004 guidelines took into account <u>past criminal record, pattern and nature (severity) of present offense, and the community attitude toward the offender.</u>

Retrospectively looking to the effects of the Board's 640-X's guidelines providing parole eligibility, and considerations to Lifers after serving one-third of the total term or ten years whichever is less and only being set-off in three year increments –unlike the 2002 and 2004 amendments cumulatively setting off Charest, now in increments of five years; additionally said enactments mandate the initial parole eligibility, consideration

date shall be set in conjunction with the inmate's completion of 85 (eighty-five) per cent of his or her total sentence or 15 (fifteen) years, whichever is less, see Defendants' Exhibit-D page 3 subsection 7 (Article I intake).

Taken as a whole, permitting only paper reviews of files –instead of in-person hearings and eliminating *written reasons for denials* by declaring such reviews to not be "decisions" of the Board to whereas one provides a right to review in hopes of correcting his problems, wrongs as intended for being imprisoned after being denied on such information in said files –records, than no judicial review is necessary. This Court only has to look to the second prong, under *California Department of Corrections v. Morales*, [514 U.S. 499] (1995) and *Garner v. Jones*, [529 U.S. 244] (2000) to configure or wiggle sufficient room for discerning Charest's "*disadvantage*" on a case-by-case basis meeting the threshold requirement for public safety on Alabama's overreaching parole factors exposing Charest to an ex post facto violation upon these Defendants relying on language in lieu of its prior "factors counseling in favor of discretionary release," standard.

Notwithstanding the *Jones*, and *Morales* determinations, as requested by Charest challenging the amended "*Articles*," Charest suggests, requests that this Court look at the "*practical implementations*" of the 2002 and 2004 parole board changes in the aggregate to determine the risks of prolonged incarceration as being "*significant*." This Court, can ground its ensuing analysis in the substantive standard(s) governing Alabama's paroles - Alabama's §15-22-26 "No prisoner shall be released on parole as a reward for good conduct . . . but only if the Board of Pardon and Paroles is of the opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society . . ." **Id**. Also, §15-22-28(d) "No prisoner shall be released on parole expect by a

majority vote of the board . . ." and subsection (e), *supra*, that "The board shall not grant a parole to any prisoner who has not served at least one third or 10 years of his sentence, whichever is the lesser . . ." **Id**. *See* Charest's attached *Affidavit* supporting this Reply to both standing, and day, date of accrual and ex post facto violation.

§ 17.    Charest asserts, maintains for brevity sake that for the most part the Defendants *ANSWER* at page 4 § 9 is quite misleading under the recent holdings of other cases dealing with same, similar claims as raised –challenged herein, in that under the holdings of the United States Supreme Court rulings, in *Wilkinson v. Dotson*; *Monroe v. Thigpen*; *Thomas v. Sellers*; *Harris v. Hammonds*, *Garner v. Jones*; *City of Cleburne v. Cleburne Living Center, Inc.*; *Thigpen v. Bibb County*, *Weaver v. Graham*, *California Dep't. of Correction v. Morales*; *inter alia*, therefore these Defendants couldn't be more wrong in the following boiler-plated "Defense," as follows:

DEFENDANTS' stated at page 4 § 9 that:

> 9).    "Defendant denies that Plaintiff has been deprived of any right, privilege or immunity protected under the Constitution or laws of the United States"; *Id*.

§ 18.    Charest maintains, that upon plenary review of the above-styled cases under their current application to Charest's unique, novel first impression claims in light of these additional sister circuit holdings: 1) In *Graziano v. Pataki*, 2006 WL 2023 the U.S. District Court case in S.D.N.Y. a §1983 suit challenging New York's *sub rosa* blanket parole denial policy; 2) In *Foster Bey v. Rubitschum*, Case No# 2:05-CV-71318-MOB-VMM October 23, 2007 the U.S. District Court case E.D. Mich., for the Southern Division, held that cumulative changes to parole eligibility regulations for Michigan's Life – sentenced prisoners violated the U.S. Constitution's ban on *ex post facto* laws; 3) In *Penn. Prison Society v. Rendall*, Case No# 1:97-CV-01731-ARC March 13, 2006 the U.S. District

Court case M.D. Pa. for the Middle District of Pennsylvania held that its 1997 law created a "*significant risk*" of increasing life-prisoners' punishment in violation of the *ex post facto clause*; and most significant for Charest to birth forth is the holding of the ruling in 2005 referenced herein as 4) In *William Dotson,* and *Rogerico Johnson,* two Ohio prisoners –challenged state's parole procedures, held permitted to bring actions under 42 USCS §1983 in the U.S. District Court for the Northern District of Ohio –claiming the state's parole procedures violated the Federal Constitution, See 329 F.3d 463 (2003 FED App. 147-P) –<u>that this Court will likely conclude that its time to adjust –correct Alabama's unwillingness to otherwise provide its citizens a[ny] remedial review of parole board decisions –even under the auspice of common law certiorari –such "current state reasoning" is nothing other than a flagrant abuse of discretion, or per se a manifest injustice towards prisoners as a whole, by the agency, but moreover usurpation by State Court reviewing agency decisions which often more than not</u>:

> "1) *results in decisions that [are] contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or 2) resulted in decisions that [are] based on an unreasonable determination if the facts in light of the evidence presented in the State court proceeding.*"

But for Alabama State Courts to flat outright refuse to address "Board decisions," along the vein argued herein this Court has both the authority and power under §1983 to invoke upon this State –the law of the United States Supreme Court holdings, whereas most recently Judge Baschab specifically concurred, at page 2 of *Bostwick v. Ala. Bd. Of Pardon and Paroles,* 865 So.2d 1245 (Ala.Crim.App. 2003) –that: "Because of the

majority appears to follow the current state of the law, I am **forced to concur in the result**.    However, **I also concur specifically to urge a change in the law**:

> "The Board argues, "there is no legal basis for a prisoner to seek judicial review of the Board's decision not to parole him." (Board's brief at p. 28.) Specifically, it contends that "the Alabama Legislature has given the Board of pardons and Paroles discretionary authority to decide what prisoners may be paroled, and when, and under what conditions." (Board's brief at pp. 27 –28.) Therefore, it concludes "**the decision to deny parole is not reviewable**." (Board's brief at p. 25.) For the reason set forth below, I agree that such a decision is not reviewable in a state court." **Id.**
>
> . . .
>
> "Alabama courts have previously held that decisions that are totally discretionary are not reviewable on appeal . . . "The courts have also held that such decisions are not reviewable on appeal." **Id at pp. 2, 3**;

The Court in *Bostwick, supra.,* went on to state, at page four "We recognize that, in *Andrus v. Lambert,* 424 So.2d 5, 9 (Ala.Crim.App. 1982), this Court held: "While no constitutional or inherent right of a convicted person to be conditionally released prior to the expiration of a valid sentence exists, *Greenholtz, supra,* a prisoner has the **right to be properly considered for parole**. *Christopher v. Board of Paroles, supra; Wallace v. Turner, supra,* the paroling authority **must comply with constitutional requirements and may not determine parole eligibility on improper ground**." **Id**. Furthermore, that Court stated at page five "Based upon the Eleventh Circuit's holdings in *Monroe and Sellers,* we should overrule *Andrus,* and its progeny, including *Graves v. Alabama Board of Pardons and Paroles,* 845 So.2d 1, (Ala.Crim.App. 2002); *Strong v. Alabama Board of Pardon and Paroles,* 859 So.2d 1201 (Ala.Crim.App. 2001); *Tucker v. Alabama Board of Pardon and Paroles,* 781 So.2d 358 (Ala.Crim.App. 2000); *Tedder v. Alabama Board of Pardon and Paroles,* 677 So.2d 1261 (Ala.Crim.App.

1996) and *Sloan v. Alabama Board of Pardon and Paroles*, 647 So.2d 85 (Ala.Crim.App.

1994). See **Exhibit-14.**

DEFENDANTS' stated at page 4 § 10 that:

> 10).    "Defendants denies that any changes in the Board's
> Operating Procedures have worked to increase the
> punishment that Plaintiff will endure for his life sentences on
> his convictions for rape first degree and sodomy first degree."
> *Id*.

§ 19.    Charest maintains, as did the United States Supreme Court in *California*

*Department of Corrections v. Morales*, [497 U.S. 37] (1990) –that, "The *ex post facto*

*clause* forbids those retroactive applied laws that 'produce [] a sufficient risk of increasing

the measure of punishment attached to the covered crimes.'" *Id*. Based upon said –such

progeny which Charest relies upon for this Court's plenary review, requires this Court to

apply the two-part test: (1) whether vel non "**the change** –[as in this instant case from

the Boards 640-X regulations in effect at the time of Charest's conviction / sentence to the

Boards post 2002, and 2004 amendments known as the "Articles"] –**are retroactive?**";

and (2) if so, whether vel non "**it created a sufficient risk of increasing**

**punishment?**" Therefore according to *Garner v. Jones*, {529 U.S. 244] (2000) progeny

–this Court **must determine whether vel non** "the rule change violates the Ex Post

Facto Clause either facially or as applied in *Garner*, 529 U.S. at 255." *Id*.    Hence, Charest

maintains that the amendatory increments have in fact "*retroactively*," increased the

times between being reviewed for said discretionary parole review, and Charest's

lengthier eligibility set off dates are in fact, causing a sufficient risk of increasing the

punishment for said previous crimes under the 640-X regulations, because the changed

or in this instant action the amended "*guidelines*" alter the standards for both 1) *parole*

*eligibility*, and 2) *parole consideration* thus severely burdening in violation of the *ex post*

*facto clause* of the Federal Constitution's Article I, § 10 whereas "the presumption against the retroactive application of the new "*guidelines*" are an essential thread in the mantle of protection that the law affords the individual citizen. It's that presumption that remains "deeply rooted in [y]our jurisprudence, and embodies a legal doctrine centuries older that our Republic." *See Landgraf v. USI Film Products*, 511 U.S. 244, 265, 128 L.Ed.2d 229, 114 S.Ct. 1483 (1994). The specific prohibition on *ex post facto* laws is only one aspect of the broader constitutional protection(s) against arbitrary changes in the law.

The bulk of [y]our *ex post facto* jurisprudence has involved claims that the law has inflicted "a greater punishment, than the law annexed to the crime [when it was committed." *See Calder v. Bull*, 3 Dall 386, 390, 1 L.Ed 648 (1798). The United States Supreme Court utilized the progeny of *Weaver v. Graham*, 450 U.S. 24 (1981) in ("Foster Bey v. Rubitschum at 2:05-CV-71318-MOB-VMM citing *Wilkinson v. Dotson,* progeny"), as presented by Charest in § 6, pages 18 –19 *supra*, under Rule 201, Fed.R.Evid.  It was also, likewise explained that such laws implicate the central concerns of the *Ex Post Facto Clause*: "*the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was committed.*" **Id, at Weaver**, supra.

To fall within the *ex post facto* prohibition –a law must be retroactive –that is, "it must apply to events occurring before its enactment" –and it "must disadvantage the offender affected by it," *id.,* at 29, 67 L.Ed.2d 17, 101 S.Ct. 960, by altering the definition of conduct or increasing the punishment for the crime, *see Collins v. Youngblood*, 497 U.S. 37, 50, 111 L.Ed.2d 30, 110 S.Ct. 2715 (1990), in Charest instant case the primarily loss of certain specific protective measures articulated succinctly above at pages 22 through 27 supported by Exhibits 3, 4, 5, 6, 7, and 8, when ran in conjunction with

Charest's original §1983 COMPLAINT at ground three –predicates Charest's uncontested factual assertions against the Defendants act, actions or in this specific instance outright failure to adhere to State law those "running afoul of the prohibition against *ex post facto* laws." *See Weaver, supra,* as held in *Wilkinson v. Dotson,* supra.

DEFENDANTS' stated at page 4 § 11 that:

> 11).    "Defendant avers that, at all times relevant to this case, Alabama statutes have authorized the Board to exercise complete discretion in determining whether and when each individual prisoner may be released on parole, §15-22-24(a), Ala.Code." *Id.*

§ 20.        In respect to the Defendants superfluous excerpt under §15-22-24(a), Codified in 1975 remains irrelevant to Charest's issues presented in the §1983 (Doc. #2, 4) –since Charest made allegations that the parole board agents whom heard his case, in December of 2005 had in fact, at that time "participated in improprieties –respective to his parole consideration under the 640-X regulations, guidelines in effect when Charest was convicted / sentenced in 1995; also, argued presented to this Honorable Court, was that said parole board agents acted both "*arbitrary –capricious*" under color of state law at the time said "**discretionary function**," was acted upon –which to date these Defendants have openly admitted in a sequential "Defense at page 6 ¶ 19) that: "*Neither Williams, Weatherly nor Longshore participated in the meeting on 6 December 2005 when Charest was considered for parole.*" *Id., at Defendants Answer dated 1/10/08.*

Therefore since "Defendants' Exhibit-A predicates two (2) individual's whom remain at present unidentified to both this Court and Charest –because Defendants "S. Williams has yet filed his affidavit –or response as Court ordered to do so," in addition, Defendants V. Weatherly and R. Longshore's affidavits Exhibits B, C, sufficiently asserted that they "have no personal knowledge of what was said, or by whom, at this meeting,"

which would surely not allow these named Defendants to affirmative plead a[ny] affirmative compliance as though they did what they did under §15-22-24(a) "They Weren't Even Present," therefore such assertion under color of State law won't suffice as to these specific named Defendants –since those whom committed the overt act[ions] against Charest haven't been "**yet revealed**," by Defendants as requested by Charest and ORDERED by this Court, twice before.         Charest requests that this Court "strike said averment in Defendants *ANSWER* at page 4. ¶ 11 as being made in "bad faith." **Cf. Charest's Reply at § 9, pp. 30 −35 responsive to Defendants allegation at Answer page 2 ¶ 5** negating Defendants defense above in toto.

In closing the argument on Defendants *boiler-plated defense*, Charest respectfully points out to this Honorable Court when read in conjunction with, for brevity sake – Charest "argument at pages 41 −43 at §11, *infra*, whereas State statute strictly speaking **absolutely prohibited Defendant S. Williams** from what occurred therein in relations to Charest 2005 parole hearing, see said legal argument and Exhibit-10 therein, adopted hereto against Defendants unsupported §15-22-24(a) allegation –such defense is moot for Defendants V. Weatherly and R. Longshore they claim they weren't present, but moreover –especially for S. Williams whom has yet to *ANSWER*.

 DEFENDANTS' stated at page 4 § 12 that:

> 12).    "Defendant denies entering into any conspiracy or agreement with any other Defendant or any other person to deprive Plaintiff of any rights protected under the laws of the United States or the laws of Alabama." *Id*.

§ 21.         As nice as such denial may "*sound*" to some –such mere assertion absent said Defendants providing, furnishing or otherwise producing the evidentiary materials Charest requested during *DISCOVERY* remains wholly deficient in Federal Court –when, as made herein by Charest under "*Affidavit that such conspiracy took place during the*

*investigation and pre -parole hearing with Parole Board agents, employees and one specific Maria LeBreton inclusive to Miriam Shehane (VOCAL) others not statutorily entitled to Notice, Appearance and specifically under 640-X guidelines to have protested Charest's parole —with false information*," to date all of which has "**yet"** by these Defendants "**been lawfully or legally contravened**" pursuant to Rule 26(a) –(b)(1), Fed.R.Civ.P., "disclosure" nor have said specific named Defendants fully complied with Charest's motion styled 1) Production of Documents; 2) Interrogatories and 3) Admissions as filed by Charest on February 11, 2008 (Doc# 41, 42) which this Court ordered (on 2/13/08 Doc. #43) that said Defendants otherwise respond, on or before February 27, 2008, said partial, limited and insufficient discovery finally appeared, but by only two (2) of the Defendants (i) V. Weatherly and (ii) R. Longshore on **March 21[st], 2008;** therefore absent said Defendants fully complying with the discovery requests for "requested documents —requested under Rules 26, 33 and 34, Fed.R.Civ.P.," this Court will remain blinded and Charest will remain prejudiced —which Charest will sufficiently address through a forthcoming traverse styled "*Compel Reply*," to Defendants boiler—plated "Response to Plaintiff's Discovery Requests / Answers to Interrogatories / Admissions," **Id**., birthing the necessitating "*documents*," needed to prove this claim.

DEFENDANTS' stated at page 5 § 13 that:

> 13).   "Defendant denies all the material averments of the Complaint, and demands strict proof." *Id.*

§ 22.     Such global tactic remains likewise conclusory at best, and totally insufficient under the progeny of two (2) leading United States Supreme Court holdings: 1) *Anderson v. Liberty Lobby*, [477 U.S. 242](1986); and 2) *Celotex v. Catrett*, [477 U.S. 317](1986), nevertheless as so eloquently requested by Defendants "above" Charest will

forthwith graciously accommodate their invitation to bring forth his *"strict proof,"* towards enhancing his limited issues before this Honorable Court –in his subsequent traverse to Defendants "Response to Plaintiff's Discovery Requests / Answers to Interrogatories / Admissions," received March 21, 2008.

DEFENDANTS' stated at page 5 § 14 that:

> 14).    "Defendant acknowledges that Plaintiff has served more than ten years of his Life sentence, and that a majority of the Board could grant parole, pursuant to §15-22-28(e), Ala.Code, *if persuaded that parole was consistent with society's welfare,* as provided in §15-22-26, Ala.Code. However, **no member of the Board is persuaded that parole is appropriate, or that it is likely to become appropriate in the near future**." *Id.*

§ 23.    (Emphasis-added in bold).    Although, perhaps at best two (2) of Charest's named Defendants could have asserted the above: "**had they been present**" or even partook in the pre-parole investigation but given the fact as presented in their own submitted "Affidavits Exhibited as B, C, [as] '**hav[ing] no personal knowledge**,'" none were, in fact present on December 6, 2005; Charest asserts that Defendants: "1) V. Weatherly and 2) R. Longshore's presumptive statement referencing the State statute need not be judicially entertained –this Court ORDERED on December 6, 2007 that Defendants *"Answer with Written Report 'having personal knowledge,'"* **Id**. Additionally, Charest maintains since no affidavit was submitted by Defendant S. Williams –the chairman, then, statutorily responsible for Charest's parole *eligibility and subsequent consideration, which effectuated the adverse denial on* 12-06-05, the above defense should therefore be reserved for the "person(s) accused of violating Charest's Federal rights."    In accord with legislative intendment, §15-22-20(a), in pertinent part: "There **shall** be a Board of Pardons and Paroles which **shall** consists of **three**

**members** . . ." **Id.** According any validity to exhibits presented by Defendants on March 14, 2008 Exhibit-A predicates only two [**unknown**] special members −inapposite to State statute §15-22-20(j), Code of Alabama, 1975, holding: "<u>During the term of the special members of the board, the boards</u> **shall** <u>sit in two</u> panels of **three for the purpose of conducting hearings and making determinations concerning paroles** . . ." **Id**. Furthermore Legislation mandated that: "<u>The chairman of the board [i.e., Defendant S. Williams]</u> **shall** <u>serve as an alternative with members of either panel</u> . . ." **Id.** Thence, again in §15-22-20(k), they held: "<u>When the board sits in panels of</u> **three members as herein authorized**, <u>each panel</u> **shall act in the same manner and under the same authority as the full board** . . ." **Id**. Reviewing Defendants Exhibit-A, the boards post-guideline "Article Six form," only predicates two members participated in Charest's 2005 parole determination −inapposite to §15-22-20(j) −(k) strictures. *See Act 2003 −415, p. 1205 § 1.*                    Interesting to perhaps Charest, but perhaps moreover should be to this Court, at Defendants Exhibit-D, pages 9 −10 at § 13 entitled "Article Six 'Board Action on Paroles −states: "*If only two members of the Board are present to hear a case requiring unanimous approval, the Board may pass over that case to hear other cases on the docket, pending arrival of the remaining member. If the third member **does not return that day**, the Board may offer those present an opportunity to express their views, and the two members present may ask questions,* **but the two members shall not deliberate in the absence of the third member. The case shall continued to a date certain,** <u>which will be announced in open public meeting,</u> **at which time the entire Board will take action** . . ." **Id.** Charest's record proper inclusive to Defendants Exhibit-A (Special two Board members determination −action form) when read in conjunction with Defendants Exhibit-D (Post

Parole Board 2002, 2004 amended "Articles") under the light of Legislations intent to-wit: §15-22-20(j) and (k) strictures furthermore prove the usurpation Charest suffered.

Even if this Court desired to apply Defendants above referenced "allegation" under a §15-22-26 interpretation, Defendants V. Weatherly and R. Longshore cannot merely state: "**no member of the Board is persuaded that parole is appropriate, or that it is likely to become appropriate in the near future**." **Id**., −absent them first performing a sufficient statutory "*investigation under §15-22-28(a)(b) and (c), Code of Alabama, 1975,*" as promulgated by Legislation, Charest's second reason to strike Defendants global defensive tactic.

Alabama's *Standard for release of prisoners on parole (§15-22-26)*: "No prisoner shall be released on parole merely as a reward for good conduct . . . but only if the board of pardons and paroles is of the opinion that there is reasonable probability that, **if such prisoner is released, he will live and remain at liberty without violating the law** and that his release is not incompatible with the welfare of society. . . ." **Id**. These Defendants hav[ing] "**no personal knowledge of what was said, or by whom** . . ." (Exh-B, C); inclusive to no direct involvement with Charest's statutory investigation for parole consideration as so stated by them, Charest asserts "they could not have plausible made the response their not persuaded that parole is appropriate [now] or **that it is likely to become appropriate in the near future**." **Id**. As ironic as it may otherwise seem to this Honorable Court ["the defendants have, unashamedly once again openly stated their political prejudice −inapposite to §15-22-26 standard of release) and that's just what Charest alleged in claim one: "parole denial was the direct result of Alabama's unconstitutional political policy orchestrated by Pardon & Paroles . . . politically predisposing me of any proper discretionary review rendering the (12/06/05) hearing

process fundamentally unfair . . ." **Id**. Is there really, necessarily a[ny] other reason why this Court should not now grant Charest relief for another parole board hearing –invoking the declaratory and injunctive relief requested.

DEFENDANTS' stated at page 5 § 15 that:

> 15).    "The Board's Operating Procedures provide a mechanism for earlier parole consideration *if Plaintiff's circumstances change.* However, as of 6 December 2005, the Board was of the opinion that further consideration should be scheduled on the December 2010 docket." *Id*.

§ 24.        (Emphasis-added).        Without either being verbose, or inconsiderate for this Court's time, efforts this early on Charest will be brief, primarily due to the above having no relevancy, to the issues at hand, Charest has already stated that during the time of conviction / sentenc[ing] the Board's pre-guideline 640-X's were in effect –creating three (3) term set-off -inapposite to Defendants post-guideline "Articles which have created the *ex post facto violation* setting off Charest in cumulative five (5) year increments." See Defendants Exhibits-A, and D respectively."

As amusing as it was stated above, at least for Charest "*If Plaintiff's circumstances change*," supra, §15-22-26 holds otherwise: "*No prisoner shall be released on parole merely as a **reward for good conduct or efficient performance of duties assigned in prison**. . .*" **Id.** Its quite obvious to Charest, that, at least in an Alabama prison "circumstantial changes" cannot bring lessen the time to which one would be rewarded for being considered for earlier parole –as patently asserted to this Court, simply put it DOES NOT EXIST under the current unconstitutional polices enacted.

DEFENDANTS' stated at pages 5, 6 § 16 that:

> 16).    "Defendant expressly denies that Alabama statutes prohibit the Board from receiving information regarding a prisoner from persons other than those entitled to statutory notice of parole consideration. To the contrary, Defendants

<u>avers that Alabama law encourages the Board to receive information from as many sources as possible, as to assess the credibility and relevance of that information in deciding whether release or the prisoner is compatible with society's welfare.</u>" <u>Id.</u>

§ 25.        Defendants have again, attempted to twist the truthfulness of the issue before the Court –Charest's colorable claim, as duly noted by this Court's "Recommendation" dated February 8[th.] 2008 (Doc.# 38) reiterating that Plaintiff "*challenges the policies and <u>procedures associated with</u> parole eligibility, parole suitability, and parole consideration,*" (Emphasis-underlined) –the specific reference to which Defendants make above, Charest again states, during the Boards *investigation process* Charest maintains that these Defendants are in fact "*Notifying persons,*" not duly entitled to notification, by statute, and thus usurping Legislative intent –its during that notification process that Charest maintains that the Defendants illegally notified Mrs. Maria LeBreton and Mrs. Miriam Shehane (VOCAL) –neither of which have a[ny] admissible information either about Charest, his present condition, mentally, emotionally or his physical well being, nor could they in the near future; State law clearly articulates in §15-22-26 "Alabama's Standard for release of prisoner on parole, that is: "*if such prisoner is released, he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society .. . .*" **Id**. Charest's claim two in the §1983 COMPLAINT remains, for the most part –factually unchallenged, but for the Defendants: "*overt procedures used by the Pardon & Parole Board in December 2005* [which] *–arbitrarily and capriciously denied him of the discretionary review for proper consideration based upon* **false information [<u>"that Charest had not changed, over the years imprisoned'</u>]** *absent 1[st] hand knowledge, visits, letters to authenticate, verify said assertions made by adverse parties commingling with VOCAL .*

. ." **Id**. (Emphasis-added).          Therefore the so called information received by the Board from many sources for them to assess, or give credence too remains "questionable at best," given that said Defendants are one whom are first, violating State law, thereby birthing the effect causing Charest to have suffered egregious harm, damage behind said schemes which Charest alleges bolstered the parole board denial, from said parties at his parole board hearing.

DEFENDANTS' stated at pages 6 § 17 that:

> 17).    "Defendant expressly denies that Plaintiff has a right to be considered for parole at any particular time." *Id*.

§ 26.          Contrary to such global defense, first Charest honorable points out to this Court, that §15-22-24(e), Code of Alabama, 1975 states: *"The board may adopt policy and procedural guidelines for establishing parole consideration and edibility based on its evaluation of a prisoner's prior record, nature and severity of the present offense, potential for future violence, and community attitude toward the offender."* **Id**. Did not the Board adopt and promulgate on or about September 29th 1982 "640-X-2.01 through 640-X-2.15 and 640-X-3-.01 through 640-X-3-.11 Exhibited-1, *infra*, for instance 640-X-2-.02(8) (Scheduling Cases For Parole Consideration) –states: *"A parole calendar date may be changed by order of the Board. No calendar date will be scheduled **prior to service of one-third of the term or ten years for total terms of ten years** or more except by unanimous action of the Board. **When an inmate is denied parole, the Board will determine when his case is to be reset but in no event shall it be reset for more than three years from the date of the denial.**"* *Id. at Charest's Exhibit-1, pp 4, 5 under subsection 8*, infra. Defendants have already openly admitted in their *"ANSWER at page 5, § 14,"* argued above at Charest's § 23, at page 59 that Charest *"has served more than ten years on his life sentence, and that a majority could grant*

parole . . ." _id_.   Contrary to Defendants conclusory allegation, Charest has in fact, presented by both State statute and the Boards adoption of said pre-guidelines "a right to be considered for parole at particular time"; also instructive for this Court's plenary review on said allegation by Defendants is §15-22-28(a) holds, otherwise: "_Minimum sentence to be served prior to eligibility for parole: (a) It **shall** be the duty of the Board of Pardons & Paroles, upon its own initiative, to make an investigation of any and all prisoners confined in the jails and prisons of the state with **a view of determining the feasibility of releasing the prisoners on parole and effecting their reclamation**. **Id.**_   The linchpin failure of the Honorable Attorney General's denial @ 17, is quite simple.   He couches his language in just the manner that is dispositive inherit in this suit.   He denies that the plaintiff has a right to be "considered".   At no point has this petitioner plaintiff said that he has a right to parole.... ONLY that he must be considered in order for the State to comport with their own due process requirements.

DEFENDANTS' stated at pages 6 § 18 that:

> 18).   "Defendant Williams is no longer a member of the Board, and has no "_official capacity_" in which to take future actions regarding parole. No justiciable controversy exists between Williams and the Plaintiff as to potential prospective relief, as Williams could take no action benefiting Plaintiff even if so ordered to do so."   _Id._

§ 27.   Then maybe perhaps upon this Court's ORDER reversing Charest's previous parole board denial for another statutory parole consideration absent the inflammatory extraneous influences that corrupted the two (2) special parole board members "consideration" of Charest being "_able to live and remain at liberty without violating the law_" –not to mention, that "Defendant S. Williams statutorily failed to partake at Charest's previous parole board as mandated by State statutes §§15-22-20(j) –

(k) strictures ordering said Defendants to only notify the statutory parties privy to said pre-parole [re]consideration for parole [?]."

DEFENDANTS' stated at pages 6 § 19 that:

> 19).    "Neither Williams, Weatherly nor Longshore participated in the meeting on 6 December 2005 when Charest was considered for parole. At that time, the Board had four special members, and sat in panels of three members each. The terms of the special members have expired." *Id*.

§ 28.        The basic statement above graciously admitted by the Defendants has a fundamental substantive underpinning to Charest's three colorable claims, grounds for limited. The last of the inquisitive assertions in Defendants belated blast at page 6, ¶19 "Neither Williams, Weatherly nor Longshore participated in the meeting on 6 December 2005 when Charest was considered for parole. At that time, the Board had four special members in addition to the three regular members, and sat in panels of three members each . . . ." **Id**. (Emphasis-added). Charest maintains that "none of statutory Board members participated in the meeting –when Charest was denied parole" –because "At that time, the Board had four special members in addition to the three regular members" –but in the same breath and sentence stated "[and sat in panels of three members each . . .]"; so either two statutory members sat with one of the four special members, or one statutory member sat with two of the four special members –but in fact as Counsel stated for the record "sat in panels of three members each." So one or two of the above named Defendants had to have sat with the one or more of the special four member team, or another State law violation has been asserted, either way at this juncture Charest is duly entitled to at best another "*parole board hearing*," within the parameters of State law, as defined and addressed above. Clearly in accord with legislative intendment, §15-22-20(a), in pertinent part: "There **shall** be a Board of Pardons and Paroles which **shall** consists of

**three members** . . ." **Id.** According any validity to exhibits presented by Defendants on March 14, 2008 Exhibit-A predicates only two [**unknown**] special members −inapposite to State statute §15-22-20(j), Code of Alabama, 1975, holding: "During the term of the special members of the board, the boards **shall** sit in two panels of **three for the purpose of conducting hearings and making determinations concerning paroles** . . ." **Id**. Furthermore Legislation mandated that: "The chairman of the board [i.e., Defendant S. Williams] **shall** serve as an alternative with members of either panel . . ." **Id.** Thence, again in §15-22-20(k), they held: "When the board sits in panels of **three members as herein authorized**, each panel **shall act in the same manner and under the same authority as the full board** . . ." **Id**.

Taking into account Defendants Exhibit-A, the boards post-guideline "Article Six form," only predicates two members participated in Charest's 2005 parole determination −inapposite to §15-22-20(j) −(k) strictures, thus State law was in effect breeched during the parole process current challenged herein. More interesting towards granting Charest relief at this junctures is the Defendants Exhibit-D, pages 9 −10 at § 13 entitled "Article Six 'Board Action on Paroles −states: "*If only two members of the Board are present to hear a case requiring unanimous approval, the Board may pass over that case to hear other cases on the docket, pending arrival of the remaining member. If the third member **does not return that day**, the Board may offer those present an opportunity to express their views, and the two members present may ask questions, **but the two members shall not deliberate in the absence of the third member. The case shall continued to a date certain,** which will be announced in open public meeting, at which time the entire Board will take action* . . ." **Id.** Charest's record proper inclusive to Defendants Exhibit-A (Special two Board members determination −action

form) when read in conjunction with Defendants Exhibit-D (Post Parole Board 2002, 2004 amended "Articles") under Charest circumstantial facts when viewed in light of Legislations intent to-wit: §15-22-20(j) and (k) strictures prove the usurpation Charest suffered, thus prospective relief is quite imminent.

WHEREFORE, premises considered Plaintiff Charest prays that this Court would graciously view the above "Reply to Defendants Answer," in a light most favorable to the issue at hand —Charest having a constitutional parole board determination in accord with State law —granting albeit limited relief to another parole hearing.

Done so this April 15th, 2008.                    Respectfully submitted,

PATRICK JOSEPH CHAREST
Pro-se #182262
Limestone Correctional Facility
28779 Nick Davis Road
Harvest, Alabama 35749-7009

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have served a true and correct copy of the REPLY upon the Defendants by placing said same in the United States mail, properly addressed, postage prepaid as follows:

1.    Defendants Williams (Wynn), Weatherly, Longshore et. al.,
       C/O Chief Counsel Honorable Hugh Davis
       Attorney for Alabama Pardon & Paroles
       301 South Ripley Street
       Post Office Box #302405
       Montgomery, Alabama 36130

Done so this April 15th, 2008.                    Respectfully submitted,

Patrick Joseph Charest #182262
Harvest, Alabama 35749-7009



PATRICK J. CHAREST, #182262
LIMESTONE CORRECTIONAL FACILITY
28779 NICK DAVIS ROAD
HARVEST, ALABAMA 35749-7009

:07-CV-984-MHT

UNITED STATES DISTRICT COURT
ATTENTION: HONORABLE D. HACKETT
POST OFFICE BOX# 711
MONTGOMERY, ALABAMA
                                        36101-0711

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

## CIVIL CASE NO: 2:07-CV-984-MHT

## PATRICK J. CHAREST, Pro-se #182262

## PLAINTIFF

## Vs.

## ALABAMA PARDON & PAROLES, et. al.,

## DEFENDANTS.

---

# A F F I D A V I T
### Supporting Charest's Response
### Incorporating Exhibits 1 -14

---

Prepared by:

**Patrick Joseph Charest #182262**
**LIMESTONE CORRECTIONS**
**28779 NICK DAVIS ROAD**
**HARVEST, ALABAMA**
**35749-7009**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| Patrick Joseph Charest, | * |
| Plaintiff, | * |
| | * |
| Vs. | *   **2:07-CV-984-MHT** |
| | * |
| Alabama Pardon & Paroles et. al., | * |
| Defendants. | * |

**AFFIDAVIT OF PATRICK J. CHAREST
IN SUPPORT OF RESPONSE TO DEFENDANTS
UNSUPPORTED ANSWER AS FILED ON 1/10/08**

**STATE OF ALABAMA   :**

**LIMESTONE COUNTY :**

Before me, the undersigned authority did appear one Patrick J. Charest, AIS No: 182262, whom did depose and state under the penalty of perjury the foregoing attestations:

1).    My name is Patrick J. Charest, I am an incarcerated convict at Limestone Correctional Facility, I am over the age of nineteen (19) years and remain competent to execute this affidavit, which is based upon both, personal and first hand knowledge of facts surrounding the *"Response* attached hereinafter" −inapposite to Defendants Weatherly's and Longshore's at best "hearsay knowledge, compare Def's Ex.'s B, C."

2).    I am acting pro se at present and enter **Exhibit-1** (pre-guidelines, 640-X-1, -2 and -3) submitted as evidentiary documentation to controvert "Defendants unsupported

Answers at §§1 through 19 @ pp. 1 through 6 dated January 10, 2008; said 640-X *guidelines* were in effect when Charest was in fact convicted / sentenced 1995 –inapposite to the *ex post facto* "Articles" now utilized to usurp Charest's *eligibility –consideration* for constitutional parole considerations.

3).     I sued Defendant's Williams (now superseded by B. Wynn), Weatherly and Longshore in their specific capacities while they were acting under color of state law, because they violated my Constitutional rights of which I know a reasonable person would have known not to have subject me to –to date Defendant Sidney Williams has "wholly failed to submit any AFFIDAVIT, or RESPONSE like his two (2) co-defendants attempted to perform, now ripe for limited summary judgment on Defendant S. Williams whom remains in default, inclusive to "waiving future affirmative motions."

In addition to the above, on or about March 21, 2008, upon a belated receipt of Defendants' "*Affidavit's Exhibited B, and C*," Charest noticed that neither of said two (2) Defendants (i) V. Weatherly's and (ii) R. Longshore's –had a[ny] first hand knowledge of Charest's facts, claims –because Defendants Weatherly, Longshore openly admitted to not being present, nor assigned to Charest's "*special 2005 docket*" said parole consideration was determined by a panel appointed by the Governor to assist in Alabama's overcrowding –for the tentative release of non-violent offenders, albeit Charest was in fact scrutinized by two (2) "*special parole board members*" labeled as a violent offender –inapposite to §15-22-20(j) –(k) statutory strictures, cause for reversal.

These newly amended "*special parole board member*" now Defendants will be tentatively named "*Doe(s) # 1, and # 2*," see separate filed motions under Rule 15(a), Fed.R.Civ.P., coupled with summons, copies of §1983 COMPLAINT therein.

2

4).    I assert, aver that the specific "Facts, Legal Arguments at §§1 –28 at pages 1 through 68" in Charest's attached "*Response / Reply To Defendants Unsupported Answer Filed 1/10/08*," hereinafter adopted and fully incorporated towards supporting Charest's legal position warranting per se prospective (i) declaratory and (ii) injunctive relief for his constitutional parole board determination under the progeny of *Wilkinson v. Dotson*.

5).    I assert, aver and adopt as marked / entered in **Exhibit-2** (Huntsville News –"AG King sought grants from subject of probe, under State investigations"), attached to Charest's "*Response / Reply To Defendants Unsupported Answer Filed 1/10/08*," at §§5 –7, pp. 17 –21 hereinafter presents Charest's plausible theory circumstantially speaking, that General King did in fact "*conspire with Miriam Shehane, at VOCAL*," during the 2005 interim period Charest alleged he was being considered for parole as alleged against said Defendants in the §1983 COMPLAINT issue one.

See attached –coupled Exhibit-2, to Charest's "*Response*" *supra,* hereinafter adopted and fully incorporated towards supporting Charest's legal position warranting per se prospective (i) declaratory and (ii) injunctive relief for his constitutional parole board determination under the progeny of *Wilkinson v. Dotson*.

6).    I assert, aver and adopt as marked / entered in **Exhibit-3** (Parole Review Worksheet under 640-X-3-.02) attached to Charest's "*Response at §7, pp. 22, predicates Charest *significant injuries, punishment* as alleged in the §1983 COMPLAINT ground three –under the pre-guidelines in effect in 1995 known as the 640-X's herein"; hereinafter adopted and fully incorporated towards supporting Charest's legal position – that an *ex post facto violation exists* warranting per se prospective (i) declaratory and (ii)

injunctive relief for his constitutional parole board determination under the progeny of *Wilkinson v. Dotson*.

7).    I assert, aver and adopt as marked / entered in **Exhibit-4** (640–X Interview / File Review Worksheet) attached to Charest's "*Response* at §7, pp. 23, predicating Charest's fundamental pre–substantive "right to know Alabama's reason[ing] either: (i) **favoring parole** –compare inmate Quentin Gales parole board actions Exhibit - 11(a)(09/2001 grant) -11(b)(05/2006 denial), and also his -11(c)(05/2007 denial) as well as (ii) **denying parole** compare (1) Patrick Charest's 02/2005 denial at Defendants' Exhibit-A; also (2) Willie White's 08/2005 denial attached Exhibit-12 hereinafter, inclusive to (3) Bernies Burnett's 10/2006 denial attached Exhibit-13 sufficiently predicating *significant injuries, punishment* as alleged in Charest's §1983 COMPLAINT ground three –under the pre-guidelines in effect in 1995 known as the 640-X's herein"; hereinafter adopted and fully incorporated towards supporting Charest's legal position – that an *ex post facto violation exists* warranting per se prospective (i) declaratory and (ii) injunctive relief for his constitutional parole board determination under the progeny of *Wilkinson v. Dotson*.

8).    I assert, aver and adopt as marked / entered in attached "*Response* p. 23 is **Exhibit-5** (Charest written request to Mrs. Wynn (12/2007) for copies, reasoning in accord with 640-X guidelines in effect when Charest was convicted / sentenced (02/1995)" predicating the *ex post facto violation* as a direct result from the Board's post 2002 –2004 Articles violating the *Wilkinson v. Dotson* progeny; warranting per se prospective (i) declaratory and (ii) injunctive relief for Charest's constitutional parole board determination to be duly remanded, reversed absent Defendants unconstitutional acts, actions or outright flagrant usurpations.

4

Also please review under scrutiny as requested in attached "*Response* at p. 23 is **Exhibit-6** (Mrs. Wynn's **answer** to Charest's Exhibit-4 "requests") -inclusive to Charest's subsequent attempt with the Alabama Pardon & Paroles attorney Mr. Steve Sirmon (12/2007 letter) –marked / entered hereinafter is **Exhibit-7** whereas Charest sought to procedurally exhaust a[ny] administrative remedies –giving rise to filing this instant §1983 action, See attached "*Response* at § 7, p. 23.

9).    I assert, aver and adopt marked / entered in attached "*Response* at p. 24 is **Exhibit-8** (Victims Request or Waiver Notice under 640-X-3-.05)" whereas State law predicates, by statute –the person(s), party to be notified, and absent the victim signing said form, other person(s), party may not represent said victim –such as Miriam Shehane at VOCAL, nor could have Mrs. Maria LeBreton giving Defendants said "*erroneous information*" utilized against Charest's December 2005 parole determination –as to whether vel non Charest could live in society without violating the law, now challenged hereinafter adopting and fully incorporating Charest's legal position –that an *ex post facto violation exists* warranting per se prospective (i) declaratory and (ii) injunctive relief for his constitutional parole board determination under the progeny of <u>Wilkinson v. Dotson</u>

10).    I maintain that at no time did I ever attempt, argue contrary to Defendants *ANSWER* at page two § 4 regarding a[ny] "<u>*liberty without due process*</u>," see attached "*Response* at §8 pp. 27 –30 disputing Defendant's unsupported allegations not relevant to the dispositive claims before this Court thus Defendants global defense should be stricken as sham, see Charest's Response reiterating said notable position at p. 29 -30.

11).    I maintain, assert that the "Special Parole Board Defendants" so named hereinafter "Doe(s) # 1, # 2 as amended -did entertain, not only "*false information*" but also acted in

5

concert with Defendant S. Williams inapposite to State law doctrine in violation of the 640-X guidelines in effect at Charest's conviction / sentencing time (2/1995), see "*Response* at §9, pp. 30 –35."

12).    I maintain, assert inapposite to Defendant's V. Weatherly's and R. Longshore's Exhibits-B, C affidavits based upon "**no first hand personal knowledge**" that said "Affidavits" be stricken as moot being –that this Court ordered defendants base their Answer with written / sworn affidavits of having first hand knowledge –absent such said affirmative defenses need be stricken.

13).    I assert, aver under the penalty of perjury that upon DISCOVERY said Defendants V. Weatherly and R. Longshore revealed that at Charest's 2005 parole hearing, that two (2) "*special members,*" were appointed, assigned to "*determine*" the probability of Charest's ability to remain in society absent violating the law, giving rise to amend said instant §1983 COMPLAINT to actual, person –party responsible for usurping State law, and Charest constitutional rights, see coupled motions to *AMEND.*

14).    I maintain, inapposite to Defendants allegation at *ANSWER* §6, p. 2 that Defendants are merely attempting to entangle, twist and outright thwart Charest's "*true issue*" before this Court, see attached –coupled "*Motion to Strike,*" as herein adopted and fully incorporated factually presenting Charest's legal position to moot Defendants defense as argued in Charest's "*Response* at § 10, pp. 36 –41.

15).    I assert, aver and adopt as marked / entered in attached "*Response* at p. 24 is **Exhibit-9** (Action by the Board under 640-X-3-.06)" –predicating the Defendants acts, actions or omissions which were in effect at the time of Charest conviction / sentencing in 1995 –inapposite to Defendants' Exhibit-A form submitted March 14, 2008, warranting

per se prospective (i) declaratory and (ii) injunctive relief for his constitutional parole board determination under the progeny of *Wilkinson v. Dotson*.

16).    I assert, aver and adopted as marked / entered in attached "*Response* at §11, p. 41 is **Exhibit-10** (Action by the Board under amendatory "*Articles*")" which is none other than Charest's 2005 parole hearing "*determination*," denying parole and setting Charest off five (5) years before being *eligible for parole consideration* (12/2010) -predicating the distinct dissimilarities Charest challenged inapposite to the Defendants global denial exhibited as defendants exhibit-A, warranting at best another parole board "*determination*" absent said unconstitutional amendments ascribed as Defendants' "*Articles*," warranting per se prospective (i) declaratory and (ii) injunctive relief for his constitutional parole board determination under the progeny of *Wilkinson v. Dotson*.

17).    I assert, aver and adopt as marked / entered in attached "*Response* at §12, p. 43 is **Exhibit-11(a)** (Quentin Gales AIS #174529 September 2001 Parole Board form)" – predicating actions by three (3) parole board members "granting" parole, representing "partial accordance" with State law –in comparison with Charest's Exhibit-4 (640-X-3-.04 Interview / File Review Worksheet) either denying or granting of Parole which "*factually*" asserts specific reasons for either, all of which Charest maintains he was arbitrarily, capriciously denied by two (2) special parole board members now named Doe(s) No# 1, 2; also marked / entered for review is Charest's **Exhibit-11(b)** (Quentin Gales AIS #174529 May 2006 Parole Board form) predicating actions by all three (3) parole board members "denying" parole, setting Gales off one (1) year before being *eligible for parole consideration* (5/2007) –which is "partially" in accord with State law – inapposite to Charest's Exhibit-10 predicating only two (2) signatures a violation of §§15-22-20(j)(k), Code of Alabama, 1975; again marked / entered is Charest's **Exhibit-11(c)**

7

(Quentin Gales AIS #174529 May 2007 Parole Board form) predicating actions by all three (3) parole board members "denying" parole, setting Gales off one (1) year before being *eligible for parole consideration* (5/2008) –which is "partially" in accord with State law inapposite to Charest's Exhibit-10 predicating only two (2) signatures a violation of inherent strictures §§15-22-20(j)(k), Code of Alabama, 1975, inclusive to the set off increase -warranting per se prospective (i) declaratory and (ii) injunctive relief for his constitutional parole board determination under the progeny of *Wilkinson v. Dotson.*

18).    I assert, aver and adopt as marked / entered in attached "*Response* at §13, p. 44, is **Exhibit-12** (Willie Lee White AIS# 140147 September 2005 Parole Board form)" predicating actions by all three (3) parole board members "denying" parole, setting White off three (3) years before *eligible for parole consideration* (3/2009) –which is "partially" in accord with State law inapposite to Charest's Exhibit-10 predicating only two (2) signatures a violation of inherent strictures §§15-22-20(j)(k), Code of Alabama, 1975, inclusive to Charest's five (5) year set off increase -warranting per se prospective (i) declaratory and (ii) injunctive relief for his constitutional parole board determination under the progeny of *Wilkinson v. Dotson.*

19).    I assert, aver and adopt as marked / entered in attached "*Response* at §14, p. 44 is **Exhibit-13** (Bernies Burnett, AIS# 132146 October 2006 Parole Board form)" predicating actions by all three (3) parole board members "denying" parole –which is "partially" in accord with State law inapposite to Charest's Exhibit-10 predicating only two (2) signatures a violation of inherent strictures §§15-22-20(j)(k), Code of Alabama, 1975, inclusive to Charest's five (5) year set off increase -warranting per se prospective (i) declaratory and (ii) injunctive relief for his constitutional parole board determination under the progeny of *Wilkinson v. Dotson.*

8

20).    I maintain, that the deprivations suffered are the proximate cause stemming from Alabama's unconstitutional parole board guidelines enacted in 2002 and 2004 known as the Articles when viewed under the progeny of cases presented in Charest "*Response* at §18, pp. 51 through 54 –whereas the United States Supreme Court in *Wilkinson v. Dotson* held as both (i) unconstitutional and (ii) an *ex post facto* violation which Charest requests this Court take judicial notice of, in addition too, the decision as marked / entered in **Exhibit-14** (Bostwick v. Alabama Board of Pardon & Paroles @ 865 So.2d 1245; 2003 Ala.Crm.App. LEXIS 88).

21).    I have personal, first hand knowledge that the "*statute*" authorizing the "*special members*" to deny parole in 2005 utilized "*false and erroneous*" information to have denied proper parole "*consideration*," inapposite to the strictures of *Wilkinson v. Dotson*.

22).    I was treated dissimilar to likened others when reviewed, denied for parole, see attached Exhibits 10 through 13 constituting discrimination in violation of Federal law.

23).    The class membership that the parole board has stigmatized upon me as being difficult to parole remains inapposite with the constitutional treatment given, granted other members of similar likened crimes –as legally considered to society as being "violent," therefore being convicted of "rape" makes me no more dangerous nor incompatible to society's welfare than those convicted of "murder, robbery, arson, kidnapping, trafficking, assault, sexual abuse and other lewd and lascivious acts," as defined by Alabama's legislation at §15-18-171(14), Code of Alabama, 1975 (Act 1991, No. 91-441, p. 795, § 2; Acts 2003 –353, p. 930, § 1).

24).    I maintain, assert that at no time have I been given, granted the DISCOVERY documents as requested, and court ordered thereby prejudice has ensued and impeded my 1st Amendment right to redress the grievance thus far, and request that this Court

adopt and fully incorporate as same —hereinafter the attached Motion to Strike inclusive

to the Motion to Compel Defendants to produce the *evidentiary materials* requested.

AFFIANT SAYETH NOTHING FURTHERMORE:


Done so this ___17___ day of ___April___, 2008.

[ S E A L ]

_____

**Notary Public at Large, Alabama**


___9-26-11___

**COMMISSION EXPIRES:**

**AFFIANT** Patrick J. Charest
Pro-se #182262
Limestone Correctional Facility
28779 Nick Davis Road
Harvest, Alabama 35749-7009


Sworn to and subscribed heretofore this ___19TH___ day of ___April___, 2008.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

## CIVIL CASE NO: 2:07-CV-984-MHT

## PATRICK J. CHAREST, Pro-se #182262

## PLAINTIFF

## Vs.

## ALABAMA PARDON & PAROLES, et. al.,

## DEFENDANTS.

---

# A P P E N D I X
## EXHIBITS

---

**Prepared by:**

**Patrick Joseph Charest #182262**
**LIMESTONE CORRECTIONS**
**28779 NICK DAVIS ROAD**
**HARVEST, ALABAMA**
**35749-7009**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION


## CIVIL CASE NO: 2:07-CV-984-MHT

## PATRICK J. CHAREST, Pro-se #182262

## PLAINTIFF

## Vs.

## ALABAMA PARDON & PAROLES, et. al.,

## DEFENDANTS.

---

# E X H I B I T
# No. # One
### Supporting Charest's Response
[ 640-X-2.01 –2.15  & 640-X-3-.01 –3.11 GUIDELINES ]

---

Prepared by:

Patrick Joseph Charest #182262
LIMESTONE CORRECTIONS
28779 NICK DAVIS ROAD
HARVEST, ALABAMA
35749-7009

RULES, REGULATIONS AND PROCEDURES

OF

THE BOARD OF PARDONS AND PAROLES

CHAPTER 640-X-2

BOARD ACTION IN GRANTING, DENIAL AND SUPERVISION
OF PAROLES, PARDONS, RESTORATION OF CIVIL AND
POLITICAL RIGHTS, REMISSION OF FINES AND FORFEI-
TURES, AND INVESTIGATIONS AND SUPERVISION OF
PROBATIONERS

TABLE OF CONTENTS

640-X-2.01 - Interstate Compact Services

640-X-2.02 - Scheduling Cases for Parole Consideration

640-X-2.03 - Pre-Parole Inmate Interview

640-X-2.04 - Public Notice of Pending Parole Consideration

640-X-2.05 - Preliminary Review of Docket Cases

640-X-2.06 - Notice of Pending Parole Consideration

640-X-2.07 - Protests

640-X-2.08 - Public Meeting

640-X-2.09 - Board Action to Grant or Deny Parole

640-X-2.10 - Statement of Conditions Under Which Parole is Granted

640-X-2.11 - Conditional Transfer

640-X-2.12 - Parole Violations

640-X-2.13 - Rules for Eligibility for Pardon and Restoration of
            Civil and Political Rights

640-X-2.14 - Eligibility for Remission of Fines and Forfeitures

640-X-2.15 - Petition for Adoption of Rules

640-X-2-.01 - Interstate Compact Services.

(1)  Persons on parole or probation may be transferred under supervision to another state provided they are a resident of that state and have a home and employment approved by the Compact Administrator in the receiving state.  If they are not residents of the other state, they may be transferred if they have a home and employment plan approved by the Compact Administrator and the other state consents to the transfer.

(2)  The Board provides supervision to compact cases from other states under the provisions listed above.

(3)  Application for Compact Services is made to the probation/parole authority where the individual was sentenced.  Application forms for requesting compact services are available at the office of the Board.

640-X-2-.02 - Scheduling Cases for Parole Consideration.

(1)  As soon as practical after a prisoner is sentenced to prison, the Board causes a file to be prepared on the case.  When complete, the Board members or their designee study the file and set a parole calendar date.  This parole calendar date is for initial parole consideration and is not a presumptive parole date.

(2)  On cases involving crimes committed before May 19, 1980, the parole calendar date is set at one-third of the prison term or ten years,[1]

---

[1]Alabama statutes provide that earned incentive good time apply to time calculations for determining the time at which majority vote parole may issue.  The Board also applies this credit in establishing a parole calendar date.

whichever is less.  In cases involving multiple convictions, the parole calendar date is set at one-third or ten years of the total term, whichever is less, or at one-third or ten years, whichever is less, of an individual sentence or combination of sentences whichever results in the latest parole calendar date.  This calculation also determines the time at which majority vote parole may issue.

(3)  On cases involving crimes committed on or after May 19, 1980, the Board uses guidelines in establishing the initial parole calendar date. The guidelines take into account past criminal record, pattern and nature (severity) of present offense, and the community attitude toward the offender.  Unless the Board determines that the guidelines should not apply, calendar dates will be set as follows:

(a)  If sentence is of ten years or more - and the offense is of a particularly heinous nature or the present offense is of a violent nature and his previous behavior indicates a high risk potential for future violence - case shall be set on the maximum scale.

(b)  Inmates serving their third or more separate  prison term and members of organized crime or large scale drug transporting and sales operations are designated career criminals.  The parole calendar date in career criminal cases shall be set on a case by case basis at a date between one-third and one-half of the total term as determined by the Board upon the recommendation of a senior staff officer in the Central Office.

(c)  Other cases will be set in accordance with the guideline
rating in Section III of the parole review worksheet and the scale
for parole calendar dates.  A copy of each document is included in
Chapter 640-X-3 of this Administrative Code.

(4)  In multiple cases where more than one parole review work-
sheet is completed, the calendar date which occurs later in time
is applied.

(5)  A parole review worksheet shall be completed in each case
by the field parole officer immediately after he completes the
investigation of a case.  This worksheet is reviewed by a senior
staff officer in the Central Office for consistency and ap-
propriateness and for a final evaluation.

(6)  If an inmate has multiple convictions and one or more
of the offenses occurred before May 19, 1980, and one or more
of the offenses occurred on or after May 19, 1980, his parole
calendar date will be determined by the guidelines.  If he
receives incentive good time credit, such credit will be applied
if it results in an earlier parole calendar date.

(7)  Any credit on a sentence shall be considered in
determining a parole calendar date if provided by law.

(8)  A parole calendar date may be changed by order of the Board.
No calendar date will be scheduled prior to service of one-third
of the term or ten years for total terms of ten years or more
except by unanimous action of the Board.  When an inmate is denied

parole, the Board will determine when his case is to be reset but in no
event shall it be reset for more than three years from the date of the
denial.

(9)  Exceptions

(a)  No parole calendar date is established on cases barred from
parole.

(b)  Calendar dates on cases required by statute to serve a mandatory
minimum term are set consistent with the provisions of the statute.

(c)  Persons serving split sentences pursuant to Section 15-18-8,
Code of Alabama 1975 as amended and also serving another term will not
be set for parole consideration prior to actual service of a period of
time equal to the term ordered served in the split sentence case.

(d)  A person sentenced pursuant to Section 15-18-8, Code of Alabama
1975 as amended and whose probation is subsequently revoked will be set
for initial parole consideration on the basis of the remainder of the
sentence to be served, excluding the original incarceration term of the
split sentence.

(e)  Prisoners placed by the court in a local work release program
will not be scheduled for parole consideration in order that the sentenc-
ing court may determine early release dates in such work release programs.

(f) When an inmate has already served sufficient time
to be eligible for parole consideration at the time the
Board receives sentencing data from the Board of Correc-
tions, the case shall be placed on the first docket occur-
ring after forty-five (45) days from the date sentencing
data is received by the Board.

640-X-2-.03 - Pre-Parole Inmate Interview. Pre-parole
personal interviews with prisoners being considered for
parole will be conducted by an agent of the Board who will
then submit a written report to the Board of his findings
and evaluations.

640-X-2-.04 - Public Notice of Pending Parole Consideration.
News media shall have access to weekly information re-
garding pending parole consideration thirty (30) days in
advance of the Board's pending dockets. The information
shall include the prisoner's name, prison number, sentence,
and offense for which convicted as well as other perti-
nent information..

640-X-2-.05 - Preliminary Review of Docket Cases. Members
of the Board will conduct individual study and review of
each case prior to its parole consideration docket date.
Each member will prepare a file review worksheet when
he reviews a file for this purpose.

640-X-2-.06 - <u>Notices of Pending Parole Consideration</u>.
Notices of pending parole consideration will be sent as
required by Act No. 83-750, Regular Session, 1983, of the
Alabama Legislature.


640-X-2-.07 - <u>Protests</u>. Any person wishing to protest
parole may do so in person or in writing, stating the
reasons therefor, and may submit supporting data. Such
protest may be made at any time after sentence to im-
prisonment. It will be placed in the files of the Board
for consideration when the case is before the Board for
action.


640-X-2-.08 - <u>Public Meeting</u>. The Board will convene each
Monday for Public Meeting for cases theretofore docketed and
set for consideration and other cases where additional in-
formation is to be presented. When Monday falls on a State
holiday, the next working day will be Public Meeting. The
Board will convene Public Meeting at 9:00 a.m. for the purpose
of considering and acting on its weekly dockets and for interviews
with the general public. Persons wishing to see the Board about
a case may do so without appointment on that day at Public
Meeting. Appearances at Public Meeting are not necessary to
ensure a careful and complete review of any case before the
Board. Appointments with attorneys will be scheduled on
Tuesday of each week.

640-X-2-.09 - <u>Board Action to Grant or Deny Parole.</u>

(1)  The Board's formal action to grant or deny parole will be taken in the Public Meeting convened to consider the docket on which that case appears.

(2)  If all statutory provisions have been met, parole will issue within two weeks.

(3)  If majority vote parole may be granted within sixty (60) days and the Board's vote is split two to one in favor of parole, such vote shall constitute an order to parole at such time as parole may issue.

(4)  If a unanimous vote is required to parole and only two Board members are present, the case will be continued unless both members present vote to deny parole.

(5)  If majority vote parole may not issue within sixty (60) days and the Board's vote is split two to one in favor of parole, such action shall constitute a denial of parole and a reset of the case to the first Public Meeting following the date on which majority vote parole may issue.

(6)  When the Board's vote is to deny parole, a notice of this action will be mailed to the inmate within three working days.

(7)  Exceptions

(a)  The Board's Executive Director is authorized to postpone execution of any order to parole for a period up to ten (10) days if new relevant information is received which indicates that such release is incompatible with the welfare of society.  Such information may include, but is not limited to, prison disciplinaries, changes in time computation, and protests.  When the execution of an order to parole is postponed, the Executive Director shall present the case to the Board for reconsideration within three working days from the date of such postponement.

(b)  If no parole plan has been submitted and approved by the Board or its designee at the time a parole is ordered, parole will not issue until an approved plan is submitted.  If such a plan is not submitted within sixty (60) days from the date of the order to parole, the case will be returned to the Board for reconsideration on the first Public Meeting following.

640-X-2-.10 - <u>Statement of Conditions Under Which Parole is Granted</u>.
It is the order of the Board that the following shall be the Conditions
under which parole is granted.  The Board may specify such other Con-
ditions as it deems necessary.  This Certificate of Parole shall not
become operative until the following Conditions are agreed to by the
prisoner, and violation of any of the Conditions may result in revoca-
tion of parole.

(a)  I shall report immediately to the Parole Officer under whose
supervision I am paroled by personal visit.

(b)  I shall not change my residence or employment or leave the
State without first getting the consent of my Parole Officer.

(c)  I shall, between the first and third days of each month, until
my release from parole, make a full and truthful report to my Parole
Officer in writing.

(d)  I shall not use narcotic drugs, or frequent places where in-
toxicants or drugs are sold, dispensed, or used unlawfully.

(e)  I shall avoid injurious habits and shall not associate with
persons of bad reputation or harmful character.

(f)  I shall in all respects conduct myself honorably, work dili-
gently at a lawful occupation, and support my dependents to the best
of my ability.

(g) I shall not violate any law.

(h) I hereby waive all extradition rights and process and agree to return when the State Board of Pardons and Paroles directs at any time before my release from parole.

(i) I shall promptly and truthfully answer all inquiries directed to me by the State Board of Pardons and Paroles and my Parole Officer and allow that Officer to visit me at my home, employment site, or elsewhere, and carry out all instructions my Parole Officer gives.

(j) If at any time it becomes necessary to communicate with my Parole Officer for any purpose and that Officer is not available, I shall contact the State Board of Pardons and Paroles.

(k) I shall not marry without first seeking the advice and counsel of my Parole Officer.

(l) Immediately upon release from the service of sentence in
_____ and if prior to _____,
I will report directly to the State Board of Pardons and Paroles, 750 Washington Avenue, Montgomery, Al 36130, either by telephone, correspondence or in person.

(m) I shall pay supervision fee monthly to the State Board of Pardons and Paroles as required by law.

(n)  I shall not own, possess or have under my control a firearm or ammunition of any kind, nor any other deadly weapon or dangerous instrument as defined by Alabama law.

(o)  I shall participate in alcoholic, drug treatment, or other therapeutic programs when instructed to do so by my Parole Officer.

(p)  I shall pay $_____ Restitution as ordered by the sentencing court or the State Board of Pardons and Paroles.

640-X-2-.11 - Conditional Transfer.

(1)  The Board may conditionally transfer a prisoner to the author-ities of the Federal Government or any other jurisdiction entitled to custody to answer pending charges or begin serving a sentence in re-sponse to a properly filed detainer from the other jurisdiction.

(2)  Conditional transfer cases will be placed (set) on an approp-riate open public meeting docket by affirmative action of two Board members.

(3)  Thirty (30) days notice of consideration for conditional transfer will be given to the Judge, District Attorney, and Sheriff of the county of conviction before Board action on such cases.

(4)  Before a conditional transfer order is executed, confirmation

must be received that the jurisdiction filing the detainer will assume custody and will agree to return the inmate, when the detainer is satisfied, to the Alabama prison system at the Board's option.

(5) The case will be placed on the appropriate docket for the Board action in an open public meeting of the Board.

(6) A Certificate of Conditional Transfer will be issued and routed to appropriate authorities upon affirmative action by two members of the Board in said open public meeting.

(7) When evidence presented reflects a critical need to expedite transfer of a prisoner or prisoners, the rules for conditional transfer may be suspended by unanimous affirmative action of the Board.

640-X-2-.12 - Parole Violations.

(1) On receipt of a Parole Violation Report and/or other official notice of parole violation, the Executive Director should report such facts to the Board of Corrections and instruct them to issue a warrant for the retaking of such prisoner. Such cases will be presented to the Board at its next scheduled meeting and where appropriate the Board will declare the prisoner to be delinquent.

(2) The parolee is given an opportunity for a preliminary, on-site revocation hearing for the purpose of establishing probable cause.

(3) If preliminary hearing is waived or probable cause is found, he is granted a hearing by one member of the Board. This hearing is scheduled as soon as practicable at Kilby Correctional Center or other places of confinement. A report of the hearing is then considered by the Board in an open public meeting and the Board acts to either reinstate or to revoke parole. In the event parole is revoked, the Board determines at that time if and when the inmate shall have further parole consideration.

(4) The Board, in addition to or in lieu of other actions, may forfeit good time consequent to a parole violation on cases involving an offense committed prior to May 19, 1980.

640-X-2.13 - Rules for Eligibility for Pardon and Restoration of Civil and Political Rights.

(1) Restoration of Civil and Political Rights are considered by the Board upon application filed with the Board in duplicate. Forms to be used for this purpose may be obtained from the offices of the Board. When an application is made, if the applicant is found to be eligible under the law and rules of the Board, an investigation of the case is ordered.

(2) No applicant for Pardon and/or Restoration of Civil and Political Rights shall be considered by the Board until after the expiration of five years from date of release on parole except where the maximum sentence has expired. Persons who have completed parole or probation or who have served a penitentiary or jail sentence for an offense which takes away Civil and Political Rights may be considered for pardon and/or restoration after two years from the termination of the sentence or from the termination of parole or probation.

(3) Persons who are assessed a fine, but are given no hard labor or jail sentence for an offense which takes away their Civil and Political Rights may be considered for the pardon and/or restoration of said rights after two years from the date of the payment of the fine.

(4)  Applicants who are denied Pardon and/or Restoration of
Civil and Political Rights may reapply after one year from the
date of the denial.

(5)  Restrictions on eligibility for consideration for pardon
shall not apply in cases in which it is clearly established from
evidence which was not available at the trial that the defendant
was wrongfully convicted.

(6)  The Board by unanimous vote for good cause shown, may
waive the waiting period where the sentence has expired.

(7)  Applications for Pardon and/or Restoration of Civil and
Political Rights will be assembled for the Board's review when
all required file material is received in the Central Office.
The Board members will independently review such files and
indicate favorable or unfavorable impression on said initial
screening.  Such cases will then be scheduled for the proper
docket for Board action in an open public meeting after re-
quired notices of pending action are given.

(8)  The Board will not act to grant or deny disabilities
caused by the Federal Gun Control Act of 1968.  The remedy
for such disabilities is found in Title 18, Section 925,
United States Code.

640-X-2-.14 - Rules for Eligibility for Remission of Fines
                and Forfeitures.

(1)  The Remission of Fines and Forfeitures will be considered
by the Board only upon application filed with the Board in
duplicate.  Forms for Remission of Forfeiture may be obtained
from the Board of Pardons and Paroles upon request.

(2)  Application for Remission of Fine may be made to the
Board by letter listing the offense, the date of conviction,

the amount of the fine, the court in which the fine was
assessed, and the reasons for the application.  Upon receipt
of the application, an investigation is conducted.

(3)  Applications for Remission of Fine and Forfeiture will
be assembled for the Board's review when all required file
material is received in the Central Office.  The Board
members will independently review such files and indicate
favorable or unfavorable impression on said initial screen-
ing.

(4)  Such cases will then be scheduled for the proper
docket for Board action in an open public meeting after
required notices of pending action are given.

640-X-2-.15 - Petition for Adoption of Rules.  Any person
wishing to petition the Board for the adoption, amendment
or repeal of a rule, and the procedure for submission, con-
sideration and disposition thereof, should write the Board
setting out the details of the petition.  This petition
should be mailed to the Board at 750 Washington Avenue, Suite
312, Montgomery, AL 36130.

RULES, REGULATIONS AND PROCEDURES

OF

THE BOARD OF PARDONS AND PAROLES


CHAPTER 640-X-3

FORMS AND INSTRUCTIONS USED BY THE BOARD OF PARDONS

AND PAROLES IN GRANTING, DENIAL AND SUPERVISION OF

PAROLES, PARDONS, RESTORATION OF CIVIL AND POLITICAL

RIGHTS, REMISSION OF FINES AND FORFEITURES, AND IN-

VESTIGATIONS AND SUPERVISION OF PROBATIONERS WHICH

ARE APPLICABLE TO THE PUBLIC


TABLE OF CONTENTS

640-X-3-.01 - Application for Compact Services

640-X-3-.02 - Parole Review Worksheet

640-X-3-.03 - Scale for Parole Calendar Dates

640-X-3-.04 - Interview/File Review Worksheet

640-X-3-.05 - Victim Request or Waiver of Notice

640-X-3-.06 - Action by Board

640-X-3-.07 - Certificate of Parole

640-X-3-.08 - Report of Parole Violation

640-X-3-.09 - On-Site Hearing/Forfeiture of Good Time

640-X-3-.10 - Application for Pardon and/or Restoration of Civil and
              Political Rights

640-X-3-.11 - Application for Remission of Fines and Forfeitures

640-X-3-.01 – <u>Application for Compact Services</u>. This form is to be used by a parolee or a probationer who wants to live and work in another state and be supervised by that state under the Interstate Compact, Title 15, Chapter 22, Section 1, Code of Alabama 1975 as amended. A copy of this form is attached.

640-X-3-.02 - Parole Review Worksheet.  This form is completed by the field parole officer at the time he investigates a case to aid in evaluation for parole consideration.  A copy of this form is attached.

640-X-3-.03 - <u>Scale for Parole Calendar Dates</u>.  This scale establishes the time to be served prior to initial parole consideration on guideline cases.  A copy of this form is attached.

640-X-3-.04 - <u>Interview/File Review Worksheet</u>. This form is used by the Board when it is considering an inmate for parole. It has a checklist showing the reasons for favoring parole and the reasons for denial of parole and the reasons for not resetting for parole consideration. A copy of this form is attached.

640-X-3-.05 - <u>Victim Request or Waiver of Notice</u>. This form is for the victim to request a thirty (30) day notice or a waiver of notice to be given to them by the Board before considering a prisoner for pardon, parole, or restoration of civil and political rights. A copy of this form is attached.

640-X-3-.06 - <u>Action by Board</u>.  This form is used by the Board in taking action to grant, deny, or to continue to a future date, an inmate who is being considered for parole by the Board.  A copy of this form is attached.

640-X-3-.07 – <u>Certificate of Parole</u>.  This form is given to an inmate when he or she is granted a parole.  It gives the reasons for the Board's action and contains the conditions of parole.  A copy of this form is attached.



**State Board of Pardons and Paroles**

Montgomery, Alabama

# Certificate of Parole

KNOW ALL MEN BY THESE PRESENTS:

It having been made to appear to the Alabama State Board of Pardons and Paroles that

_____

is eligible to be PAROLED, and that there is a reasonable probability that said prisoner WILL REMAIN AT LIBERTY WITHOUT VIOLATING THE LAWS, and it being the opinion of the said State Board of Pardons and Paroles that the release of this prisoner is not incompatible with the welfare of society, and it appearing further that the Board is satisfied that this prisoner will not become a public charge on release, but will be suitably employed at _____

_____

and will live at _____

and shall continue in the same until he obtains the permission of his Parole Officer to make a change. He shall go directly to _____ and report immediately upon arrival to his Parole Officer at _____

It is therefore ORDERED that said prisoner be, and is, hereby paroled pending good behavior and under supervision subject to the specific conditions of parole listed on the reverse side of this Order.

In witness whereof this Certificate bearing the seal of the State Board of Pardons and Paroles is issued this the _____ day of _____

19_____ .

By Order of:

STATE BOARD OF PARDONS AND PAROLES

_____
Executive Director

27

STATEMENT OF CONDITIONS UNDER WHICH PAROLE IS GRANTED

This Certificate of Parole shall not become operative until the following Conditions are agreed to by the prisoner, and violation of any of these Conditions may result in revocation of Parole.

1. I shall report immediately to the Parole Officer under whose supervision I am paroled by personal mail.

2. I shall not change my residence or employment or leave the State without first getting the consent of my Parole Officer.

3. I shall, between the first and third days of each month, until my release from parole, make a full and truthful report to my Parole Officer in writing.

4. I shall not use narcotic drugs, or frequent places where intoxicants or drugs are sold, dispensed, or used unlawfully.

5. I shall avoid injurious habits and shall not associate with persons of bad reputation or harmful character.

6. I shall in all respects conduct myself honorably, work diligently at a lawful occupation, and support my dependents to the best of my ability.

7. I shall not violate any law.

8. I hereby waive all extradition rights and process and agree to return when the State Board of Pardons and Paroles directs at any time before my release from parole.

9. I shall promptly and truthfully answer all inquiries directed to me by the State Board of Pardons and Paroles and my Parole Officer and allow that Officer to visit me at my home, employment site or elsewhere, and carry out all instructions my Parole Officer gives.

10. If at any time it becomes necessary to communicate with my Parole Officer for any purpose and that Officer is not available, I shall contact the State Board of Pardons and Paroles.

11. I shall not marry without first seeking the advice and counsel of my Parole Officer.

12. Immediately upon release from the service of sentence in _____ and if prior to _____ , I will report directly to the State Board of Pardons and Paroles, 750 Washington Avenue, Montgomery, AL 36130, either by telephone, correspondence or in person.

13. I shall pay fifteen dollars ($15.00) per month to the State Board of Pardons and Paroles as required by law.

14. I shall not own, possess or have under my control a firearm or ammunition of any kind, nor any other deadly weapon or dangerous instrument as defined by Alabama law.

15. I shall participate in alcoholic, drug treatment or other therapeutic programs when instructed to do so by my Parole Officer.

16. I shall pay $ _____ Restitution as ordered by the sentencing court or the State Board of Pardons and Paroles.


I hereby certify that this Statement of Conditions of Parole have been read and explained to me the Parolee.

This _____ day _____ 19 _____          _____
                                                              Signature of Parolee

_____          _____
       Member of Board or Warden                  (Give full address at which you can be reached)

640-X-3-.08 – <u>Report of Parole Violation</u>. This form is used by the parole and probation officer to report a violation of parole. After completing the identifying information, the officer reports the violation of the parolee along with the information as to where the parolee can be located. A copy of this form is attached.

STATE BOARD OF PARDONS AND PAROLES
Montgomery, Alabama

REPORT OF PAROLE VIOLATION

Date: _____

Field Office: _____

Name of Parolee _____ _____ No. _____

Race, Sex & Age _____County of Conviction _____

Offense _____ Sentence _____

Date Convicted _____ Date of Parole _____

Date Sentence Expires _____

If declared Delinquent, subject can be located at the following place: _____

P B Form No. 109

640-X-3-.09 - <u>On-Site Hearing/Forfeiture of Good Time</u>. This form gives to the parolee the violations of parole with which he is charged, and gives him the option of an on-site hearing or the right to waive such hearing. A copy of this form is attached.

STATE OF ALABAMA
BOARD OF PARDONS AND PAROLES
Montgomery, Alabama 36130

Name
Address

AIS Number
Race & Sex
County of Conviction

IN RE:    On-Site Hearing
Forfeiture of Good Time

You are hereby notified that the following violations of parole have been placed against you:

| Condition of Parole | Date and charge | Disposition of Criminal Charges |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

Under the law you are entitled to a hearing on these charges. If you wish you may be given a hearing by the Parole board or its agent. You may waive this hearing and accept the action taken by the Parole board. Please sign the appropriate form.

I, _____
hereby waive a hearing by the Parole board or its agent.

I, _____
after having been advised of the charges placed against me hereby request a hearing by the Parole board or its agent in regard to these charges.

Date    Signature of Parolee              Date    Signature of Parolee

This is to certify that I have this date advised the above named parolee of the charges contained herein and he has (has not) (requested a hearing)

Date    Field Probation and Parole Officer

After careful consideration of these charges, it is the order of the Board that you be:

_____ (1) Continued on Parole without further delinquency action.

_____ (2) Continued on Parole and that you forfeit _____ months of your good time.

Date    Assistant Director

cc:  Parolee
     Parole Supervisor
     Board of Corrections
     Central Office File

PBF 10B

112

640-X-3-.10 - <u>Application for Pardon and/or Restoration of Civil and</u> <u>Political Rights</u>.  This form is used in applying for a pardon and/or restoration of civil and political rights.  In addition to identifying information, the form requests employment history and suggested references.  It also asks for the reason for the application.  A copy of the form is attached.

STATE OF ALABAMA
BOARD OF PARDONS AND PAROLES
Montgomery, Alabama

APPLICATION FOR PARDON AND/OR RESTORATION OF CIVIL AND POLITICAL RIGHTS

Name_____

Address_____ Phone_____
    Street        City      State       Zip Code

County of Conviction_____ Date of Conviction_____

Check the court of conviction — State_____ City_____ Federal_____

Offense_____ Sentence_____ Prison_____ Probation_____
               (Term)

Plea: Guilty_____ Not Guilty_____ Nolo Contendere_____

Date and Method of Release_____

Date of Final Discharge_____ Date Last Voted_____
EMPLOYMENT HISTORY SINCE RELEASE (List in Chronological Order)

Race

Sex

Age

D.O.B.

Prison No.

| Name of Employer | Address | Dates | |
|---|---|---|---|
| 1. | | From_____ | 19___ |
| | | To_____ | 19___ |
| 2. | | From_____ | 19___ |
| | | To_____ | 19___ |
| 3. | | From_____ | 19___ |
| | | To_____ | 19___ |

REFERENCES._____
         Name                         Address

_____
         Name                         Address

_____
         Name                         Address

_____
         Name                         Address
(List other references on back of application)

Reason for Application_____

State other facts showing why restoration should be granted. (Participation in Civic, Church, Political, Family Life, Etc.)

_____

_____

_____

_____

_____

                              Signature

Date_____

Note: Application must be filed in duplicate
co: 510

640-X-3-.11 - <u>Application for Remission of Forfeiture</u>.  This form is used in applying for the Remission of Forfeiture.  In addition to identifying information, a request for a certified copy of the bond is made, as well as the consideration for becoming surety.  A copy of this form is attached.

STATE BOARD OF PARDONS AND PAROLES

Montgomery, Alabama

APPLICATION FOR REMISSION OF FORFEITURE

1. _____

   Name of Defendant                    Address

2. _____

   Name of Surety                       Address

   _____

   Name of Surety                       Address

   _____

   Name of Surety                       Address

3. (a) _____

   Judge                                Solicitor

4. Attach certified copy of bond and certificate from Court Clerk showing the amount of forfeiture and costs of same.

5. _____

   Date of First Forfeiture             Date made Final

6. Final disposition of case including date of conviction, the offense, sentence, date of arrest, and if any prior bond. If undisposed of, so state. _____

   _____

7. What was consideration for your becoming surety? _____

   _____

8. State all other pertinent facts including reason for defendant's failure to appear, his whereabouts from date of bond to present, efforts made to locate and return him, expense incurred, names and addresses of persons who will verify information furnished, and other pertinent facts or mitigating circumstances showing why remission on forfeiture should be granted.

(Use reverse side if necessary)

_____

                                    Signature of Applicant

IMPORTANT:

This application must be made in duplicate. The burden is upon applicant to state and prove due diligence in producing defendant, and freedom from negligence on his part in connection therewith. In the absence of such proof, application will be denied.

46

The above rules, regulations, and procedures, as required by the Alabama Administrative Procedure Act, were proposed by all three members of the Board. All other rules, regulations, and procedures covered by the Alabama Administrative Procedure Act heretofore adopted by the Board are hereby repealed.

_Ealon M. Lambert_
Ealon M. Lambert

_Jack C. Lufkin_
Jack C. Lufkin

_John T. Porter_
John T. Porter

This is to certify that each of the above listed rules, regulations, and procedures are hereby adopted by the Board this the 27th day of September, 1982.

_Ealon M. Lambert_
Ealon M. Lambert

_Jack C. Lufkin_
Jack C. Lufkin

_John T. Porter_
John T. Porter

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

## CIVIL CASE NO: 2:07-CV-984-MHT

## PATRICK J. CHAREST, Pro-se #182262

## PLAINTIFF

## Vs.

## ALABAMA PARDON & PAROLES, et. al.,

## DEFENDANTS.

---

# E X H I B I T
# No. # Two

### Supporting Charest's Response
[ Huntsville News –Attorney General King "subject of probe"  ]
[ Miriam Shehane VOCAL & Troy King seeking funds ]

---

**Prepared by:**

**Patrick Joseph Charest #182262**
**LIMESTONE CORRECTIONS**
**28779 NICK DAVIS ROAD**
**HARVEST, ALABAMA**
**35749-7009**

# AG sought help on grant from subject of probe

## King asked former college head under state investigation

*The Associated Press*

MONTGOMERY – Attorney General Troy King's office was investigating Alabama's two-year college system when last year King asked then-Chancellor Roy Johnson for help in obtaining grant money for a victims' advocacy group.

Miriam Shehane, executive director of Victims of Crime and Leniency, told *The Birmingham News* for a story Sunday that King accompanied her to a meeting with Johnson to ask the two-year college system to provide grant money for VOCAL.

The March 2006 meeting came months after the attorney general's office and federal prosecutors began investigating the two-year college system.

King spokesman Chris Bence said the request was not improper because King was not asking for anything for himself. Bence said Shehane and King had talked about VOCAL's losing some funding and the possibility that law enforcement grants could be available from the two-year college system.

"The attorney general and Ms. Shehane decided that it was worth seeing if some of that funding would qualify to help VOCAL," Bence told *The News*. "She asked him – because of his knowledge about law enforcement, government and victims – would he accompany her and help her explain their needs to see if they perhaps would qualify and receive some of the grants. ... He agreed to do that," Bence said.

State and federal prosecutors have been investigating Alabama's two-year college system since at least September 2004, when federal agents raided the Alabama Fire College in Tuscaloosa. In November, King removed himself from the college system probe.



The Associated Press
**Alabama Attorney General Troy King.**

## Long-overdue reforms

Alabama Attorney General Troy King has twice come under criticism for his questionable ethics conduct.

King had to remove himself from investigating ousted Chancellor Roy Johnson and the two-year college system when King got Johnson to hire the mother of his deputy attorney general.

King accepted Atlanta Braves baseball tickets and food from Alabama Power without filing the activity with Alabama Ethics Commission.

King has justified the "favors" by saying they fall within campaign contributions and that politicians receive "freebies" from special-interest groups all the time. King is correct.

*The Montgomery Advertiser* disclosed that Gov. Bob Riley had access to a corporate jet from Goff Group Inc. during two trips of his 2002 gubernatorial campaigns. The total cost was $25,000, of which Gov. Riley paid $8,000 this month.

*The Birmingham News* reported the real issue behind the power shift in the Alabama Senate. Phil Poole, D-Tuscaloosa, who had favored electing Sen. Jim Preuitt for pro tem, deserted the coalition for Sen. Hinton Mitchem. "The day before Poole switched sides, he received a $10,000 campaign contribution from the Alabama Education Association," the newspaper reported.

These revelations demonstrate a greater need for the Alabama Legislature to show uncommon moral courage by passing stronger and tougher ethics laws, as well as considering the reforming of PAC-to-PAC transfers.

These are reforms that are long overdue, because politicians know their contributors and the public knows nothing of the hidden sources of contributors.

**Isaiah J. Ashe,**
*Huntsville, 35816*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

## CIVIL CASE NO: 2:07-CV-984-MHT

## PATRICK J. CHAREST, Pro-se #182262

## PLAINTIFF

## Vs.

## ALABAMA PARDON & PAROLES, et. al.,

## DEFENDANTS.

---

# E X H I B I T
# No. # Three
### Supporting Charest's Response
### [ 640-X-3-.02 Parole Review Worksheet ]

---

**Prepared by:**

**Patrick Joseph Charest #182262**
**LIMESTONE CORRECTIONS**
**28779 NICK DAVIS ROAD**
**HARVEST, ALABAMA**
**35749-7009**

## PAROLE REVIEW WORKSHEET

AIS # _____

NAME _____    COURT # _____

I.  If sentence is of ten years or more — and (a) offense is of a particularly heinous nature or (b) present offense is of a violent nature and his previous behavior indicates a high risk potential for future violence — case should be set on the maximum scale.

P. O. Recommends Maximum Scale (     )

II.  If case fits the following it should be set as a Career Criminal:

   (A)  Serving third or more separate prison term.

   (B)  Members of organized crime or large scale drug transporting and sales operations.

P. O. Recommends Set as Career Criminal (     )

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III.  If subject did not fall into I or II above, complete the following: (circle applicable number)
       (Desired criteria indicated by smallest numbers)

   (A)  Past criminal record                              1        2        3        4        5

   (B)  Pattern and nature (severity) of present offense   1        2        3        4        5

   (C)  Community attitude toward offender                 1        2        3        4        5

P. O. Recommends Setting of (     )

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

IV.  Complete for all cases, yes or no.                                          Yes        No
      (Desired criteria indicated by negative responses)

   (D)  History of drug or alcohol abuse                              (     )    (     )

   (E)  On parole at time of commission of present offense            (     )    (     )

   (F)  Prior failure on probation or parole                          (     )    (     )

   (G)  Unacceptable employment history                               (     )    (     )

   (H)  Unstable marital status                                       (     )    (     )

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

V.  (     )  I recommend that guidelines not be used in this case.

    Explain:



. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

VI.  Remarks:



Signed and dated at _____, Alabama, the _____ day of _____, 19 _____.

PBF 118
(Rev. 4-86)                          OFFICER _____

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

## CIVIL CASE NO: 2:07-CV-984-MHT

## PATRICK J. CHAREST, Pro-se #182262

## PLAINTIFF

## Vs.

## ALABAMA PARDON & PAROLES, et. al.,

## DEFENDANTS.

---

# E X H I B I T
# No. # Four
### Supporting Charest's Response
### [ 640-X-3-.04 Interview File Review Worksheet ]

---

**Prepared by:**

Patrick Joseph Charest #182262
LIMESTONE CORRECTIONS
28779 NICK DAVIS ROAD
HARVEST, ALABAMA
35749-7009

## INTERVIEW/FILE REVIEW WORKSHEET

Inmate: _____ AIS # _____

Set _____ Personal Interview: Yes _____ No _____

### Reasons Favoring Parole

My reasons for favoring parole of the prisoner are as follows:

1. ____ Subject has served sufficient portion of sentence.
2. ____ Investigation has been made of subject.
3. ____ Subject's parole program is acceptable.
4. ____ Subject's interview was favorable.
5. ____ Prison Authority report is satisfactory.
6. ____ (State of) _____ accepts for supervision.
7. ____ I am of the opinion that there is a reasonable probability that if the prisoner is released, (he, she) will live and remain at liberty without violating the law, and that (his, her) release is not incompatible with the welfare of society.
8. ____ Interviewing Parole Officer recommends.
9. ____ _____

_____          _____
          Date                                    Member

### Reasons Favoring Denial

My reasons for favoring Denial are as follows:

1. ____ Failure to adjust in prison.
2. ____ Failure to adjust on parole or probation.
3. ____ Protest.
4. ____ Prior record.
5. ____ Pending cases or holdovers.
6. ____ New conviction.
7. ____ Has not served enough time.
8. ____ Release would not be compatible with society's welfare.
9. ____ Protection of Society.
10. ____ On Escape.
11. ____ Attitude does not show evidence of rehabilitation.
12. ____ Prison authority does not recommend for parole.
13. ____ Nature of Offense.
14. ____ Other _____

My reasons for not re-setting for parole consideration:

1. ____ Only short time to serve.
2. ____ Same as above.
3. ____ Other _____

_____          _____
          Date                                    Member

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

## CIVIL CASE NO: 2:07-CV-984-MHT

## PATRICK J. CHAREST, Pro-se #182262

## PLAINTIFF

## Vs.

## ALABAMA PARDON & PAROLES, et. al.,

## DEFENDANTS.

---

# E X H I B I T
# No. # Five

**Supporting Charest's Response**
**[ Charest's Request from Parole Interview Officer Mrs. Wynn ]**

---

**Prepared by:**

**Patrick Joseph Charest #182262**
**LIMESTONE CORRECTIONS**
**28779 NICK DAVIS ROAD**
**HARVEST, ALABAMA**
**35749-7009**

**STATE OF ALABAMA**
Department of Corrections
Inmate Stationery

Mrs. Wynn                                         December 2007

RE:                    Parole of #182262

As you well know, in 2005 I came up for

Parole consideration, and according too, but not limited

to the "guidelines I'm under, being that an offense was

prosecuted against me in 1995" Chapter 640-X-2 is

Applicable for my Review consideration; por se maybe

Articles Two through Articles Six Likewise may be

Applicable for my Review consideration, so I'm asking

you - in reference to either of the above mandates,

may I please receive a copy of the foregoing:

1) The written report 640-X-2-.03. Article
Three (3) - as to the Parole Review
Worksheet "PBF 118 (Rev. 4-86) Assigned by the
Board Number 640-X-3-.02

2) The written report 640-X-3-.04. Article
Three (3) - as to Dockets paragraph 3 -
I request the copy of the Board's

5

**STATE OF ALABAMA**
Department of Corrections
Inmate Stationery

Mrs. Wynn

Page 2   12/07

"Interview / File Review Worksheet," please?

3/ Also, may I receive a copy of the Board's Actions under 640-X-3-.06; Article Six, as ascribed on form 501 (Rev. 6/82)?

The above, Requests are in conjunction to Acts, omissions by the Board, based upon violations of State Law Inapposite to legislative Intent of §15-22-24(a) §§15-22-26, 28, 29 and 36 of the Code of Alabama, 1975 — Violating Article V, §124 Ala. Const. 1901 presently in contravention of the Boards Rules, Regulations, and Guidelines under the above Articles — in violation of State Law, please respond accordingly — or forward this to the Boards Legal Agent(s)?

**STATE OF ALABAMA**
Department of Corrections
Inmate Stationery

Mrs. Wynn                                          Page 3   12/07

I was set off Five (5) years, and I know I'm not inherently entitled to Parole, as a Liberty Interest — Because Ala's Parole is discretionary at best, But I was denied "fair" consideration under the 14th Amendment standards, of Fed. Const; I know in those "documents" facts for Relief remains colorable to at least get Another Parole review, under the guidelines I fall under, please "Notify" the Board under §15-22-24(a); §15-22-28; §15-22-38 through -40 that the Board, its Agents acted in excess of Jurisdictional Authority to Deny my 12/05 Parole I request an investigation be instituted please ASAP.

FAA Chandler #182262

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

## CIVIL CASE NO: 2:07-CV-984-MHT

## PATRICK J. CHAREST, Pro-se #182262

## PLAINTIFF

## Vs.

## ALABAMA PARDON & PAROLES, et. al.,

## DEFENDANTS.

---

# E X H I B I T
# No. # Six

**Supporting Charest's Response**
[ Parole Interview Officer Mrs. Wynn Response from Charest's Request ]

---

**Prepared by:**

**Patrick Joseph Charest #182262**
**LIMESTONE CORRECTIONS**
**28779 NICK DAVIS ROAD**
**HARVEST, ALABAMA**
**35749-7009**

You need to forward your request to the Legal Dept. of the Parole Board in Montgomery.  I do not have the authority to release any type of information or report.

Mrs. Wynn

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

## CIVIL CASE NO: 2:07-CV-984-MHT

## PATRICK J. CHAREST, Pro-se #182262

## PLAINTIFF

## Vs.

## ALABAMA PARDON & PAROLES, et. al.,

## DEFENDANTS.

---

# E X H I B I T
# No. # Seven

**Supporting Charest's Response**
[ Charest's Letter to Parole Defendants Attorney for records ]

---

**Prepared by:**

**Patrick Joseph Charest #182262**
**LIMESTONE CORRECTIONS**
**28779 NICK DAVIS ROAD**
**HARVEST, ALABAMA**
**35749-7009**

Limestone Correctional Facility
28779 Nick Davis Road
Harvest, Alabama 35749-7009

December 23, 2007

Alabama Pardon & Paroles et. al.,
ttention Mr. Steve Sirmon, Esquire
ttorney for Pardon / Paroles
301 South Ripley Street, Building D
Post Office Box # 302405
Montgomery, Alabama 36130-2405

Re:              (Parole investigation of #182262 DENIAL)

Dear Sirmon;

First and foremost allow me to greet you –under these abnormal circumstances, however unpleasant [it] may otherwise become in the not so distant future, litigiously speaking, sir.      The main jest of this letter, remains quite dispositive to a previous request for "*documents*" from Mrs. Wynn, first, but she in fact referred me to you, that's why I wrote you at legal, this is why I'm at your door –requesting said information through the enclosed document [**attached**], under State law, please?

Mr. Sirmon, I emphatically trust, based upon both *first hand knowledge –affidavits* coming from (i) an Attorney, and (ii) a family member, whom appeared before the Board, then, that certain acts, omission arose therein inapposite to both: §§15-22-24, 26 –in that, the Board acted both *arbitrarily and capriciously* when [it] denied me parole in December of 2006, thus I request copies of "*forms utilized in [it's] erroneous decision*"; whereas such informs me –in what respects I may have, otherwise fallen short of qualifying for parole, enabling me to either correct said deficiency [] or challenge it -in the likelihood, as herein, of its falseness, thus allowing me to actively seek respectful relief as afforded me under the Constitution, in regards to the Board's *flagrant or per se unauthorized acts, omissions,* enjoined by the holdings of, both (i) *Greenholtz v. Inmates of Nebraska,* 442 U.S. 1 (1979) and (ii) *Wilkinson v. Dotson,* 544 U.S. 74 (2005).

I've taken the liberty to forward your office the exact courtesy copy –as requested from Board agent Mrs. Wynn, at this locality, however, I was unsuccessful in receiving said same, by agent Wynn; may I please hear from you within an appropriate time span

so as not to cause a[ny] delay or direct hindrance from accessing the courts for subsequent redress, or in the likelihood, as an alternative -you in fact, tentatively agree herein –to set the previous denial for another prospective hearing, absent the infectious information, the Board utilized to set me off five years, not congruent with the then, statutory 640-x guidelines[,] a mere cursory glance in the Board's file –on the day –date in question of the transcribed evidence in said proceeding should clarify with certainty the usurpation(s) I'm pleading –sir, a learned person of your caliber can see the *"tree"* in the forest I speak of with all due respects.

I openly pray that this letter finds you, your staff in great spirits despite these otherwise critical times befallen mankind –in these last days; please note –I'm only requesting what is already public documents, see §15-22-24(b), Code of Alabama, 1975.

In closing with a full understanding of State law, although *"parole in Alabama"* is considered under the vein of the Board's *discretionary authority* –that discretion is not sanctioned by either an unbridled, or unfettered fashion, yielded arbitrarily as was done my case sir, clearly §§15-22-38 and 39 remains quite explicit to say the least.

Respectfully submitted,

Patrick Joseph Charest
Acting in pro per #182262

/pjc

cc:    file
       Enclosure attached for plenary review / answer [?]

2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

## CIVIL CASE NO: 2:07-CV-984-MHT

## PATRICK J. CHAREST, Pro-se #182262

## PLAINTIFF

## Vs.

## ALABAMA PARDON & PAROLES, et. al.,

## DEFENDANTS.

---

# E X H I B I T
# No. # Eight
### Supporting Charest's Response
### [ 640-X-3-.05 Victim's Request or Waiver of Notice ]

---

**Prepared by:**

**Patrick Joseph Charest #182262**
**LIMESTONE CORRECTIONS**
**28779 NICK DAVIS ROAD**
**HARVEST, ALABAMA**
**35749-7009**

STATE BOARD OF PARDONS AND PAROLES

Montgomery, Alabama

VICTIM REQUEST OR WAIVER OF NOTICE

Inmate's Name _____ AIS # _____

I, _____ . _____
               name                  address

do hereby request ☐ waive ☐ 30 days written notice to be given to me by the Board of Pardons and Paroles before considering the above-named prisoner for pardon, parole or restoration of civil and political rights. I agree to give the Board of Pardons and Paroles written notice of any change in my permanent mailing address. I understand that I may change this decision in the future by filing a written statement to that effect with the Board of Pardons and Paroles.

_____     _____
Signature                      Date

_____     _____
Witness                      Date

PBF #118

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

## CIVIL CASE NO: 2:07-CV-984-MHT

## PATRICK J. CHAREST, Pro-se #182262

## PLAINTIFF

## Vs.

## ALABAMA PARDON & PAROLES, et. al.,

## DEFENDANTS.

---

# E X H I B I T
# No. # Nine
### Supporting Charest's Response
### [ 640-X-3-.06 Parole Board Action by the Board ]

---

Prepared by:

**Patrick Joseph Charest #182262**
**LIMESTONE CORRECTIONS**
**28779 NICK DAVIS ROAD**
**HARVEST, ALABAMA**
**35749-7009**

STATE BOARD OF PARDONS AND PAROLES
Montgomery, Alabama

*ACTION BY THE BOARD*

NAME _____ COUNTY _____ NUMBER _____

DOCKET _____                     1/3 _____

PAROLE IS THIS DAY ORDERED          PAROLE IS THIS DAY DENIED AND RESET FOR _____

DATE _____                         DATE _____
BY:                                  BY:
                                                                    RESET
_____        _____   _____
_____        _____   _____
_____        _____   _____

CONTINUED TO _____          DATE _____

SPECIAL CONDITIONS: _____
_____
_____

COURT ORDERED RESTITUTION: _____
_____

DATE OF PAROLE _____     PAROLE OFFICE _____

S.T. RELEASE DATE _____ _____ IGT REL. DATE _____ MAX. EXPIRATION _____

PROTESTS: _____
_____
_____

REMARKS: _____
_____
_____
_____
_____
_____
_____
_____

CO FORM 501 (Rev. 8/82)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

## CIVIL CASE NO: 2:07-CV-984-MHT

## PATRICK J. CHAREST, Pro-se #182262

## PLAINTIFF

## Vs.

## ALABAMA PARDON & PAROLES, et. al.,

## DEFENDANTS.

---

# E X H I B I T
# No. # Ten
### Supporting Charest's Response
[ Article Six [newly amended form] for DENIAL of Charest's parole ]

---

Prepared by:

**Patrick Joseph Charest #182262**
**LIMESTONE CORRECTIONS**
**28779 NICK DAVIS ROAD**
**HARVEST, ALABAMA**
**35749-7009**

STA    BOARD OF PARDONS AND PARO__S
MONTGOMERY, ALABAMA

ACTION BY THE BOARD

NAME CHAREST PAT          AIS# 182262                DOCKET 02/2005
                                                     1/3    02/08/2005
PAROLE IS THIS DAY ORDERED _____ BY:

MY REASONS FOR FAVORING PAROLE OF THE PRISONER ARE AS FOLLOWS:
_____  SUBJECT HAS SERVED SUFFICIENT PORTION OF SENTENCE.
_____  INVESTIGATION HAS BEEN MADE OF SUBJECT.
_____  SUBJECT'S PAROLE PROGRAM IS ACCEPTABLE.
_____  PRISON AUTHORITY REPORT IS SATISFACTORY.
_____  UPON ACCEPTANCE BY (STATE OF)_____.
_____  I AM OF THE OPINION THAT THERE IS A REASONABLE PROBABILITY THAT
         IF THE PRISONER IS RELEASED, (HE/SHE) WILL LIVE AND REMAIN AT
         LIBERTY WITHOUT VIOLATING THE LAW, AND THAT (HIS/HER) RELEASE
         IS NOT INCOMPATIBLE WITH THE WELFARE OF SOCIETY.
_____  INTERVIEWING PAROLE OFFICER RECOMMENDS.
_____  OTHER_____

MEMBER _____DATE _____

MY REASONS FOR FAVORING PAROLE OF THE PRISONER ARE AS FOLLOWS:
_____  SUBJECT HAS SERVED SUFFICIENT PORTION OF SENTENCE.
_____  INVESTIGATION HAS BEEN MADE OF SUBJECT.
_____  SUBJECT'S PAROLE PROGRAM IS ACCEPTABLE.
_____  PRISON AUTHORITY REPORT IS SATISFACTORY.
_____  UPON ACCEPTANCE BY (STATE OF)_____.
_____  I AM OF THE OPINION THAT THERE IS A REASONABLE PROBABILITY THAT
         IF THE PRISONER IS RELEASED, (HE/SHE) WILL LIVE AND REMAIN AT
         LIBERTY WITHOUT VIOLATING THE LAW, AND THAT (HIS/HER) RELEASE
         IS NOT INCOMPATIBLE WITH THE WELFARE OF SOCIETY.
_____  INTERVIEWING PAROLE OFFICER RECOMMENDS.
_____  OTHER_____

MEMBER _____DATE _____

MY REASONS FOR FAVORING PAROLE OF THE PRISONER ARE AS FOLLOWS:
_____  SUBJECT HAS SERVED SUFFICIENT PORTION OF SENTENCE.
_____  INVESTIGATION HAS BEEN MADE OF SUBJECT.
_____  SUBJECT'S PAROLE PROGRAM IS ACCEPTABLE.
_____  PRISON AUTHORITY REPORT IS SATISFACTORY.
_____  UPON ACCEPTANCE BY (STATE OF)_____.
_____  I AM OF THE OPINION THAT THERE IS A REASONABLE PROBABILITY THAT
         IF THE PRISONER IS RELEASED, (HE/SHE) WILL LIVE AND REMAIN AT
         LIBERTY WITHOUT VIOLATING THE LAW, AND THAT (HIS/HER) RELEASE
         IS NOT INCOMPATIBLE WITH THE WELFARE OF SOCIETY.
_____  INTERVIEWING PAROLE OFFICER RECOMMENDS.
_____  OTHER_____

MEMBER _____DATE _____

SPECIAL CONDITIONS *To detainer and/or program*_____

_____

CONTINUED TO _____

PAROLE IS THIS DAY DENIED  *12-6-05*_____ BY:

DATE                    MEMBER                          RESET

*12/6/05*              *[signature]*                   *12/x/0*
*12/6/0*                                               *12/0*

REMARKS

*[handwritten] No signature ?*

EXHIBIT
**10**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

## CIVIL CASE NO: 2:07-CV-984-MHT

## PATRICK J. CHAREST, Pro-se #182262

## PLAINTIFF

## Vs.

## ALABAMA PARDON & PAROLES, et. al.,

## DEFENDANTS.

---

# E X H I B I T
# No. # Eleven (a)(b)(c)
### Supporting Charest's Response
[ Quentin Gales Parole Board forms predicating 3 signatures ]

---

**Prepared by:**

**Patrick Joseph Charest #182262**
**LIMESTONE CORRECTIONS**
**28779 NICK DAVIS ROAD**
**HARVEST, ALABAMA**
**35749-7009**

STATE BOARD OF PARDONS AND PAROLES
MONTGOMERY, ALABAMA

ACTION BY THE BOARD

NAME GALES QUENTIN          AIS# 174529                    DOCKET 09/2001
                                                    1/3    05/03/2002
PAROLE IS THIS DAY ORDERED  10-2-01      BY:

MY REASONS FOR FAVORING PAROLE OF THE PRISONER ARE AS FOLLOWS:
    SUBJECT HAS SERVED SUFFICIENT PORTION OF SENTENCE.
    INVESTIGATION HAS BEEN MADE OF SUBJECT.
    SUBJECT'S PAROLE PROGRAM IS ACCEPTABLE.
    PRISON AUTHORITY REPORT IS SATISFACTORY.
    UPON ACCEPTANCE BY (STATE OF)
    I AM OF THE OPINION THAT THERE IS A REASONABLE PROBABILITY THAT
    IF THE PRISONER IS RELEASED, (HE/SHE) WILL LIVE AND REMAIN AT
    LIBERTY WITHOUT VIOLATING THE LAW, AND THAT (HIS/HER) RELEASE
    IS NOT INCOMPATIBLE WITH THE WELFARE OF SOCIETY.
    INTERVIEWING PAROLE OFFICER RECOMMENDS.
    OTHER SIR, Positive attitude, Family Support
MEMBER  Johnnie Johns                              DATE 10-2-01

MY REASONS FOR FAVORING PAROLE OF THE PRISONER ARE AS FOLLOWS:
    SUBJECT HAS SERVED SUFFICIENT PORTION OF SENTENCE.
    INVESTIGATION HAS BEEN MADE OF SUBJECT.
    SUBJECT'S PAROLE PROGRAM IS ACCEPTABLE.
    PRISON AUTHORITY REPORT IS SATISFACTORY.
    UPON ACCEPTANCE BY (STATE OF)
    I AM OF THE OPINION THAT THERE IS A REASONABLE PROBABILITY THAT
    IF THE PRISONER IS RELEASED, (HE/SHE) WILL LIVE AND REMAIN AT
    LIBERTY WITHOUT VIOLATING THE LAW, AND THAT (HIS/HER) RELEASE
    IS NOT INCOMPATIBLE WITH THE WELFARE OF SOCIETY.
    INTERVIEWING PAROLE OFFICER RECOMMENDS.
    OTHER No Disciplinaries; SIR, attitude is good + positive; EOS
MEMBER  Vanzy C. McCrary                           DATE 10-2-01

MY REASONS FOR FAVORING PAROLE OF THE PRISONER ARE AS FOLLOWS:
    SUBJECT HAS SERVED SUFFICIENT PORTION OF SENTENCE.
    INVESTIGATION HAS BEEN MADE OF SUBJECT.
    SUBJECT'S PAROLE PROGRAM IS ACCEPTABLE.
    PRISON AUTHORITY REPORT IS SATISFACTORY.
    UPON ACCEPTANCE BY (STATE OF)
    I AM OF THE OPINION THAT THERE IS A REASONABLE PROBABILITY THAT
    IF THE PRISONER IS RELEASED, (HE/SHE) WILL LIVE AND REMAIN AT
    LIBERTY WITHOUT VIOLATING THE LAW, AND THAT (HIS/HER) RELEASE
    IS NOT INCOMPATIBLE WITH THE WELFARE OF SOCIETY.
    INTERVIEWING PAROLE OFFICER RECOMMENDS.
    OTHER
MEMBER  Gladys Riddle                              DATE 10-2-01

SPECIAL CONDITIONS                 PROGRAMS
                            AS DEEMED APPROPRIATE
                             BY PAROLE OFFICER

CONTINUED TO

PAROLE IS THIS DAY DENIED                    BY:
DATE              MEMBER                                  RESET

REMARKS

EXHIBIT
11 A

11-A

STATE BOARD OF PARDONS AND PAROLES
MONTGOMERY, ALABAMA

ACTION BY THE BOARD

NAME GALES QUENTON DANE    AIS# 174529

DOCKET 05/2006
1/3    04/19/2010

PAROLE IS THIS DAY ORDERED _____ BY:

MY REASONS FOR FAVORING PAROLE OF THE PRISONER ARE AS FOLLOWS:
_____ SUBJECT HAS SERVED SUFFICIENT PORTION OF SENTENCE.
_____ INVESTIGATION HAS BEEN MADE OF SUBJECT.
_____ SUBJECT'S PAROLE PROGRAM IS ACCEPTABLE.
_____ PRISON AUTHORITY REPORT IS SATISFACTORY.
_____ UPON ACCEPTANCE BY (STATE OF)_____
_____ I AM OF THE OPINION THAT THERE IS A REASONABLE PROBABILITY THAT
        IF THE PRISONER IS RELEASED, (HE/SHE) WILL LIVE AND REMAIN AT
        LIBERTY WITHOUT VIOLATING THE LAW, AND THAT (HIS/HER) RELEASE
        IS NOT INCOMPATIBLE WITH THE WELFARE OF SOCIETY.
_____ INTERVIEWING PAROLE OFFICER RECOMMENDS.
_____ OTHER_____

MEMBER _____ DATE _____

MY REASONS FOR FAVORING PAROLE OF THE PRISONER ARE AS FOLLOWS:
_____ SUBJECT HAS SERVED SUFFICIENT PORTION OF SENTENCE.
_____ INVESTIGATION HAS BEEN MADE OF SUBJECT.
_____ SUBJECT'S PAROLE PROGRAM IS ACCEPTABLE.
_____ PRISON AUTHORITY REPORT IS SATISFACTORY.
_____ UPON ACCEPTANCE BY (STATE OF)
_____ I AM OF THE OPINION THAT THERE IS A REASONABLE PROBABILITY THAT
        IF THE PRISONER IS RELEASED, (HE/SHE) WILL LIVE AND REMAIN AT
        LIBERTY WITHOUT VIOLATING THE LAW, AND THAT (HIS/HER) RELEASE
        IS NOT INCOMPATIBLE WITH THE WELFARE OF SOCIETY.
_____ INTERVIEWING PAROLE OFFICER RECOMMENDS.
_____ OTHER_____

MEMBER _____ DATE _____

MY REASONS FOR FAVORING PAROLE OF THE PRISONER ARE AS FOLLOWS:
_____ SUBJECT HAS SERVED SUFFICIENT PORTION OF SENTENCE.
_____ INVESTIGATION HAS BEEN MADE OF SUBJECT.
_____ SUBJECT'S PAROLE PROGRAM IS ACCEPTABLE.
_____ PRISON AUTHORITY REPORT IS SATISFACTORY.
_____ UPON ACCEPTANCE BY (STATE OF)
_____ I AM OF THE OPINION THAT THERE IS A REASONABLE PROBABILITY THAT
        IF THE PRISONER IS RELEASED, (HE/SHE) WILL LIVE AND REMAIN AT
        LIBERTY WITHOUT VIOLATING THE LAW, AND THAT (HIS/HER) RELEASE
        IS NOT INCOMPATIBLE WITH THE WELFARE OF SOCIETY.
_____ INTERVIEWING PAROLE OFFICER RECOMMENDS.
_____ OTHER_____

MEMBER _____ DATE _____

SPECIAL CONDITIONS _____
_____
_____

CONTINUED TO _____

PAROLE IS THIS DAY DENIED   5-8-06   BY:                    RESET
DATE                MEMBER                                  5-07
5-8-06              Weatherly                               5-07
5-8-06              Longshore                               
5/8/06              Evans M                                 5/07
REMARKS

EXHIBIT
11 B

11 -B

ELECTRONICALLY FILED
9/26/2007 4:52 PM
CV-2007-001052.00
CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA
MELISSA RITTENOUR, CLERK

STATE BOARD OF PARDONS AND PAROLE
MONTGOMERY, ALABAMA

ACTION BY THE BOARD

NAME GALES QUENTON DANE     AIS# 174529          DOCKET 05/2007
                                               1/3    04/19/2010
PAROLE IS THIS DAY ORDERED _____ BY:

MY REASONS FOR FAVORING PAROLE OF THE PRISONER ARE AS FOLLOWS:
_____ SUBJECT HAS SERVED SUFFICIENT PORTION OF SENTENCE.
_____ INVESTIGATION HAS BEEN MADE OF SUBJECT.
_____ SUBJECT'S PAROLE PROGRAM IS ACCEPTABLE.
_____ PRISON AUTHORITY REPORT IS SATISFACTORY.
_____ UPON ACCEPTANCE BY (STATE OF)_____.
_____ I AM OF THE OPINION THAT THERE IS A REASONABLE PROBABILITY THAT
        IF THE PRISONER IS RELEASED, (HE/SHE) WILL LIVE AND REMAIN AT
        LIBERTY WITHOUT VIOLATING THE LAW, AND THAT (HIS/HER) RELEASE
        IS NOT INCOMPATIBLE WITH THE WELFARE OF SOCIETY.
_____ INTERVIEWING PAROLE OFFICER RECOMMENDS.
_____ OTHER_____

MEMBER _____DATE _____

MY REASONS FOR FAVORING PAROLE OF THE PRISONER ARE AS FOLLOWS:
_____ SUBJECT HAS SERVED SUFFICIENT PORTION OF SENTENCE.
_____ INVESTIGATION HAS BEEN MADE OF SUBJECT.
_____ SUBJECT'S PAROLE PROGRAM IS ACCEPTABLE.
_____ PRISON AUTHORITY REPORT IS SATISFACTORY.
_____ UPON ACCEPTANCE BY (STATE OF)_____.
_____ I AM OF THE OPINION THAT THERE IS A REASONABLE PROBABILITY THAT
        IF THE PRISONER IS RELEASED, (HE/SHE) WILL LIVE AND REMAIN AT
        LIBERTY WITHOUT VIOLATING THE LAW, AND THAT (HIS/HER) RELEASE
        IS NOT INCOMPATIBLE WITH THE WELFARE OF SOCIETY.
_____ INTERVIEWING PAROLE OFFICER RECOMMENDS.
_____ OTHER_____

MEMBER _____DATE _____

MY REASONS FOR FAVORING PAROLE OF THE PRISONER ARE AS FOLLOWS:
_____ SUBJECT HAS SERVED SUFFICIENT PORTION OF SENTENCE.
_____ INVESTIGATION HAS BEEN MADE OF SUBJECT.
_____ SUBJECT'S PAROLE PROGRAM IS ACCEPTABLE.
_____ PRISON AUTHORITY REPORT IS SATISFACTORY.
_____ UPON ACCEPTANCE BY (STATE OF)_____.
_____ I AM OF THE OPINION THAT THERE IS A REASONABLE PROBABILITY THAT
        IF THE PRISONER IS RELEASED, (HE/SHE) WILL LIVE AND REMAIN AT
        LIBERTY WITHOUT VIOLATING THE LAW, AND THAT (HIS/HER) RELEASE
        IS NOT INCOMPATIBLE WITH THE WELFARE OF SOCIETY.
_____ INTERVIEWING PAROLE OFFICER RECOMMENDS.
_____ OTHER_____

MEMBER _____DATE _____

SPECIAL CONDITIONS   To detainer and/or program

CONTINUED TO _____

PAROLE IS THIS DAY DENIED  5-22-07   BY:
DATE              MEMBER                        RESET

5-22-07                                         5-08
5-22-07                                         5-08
5-22-07                                         5-08
REMARKS

EXHIBIT
11 c

11 c

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

## CIVIL CASE NO: 2:07-CV-984-MHT

## PATRICK J. CHAREST, Pro-se #182262

## PLAINTIFF

## Vs.

## ALABAMA PARDON & PAROLES, et. al.,

## DEFENDANTS.

---

# E X H I B I T
# No. # Twelve
### Supporting Charest's Response
[ Willie Lee White's Parole Board DENIAL predicating 3 signatures ]

---

**Prepared by:**

**Patrick Joseph Charest #182262**
**LIMESTONE CORRECTIONS**
**28779 NICK DAVIS ROAD**
**HARVEST, ALABAMA**
**35749-7009**

STATJ    OARD OF PARDONS AND PAROL ...
MONTGOMERY, ALABAMA

ACTION BY THE BOARD

NAME WHITE WILLIE LEE          AIS# 140147          DOCKET 08/2005
                                                    1/3   08/01/05

PAROLE IS THIS DAY ORDERED _____ BY:

MY REASONS FOR FAVORING PAROLE OF THE PRISONER ARE AS FOLLOWS:
_____  SUBJECT HAS SERVED SUFFICIENT PORTION OF SENTENCE.
_____  INVESTIGATION HAS BEEN MADE OF SUBJECT.
_____  SUBJECT'S PAROLE PROGRAM IS ACCEPTABLE.
_____  PRISON AUTHORITY REPORT IS SATISFACTORY.
_____  UPON ACCEPTANCE BY (STATE OF)_____.
_____  I AM OF THE OPINION THAT THERE IS A REASONABLE PROBABILITY THAT
        IF THE PRISONER IS RELEASED, (HE/SHE) WILL LIVE AND REMAIN AT
        LIBERTY WITHOUT VIOLATING THE LAW, AND THAT (HIS/HER) RELEASE
        IS NOT INCOMPATIBLE WITH THE WELFARE OF SOCIETY.
_____  INTERVIEWING PAROLE OFFICER RECOMMENDS.
_____  OTHER_____

MEMBER _____DATE _____

MY REASONS FOR FAVORING PAROLE OF THE PRISONER ARE AS FOLLOWS:
_____  SUBJECT HAS SERVED SUFFICIENT PORTION OF SENTENCE.
_____  INVESTIGATION HAS BEEN MADE CF SUBJECT.
_____  SUBJECT'S PAROLE PROGRAM IS ACCEPTABLE.
_____  PRISON AUTHORITY REPORT IS SATISFACTORY.
_____  UPON ACCEPTANCE BY (STATE OF)_____.
_____  I AM OF THE OPINION THAT THERE IS A REASONABLE PROBABILITY THAT
        IF THE PRISONER IS RELEASED, (HE/SHE) WILL LIVE AND REMAIN AT
        LIBERTY WITHOUT VIOLATING THE LAW, AND THAT (HIS/HER) RELEASE
        IS NOT INCOMPATIBLE WITH THE WELFARE OF SOCIETY.
_____  INTERVIEWING PAROLE OFFICER RECOMMENDS.
_____  OTHER_____

MEMBER _____DATE _____

MY REASONS FOR FAVORING PAROLE OF THE PRISONER ARE AS FOLLOWS:
_____  SUBJECT HAS SERVED SUFFICIENT PORTION OF SENTENCE.
_____  INVESTIGATION HAS BEEN MADE OF SUBJECT.
_____  SUBJECT'S PAROLE PROGRAM IS ACCEPTABLE.
_____  PRISON AUTHORITY REPORT IS SATISFACTORY.
_____  UPON ACCEPTANCE BY (STATE OF)_____.
_____  I AM OF THE OPINION THAT THERE IS A REASONABLE PROBABILITY THAT
        IF THE PRISONER IS RELEASED, (HE/SHE) WILL LIVE AND REMAIN AT
        LIBERTY WITHOUT VIOLATING THE LAW, AND THAT (HIS/HER) RELEASE
        IS NOT INCOMPATIBLE WITH THE WELFARE OF SOCIETY.
_____  INTERVIEWING PAROLE OFFICER RECOMMENDS.
_____  OTHER_____

MEMBER _____DATE _____

SPECIAL CONDITIONS _____
_____
_____

CONTINUED TO _____
_____

PAROLE IS THIS DAY DENIED  3-7-06          BY:
DATE              MEMBER                          RESET
  3-7-06          _____                3-09
  3-7-06          _____                3-09
  3-9-06          _____                3-09
REMARKS

3 signatures

EXHIBIT
12

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

## CIVIL CASE NO: 2:07-CV-984-MHT

## PATRICK J. CHAREST, Pro-se #182262

## PLAINTIFF

## Vs.

## ALABAMA PARDON & PAROLES, et. al.,

## DEFENDANTS.

---

# E X H I B I T
# No. # Thirteen

### Supporting Charest's Response
[ Bernies Burnett's Parole Board DENIAL predicating 3 signatures ]

---

**Prepared by:**

**Patrick Joseph Charest #182262**
**LIMESTONE CORRECTIONS**
**28779 NICK DAVIS ROAD**
**HARVEST, ALABAMA**
**35749-7009**



STATE BOARD OF PARDONS AND PAROLE
MONTGOMERY, ALABAMA

ACTION BY THE BOARD

NAME BURNETT BERNIES JR     AIS# 132146                    DOCKET 10/2006

PAROLE IS THIS DAY ORDERED _____ BY:    1/3   06/13/1990

MY REASONS FOR FAVORING PAROLE OF THE PRISONER ARE AS FOLLOWS:
_____ SUBJECT HAS SERVED SUFFICIENT PORTION OF SENTENCE.
_____ INVESTIGATION HAS BEEN MADE OF SUBJECT.
_____ SUBJECT'S PAROLE PROGRAM IS ACCEPTABLE.
_____ PRISON AUTHORITY REPORT IS SATISFACTORY.
_____ UPON ACCEPTANCE BY (STATE OF)_____.
_____ I AM OF THE OPINION THAT THERE IS A REASONABLE PROBABILITY THAT
        IF THE PRISONER IS RELEASED, (HE/SHE) WILL LIVE AND REMAIN AT
        LIBERTY WITHOUT VIOLATING THE LAW, AND THAT (HIS/HER) RELEASE
        IS NOT INCOMPATIBLE WITH THE WELFARE OF SOCIETY.
_____ INTERVIEWING PAROLE OFFICER RECOMMENDS.
_____ OTHER_____

MEMBER _____DATE _____

MY REASONS FOR FAVORING PAROLE OF THE PRISONER ARE AS FOLLOWS:
_____ SUBJECT HAS SERVED SUFFICIENT PORTION OF SENTENCE.
_____ INVESTIGATION HAS BEEN MADE OF SUBJECT.
_____ SUBJECT'S PAROLE PROGRAM IS ACCEPTABLE.
_____ PRISON AUTHORITY REPORT IS SATISFACTORY.
_____ UPON ACCEPTANCE BY (STATE OF)_____.
_____ I AM OF THE OPINION THAT THERE IS A REASONABLE PROBABILITY THAT
        IF THE PRISONER IS RELEASED, (HE/SHE) WILL LIVE AND REMAIN AT
        LIBERTY WITHOUT VIOLATING THE LAW, AND THAT (HIS/HER) RELEASE
        IS NOT INCOMPATIBLE WITH THE WELFARE OF SOCIETY.
_____ INTERVIEWING PAROLE OFFICER RECOMMENDS.
_____ OTHER_____

MEMBER _____DATE _____

MY REASONS FOR FAVORING PAROLE OF THE PRISONER ARE AS FOLLOWS:
_____ SUBJECT HAS SERVED SUFFICIENT PORTION OF SENTENCE.
_____ INVESTIGATION HAS BEEN MADE OF SUBJECT.
_____ SUBJECT'S PAROLE PROGRAM IS ACCEPTABLE.
_____ PRISON AUTHORITY REPORT IS SATISFACTORY.
_____ UPON ACCEPTANCE BY (STATE OF)_____.
_____ I AM OF THE OPINION THAT THERE IS A REASONABLE PROBABILITY THAT
        IF THE PRISONER IS RELEASED, (HE/SHE) WILL LIVE AND REMAIN AT
        LIBERTY WITHOUT VIOLATING THE LAW, AND THAT (HIS/HER) RELEASE
        IS NOT INCOMPATIBLE WITH THE WELFARE OF SOCIETY.
_____ INTERVIEWING PAROLE OFFICER RECOMMENDS.
_____ OTHER_____

MEMBER _____DATE _____

SPECIAL CONDITIONS _____

_____

CONTINUED TO _____

PAROLE IS THIS DAY DENIED            2-20-07         BY:

DATE                     MEMBER                          RESET

2-20-07                                                 2-2012

2-20-07                                                 2-2012

2-20-07                                                 2-2017

REMARKS

3 Signatures !

EXHIBIT
13

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

## CIVIL CASE NO: 2:07-CV-984-MHT

## PATRICK J. CHAREST, Pro-se #182262

## PLAINTIFF

## Vs.

## ALABAMA PARDON & PAROLES, et. al.,

## DEFENDANTS.

---

# E X H I B I T
# No. # Fourteen

### Supporting Charest's Response

[ Court of Criminal Appeals decision concerning Alabama's Parole Board ]
[ Bostwick vs. Alabama Board of Pardon & Paroles 865 So.2d 1245 (2003) ]

---

**Prepared by:**

Patrick Joseph Charest #182262
LIMESTONE CORRECTIONS
28779 NICK DAVIS ROAD
HARVEST, ALABAMA
35749-7009

Geoffrey Richard Bostwick v. Alabama Board of Pardons and Paroles
COURT OF CRIMINAL APPEALS OF ALABAMA
865 So. 2d 1245; 2003 Ala. Crim. App. LEXIS 88
CR-01-2238
March 21, 2003, Released

**Editorial Information: Subsequent History**

As Corrected August 6, 2003. Rehearing denied by Bostwick v. Ala. Bd. of Pardons & Paroles, 2003 Ala. Crim. App. LEXIS 365 (Ala. Crim. App., May 23, 2003)

**Editorial Information: Prior History**

Appeal from Montgomery Circuit Court. (CV-02-301). Bostwick v. State, 808 So. 2d 68, 2001 Ala. Crim. App. LEXIS 124 (Ala. Crim. App., 2001)

**Disposition**                    AFFIRMED.

**Counsel**                    For Appellant: Geoffrey Richard Bostwick, pro se.
For Appellee: Gregory O. Griffin, Sr., chief counsel, and Hugh Davis, Francis A. Long, Sr., and Steven M. Sirmon, asst. attys. gen., Alabama Board of Pardons and Paroles.]

**Judges:** COBB, Judge. McMillan, P.J., and Shaw, J., concur; Baschab, J., concurs specially, with opinion; Wise, J., concurs in the result.

Opinion

**Opinion by:**        COBB

[865 So. 2d 1246] COBB, Judge.1

Geoffrey Richard Bostwick is currently serving a 20-year sentence for a 1987 murder conviction. On January 7, 2002, the Alabama Board of Pardons and Paroles ("the Board") considered him for parole but voted to deny Bostwick parole and not to schedule him for further parole eligibility consideration.

On January 31, 2002, Bostwick filed a petition for a writ of certiorari in the Montgomery Circuit Court. After the Board responded, the circuit court summarily dismissed the petition on June 11, 2002, in a detailed order. This appeal followed.

Bostwick claimed in his petition and reiterates on appeal that the Board "may" have relied on erroneous information in his file in denying him parole. The circuit court noted in its order that "this claim made by [Bostwick] is merely speculative and unsupported by any evidence provided to this Court." (C. 65.)

"In the absence of the right to appeal or other adequate remedy, the writ of certiorari lies to review the rulings of an administrative board or commission." Ellard v. State, 474 So. 2d 743, 748 (Ala. Crim.

lalcases                    1

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

App. 1984) . Section 12-3-9, Ala. Code 1975 , states that the Court of Criminal Appeals shall have "exclusive appellate jurisdiction of ... all postconviction writs in criminal cases."

"As this court stated in *Andrus v. Lambert*, 424 So. 2d 5, 9 (Ala. Cr. App. 1982) :

"'The right to a parole is a privilege granted by the people of Alabama to those committed to our penal institutions as punishment for crimes. *Holley v. State*, 397 So. 2d 211, 216 (Ala. Crim. App.) . cert. denied, 397 So. 2d 217 (Ala. 1981) . Obtaining an early release through parole. like obtaining a pardon, is wholly contingent upon either the grace of the detaining authority or some affirmative statutory entitlement. *United States v. Chagra*, 669 F.2d 241, 264 (5th Cir. 1982) . While no constitutional or inherent right of a convicted person to be conditionally released prior to the expiration of a valid sentence exists, *Greenholtz v. Nebraska*, 442 U.S. 1, 7, 99 S. Ct. 2100, 2104. 60 L. Ed. 2d 668 (1979) . a prisoner has the right to be properly considered for parole. *Christopher v. U.S. Board of Parole*, 589 F.2d 924 (7th Cir. 1978) ; *Wallace v. Turner*, 525 F. Supp. 1072 (S.D. Fla. 1981) . The paroling authority must comply with constitutional requirements and may not determine parole eligibility on improper grounds. *Wallace v. Turner*. supra. A parole should not be denied for false. insufficient, or capricious reasons. *Christopher*, supra. '

"Although no due process guarantees apply to the granting or denying of parole, parole should not be denied for 'capricious reasons.'"

> *Tedder v. Alabama Bd. of Pardons & Paroles*, 677 So. 2d 1261, 1263-64 (Ala. Crim. App. 1996) . *See also Strong v. Alabama Bd. of Pardons & Paroles*, 859 So. 2d 1201, 2001 Ala. Crim. App. LEXIS 303 (865 So. 2d 1247] (Ala. Crim. App. 2001) , and *Tucker v. Alabama Bd. of Pardons & Paroles*, 781 So. 2d 358 (Ala. Crim. App. 2000) . Therefore, although the Board has nearly unfettered discretion in granting or denying parole. sufficiently pleaded claims that the Board has relied upon false information in its decision-making process are proper subject matter for petitions for a writ of certiorari filed in the Montgomery Circuit Court and appealed to this Court.

In *Strong*, the petitioner alleged that. in denying him parole, the Board had relied on information in his file that indicated that, while in prison, Strong had been convicted of escape. The petitioner attached an affidavit to his certiorari petition stating that a friend who had been present at the parole hearing told him that the Board "made reference to the escapes when it denied Strong's parole." *Strong*. 859 So. 2d at 1204, 2001 Ala. Crim. App. LEXIS 303 at *6 . Neither the circuit court nor the Board addressed the petitioner's claim. This Court remanded the cause for the circuit court to order the Board to respond to the allegation and, considering the Board's response, to decide the merits of Strong's allegation.

Unlike *Strong* , in this case, as the circuit court noted, the petitioner's claim is mere speculation in that he has not supported his claim with any evidence. Therefore, we affirm the circuit court's summary dismissal of the petition.

AFFIRMED.

McMillan, P.J., and Shaw, J., concur; Baschab, J., concurs specially, with opinion: Wise, J., concurs in the result.

Concur

#### Concur by:          **BASCHAB**

BASCHAB, JUDGE, concurring specially.

Because the majority appears to follow the current state of the law. I am forced to concur in the result.

© 2008 Matthew Bender & Company. Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

However, I also concur specially to urge a change in the law.

The Board argues that "there is no legal basis for a prisoner to seek judicial review of the Board's decision not to parole him." (Board's brief at p. 28.) Specifically, it contends that "the Alabama Legislature has given the Board of Pardons and Paroles discretionary authority to decide what prisoners may be paroled, and when, and under what conditions." (Board's brief at pp. 27-28.) Therefore, it concludes that "the decision to deny parole is not reviewable." (Board's brief at p. 25.) For the reasons set forth below, I agree that such a decision is not reviewable in a state court.

Section 15-22-24(a), Ala. Code 1975 , provides, in pertinent part:

"The Board of Pardons and Paroles, hereinafter referred to as 'the board,' shall be charged with the duty of determining what prisoners serving sentences in the jails and prisons of the State of Alabama may be released on parole and when and under what conditions."

Section 15-22-26, Ala. Code 1975 , provides, in pertinent part:

"No prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the Board of Pardons and Paroles is of the opinion that there is a reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society."

In *Thompson v. Board of Pardons and Paroles*, 806 So. 2d 374, 375 (Ala. 2001) , the Alabama Supreme Court held:

" Section 15-22-26 is a typical parole statute that gives the parole board *total discretion* in the granting of paroles. *Tedder v. Alabama Bd. of Pardons & Paroles*, 677 So. 2d 1261, 1263 (Ala. Crim. 2d 1996, App.) , cert. denied, 518 U.S. 1008, 116 S. Ct. 2531, 135 L. Ed. 2d 1054 (1996) ; see also *Thomas v. Sellers*, 691 F.2d 487, 488-89 (11th Cir. 1982) . Because the statute provides that parole may be granted at the board's discretion, it does not confer a liberty interest in parole that is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution . E.g., *Tedder*, 677 So. 2d at 1263 ."

(Emphasis added.) *See also Hill v. State*, 594 So. 2d 246 (Ala. Crim. App. 1992) . In *Henley v. State of Alabama Board of Pardons and Paroles*, 849 So. 2d 255, 2002 Ala. Crim. App. LEXIS 237 at *12 (Ala. Crim. App. 2002) , we noted:

"This rationale is also found in § 41-22-3(3) , which provides that the Board is not subject to provisions relating to due process at an administrative hearing when it 'considers the granting or denial of pardons, paroles or restoration of civil and political rights or remission of fines and forfeitures.'"

Thus, the opportunity to be released on parole is a privilege, or a matter of grace, rather than a right in Alabama. *Compare Coslett v. State*, 697 So. 2d 61, 64 (Ala. Crim. App. 1997) (holding that "the opportunity to earn 'good time' is a privilege, not a right, in Alabama").

Alabama courts have previously held that decisions that are totally discretionary are not reviewable on appeal. With regard to the initial grant or denial of probation, Alabama courts have repeatedly held that such a decision is a matter of grace that is entirely within the discretion of the trial court. *See Driggers v. State*, 344 So. 2d 226 (Ala. Crim. App. 1977) ; *Sparks v. State*, 40 Ala. App. 551, 119 So. 2d 596 (Ala. Ct. App. 1959) . *See also Rheuark v. State*, 625 So. 2d 1206 (Ala. Crim. App. 1993) ; *Alderman v. State*, 615 So. 2d 640 (Ala. Crim. App. 1992) ; *Morgan v. State*, 589 So. 2d 1315 (Ala. Crim. App. 1991) ; *Roden v. State*, 384 So. 2d 1248 (Ala. Crim. App. 1980) . The courts have also held that such decisions are not reviewable on appeal. *See Rheuark*, supra ; *Alderman*, supra ; *Morgan*, supra ; *Roden*, supra. Applying the same rules, this court has also held that "the refusal of a

1alcases                                                           3

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

trial court to amend its original sentencing order imposing a reverse split sentence to postpone the period of incarceration indefinitely does not involve the revocation of probation and there is no right to appeal from that refusal." *Thomas v. State*, 675 So. 2d 1341, 1342 (Ala. Crim. App. 1994) . Finally, with regard to the decision to refer a defendant to drug court, we have stated:

"We believe that, like the prosecutor's decision to permit a defendant to complete a treatment program, the prosecutor's decision to refer a defendant to drug court is solely within the prosecutor's discretion. That decision is not subject to appellate review."

   *C.D.C. v. State*, 821 So. 2d 1021, 1025 (Ala. Crim. App. 2001) (footnote omitted).

Because the initial decision to grant or deny parole lies completely within the Board's discretion, this court has previously questioned whether such a decision is reviewable. In *Henley v. State of Alabama Board of Pardons and Paroles*, [849 So. 2d 255, 261, 2002 Ala. Crim. App. LEXIS 237 (Ala. Crim. App. 2002) , we stated:

"After reviewing the Supreme Court's decisions in *Thompson [v. Board of Pardons & Paroles*, 806 So 2d 374 (Ala. 2001)] and *Ex parte Board of Pardons & Paroles*, [793 So. 2d 774 (Ala. 2000) ,] we question whether the Board's rulings denying parole are reviewable by a higher tribunal; especially given the Supreme Court's language in *Thompson* to the effect that the Board's parole decisions are totally discretionary. Cf. *Alderman v. State*, 615 So. 2d 640 (Ala. Crim. App. 1992) (the original grant or denial of /··· ··· ··· ···） probation is not reviewable on appeal because it is within the total discretion of the trial court)."

   We recognize that, in *Andrus v. Lambert*, 424 So. 2d 5, 9 (Ala. Crim. App. 1982) , this court held:

"While no constitutional or inherent right of a convicted person to be conditionally released prior to the expiration of a valid sentence exists, *Greenholtz v. Nebraska*, 442 U.S. 1, 7, 99 S. Ct. 2100, 2104, 60 L. Ed. 2d 668 (1979) , a prisoner has the right to be properly considered for parole. *Christopher v. U.S. Board of Parole*, 589 F.2d 924 (7th Cir. 1978) ; *Wallace v. Turner*, 525 F. Supp. 1072 (S.D. Fla. 1981) . The paroling authority must comply with constitutional requirements and may not determine parole eligibility on improper grounds. *Wallace v. Turner*, supra. A parole should not be denied for false, insufficient, or capricious reasons. *Christopher*, supra. "

However, in *Monroe v. Thigpen*, 932 F.2d 1437, 1442 (11th Cir. 1991) , the Court of Appeals for the Eleventh Circuit stated:

"It is true that the Alabama parole statute is framed in discretionary terms and therefore does not confer a liberty interest in parole. Ala. Code § 15-22-26 (1975); *Thomas*, 691 F.2d at 489 . Nevertheless, this discretion is not unlimited. A parole board may not engage in 'flagrant or unauthorized action.' *Thomas*, 691 F.2d at 489 .10 Section 15-22-26 cannot be read as granting the Board the discretion to rely upon false information in determining whether to grant parole. Therefore, by relying on the false information in Monroe's file, the Board has exceeded its authority under section 15-22-26 and treated Monroe arbitrarily and capriciously in violation of due process . *Thomas*, 691 F.2d at 489 .

---

"10 In *Andrus v. Lambert*, 424 So. 2d 5, 9 (Ala. Crim. App. 1982), the Alabama Court of Criminal Appeals stated that 'parole should not be denied for false, insufficient, or capricious reasons.' *Andrus* further states that a prisoner has a right to be properly considered for parole and that the 'paroling authority must comply with constitutional requirements and may not determine parole eligibility on improper grounds.' *Id.* at 9 . *Andrus* relied principally on a Seventh Circuit case, *Christopher v. United States Bd. of Parole*, 589 F.2d 924, 927 (7th Cir. 1978) . which was decided

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

before *Greenholtz*. supra. In *Christopher*, the Seventh Circuit noted that, under federal regulations, once a federal prisoner had been given an effective parole date his release could be denied only upon the occurrence of a few specified events. *Christopher* at 928 . The court held that these regulations created an expectancy of parole sufficient to trigger the protection of the Due Process Clause . *Id*. at 927 . Unlike the regulation at issue in *Christopher*, the Alabama parole statute creates no expectancy of parole entitled to the protections of the Due Process Clause . *Thomas*. *supra*. Moreover, the question of whether a state law creates a federally protected right does not depend exclusively on the construction of that law by state courts. *Ellard v. Alabama Bd. of Pardons and Paroles*, 824 F.2d 937, 944 & n. 7 (11th Cir.1987). cert. denied. 485 U.S. 981. 108 S. Ct. 1280, 99 L. Ed. 2d 491 (1988) . Accordingly. although we find *Andrus* instructive, we rely instead upon *Thomas*, supra. "

Finally. we point out that, in *Thomas v. Sellers*, 691 F.2d 487 (11th Cir. 1982) , the Court of Appeals for the Eleventh Circuit found that the Board's action in denying parole in that case had not been arbitrary and capricious. In so holding, it implied that the federal courts are the proper venue for determining whether a parole board has engaged in "flagrant or unauthorized action" in denying parole when it stated:

"We have stressed in the past that absent flagrant or unauthorized action by a parole board the discretionary power vested in a parole board will not be interfered with *by the Federal courts*."

691 F.2d at 488 (emphasis added).

Based on the Eleventh Circuit's holdings in *Monroe* and *Sellers* , we should overrule *Andrus* and its progeny, including *Graves v. Alabama Board of Pardons and Paroles*, 845 So. 2d 1, 2002 Ala. Crim. App. LEXIS 92 (Ala. Crim. App. 2002) : *Strong v. Alabama Board of Pardons and Paroles*, 859 So. 2d 1201, 2001 Ala. Crim. App. LEXIS 303 (Ala. Crim. App. 2001) : *Tucker v. Alabama Board of Pardons and Paroles*, 781 So. 2d 358 (Ala. Crim. App. 2000) ; *Tedder v. Alabama Board of Pardons and Paroles*, 677 So. 2d 1261 (Ala. Crim. App. 1996) ; and *Sloan v. Alabama Board of Pardons and Paroles*, 647 So. 2d 85 (Ala. Crim. App. 1994) . Because the initial decision to grant or deny parole is completely within the discretion of the Board. such a decision should not be reviewable by state courts. *See Braxton v. Josey*, 567 F. Supp. 1479. 1480 (D. Md. 1983) (noting that review was appropriate in federal court because "Maryland does not provide for judicial review of decisions to deny parole"). *Compare Quintero v. Board of Parole and Post-Prison Supervision*, 329 Or. 319, 986 P.2d 575, 579 (1999) (noting that state statute "provides that '*any* decision relating to a release date' is not subject to judicial review"). *Cf. Esensoy v. Board of Pardons and Paroles*, 793 So. 2d 774, 778 (Ala. 2000) (holding that "judicial review of the Board's denial of a request for remission of a fine or forfeiture is limited to those situations where the Board has failed to consider a request that it exercise its discretion or where there is justification for the court's exercising its equitable jurisdiction"); *Kirk v. State*, 536 So. 2d 118, 119 (Ala. Crim. App. 1987) (noting that, "although it has been held that parolees do not have a constitutionally protected liberty interest under Alabama's parole statutes, they nevertheless are entitled to a due process hearing when an attempt is made to revoke their parole"). Therefore. we should dismiss this appeal.

Footnotes

Footnotes

1    This case was originally assigned to another Judge on the Court of Criminal Appeals on November 4. 2002. It was transferred to Judge Cobb on February 14, 2003.

© 2008 Matthew Bender & Company. Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

lalcases                          6

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.