IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

**PATRICK JOSEPH CHAREST,**
    **Plaintiff,**

        Vs.                                  Case #2:07-cv-984-MHT

**ALABAMA BOARD OF**
**PARDONS & PAROLES, et al.,**
    **Defendants.**

**SPECIAL REPORT BY BILL WYNNE TO AMENDED COMPLAINT**

Comes now Bill Wynne, Chairman of the Alabama Board of Pardons and Paroles, in response to Plaintiff's Amended Complaint and shows unto the Court as follows:

## FACTS

Charest was considered for parole by a special panel of Board Members that left office in September 2006. Wynne was one of the Special Board Members that sat on the panel that considered the Plaintiff for parole on 12-6-2005. Charest was denied parole and brought this action challenging the denial. He amended his Complaint to include Bill Wynne as a defendant, raising the same claims as set out in the original Complaint.

Wynne denies Plaintiff's claims and demands strict proof thereof.

**CLAIMS PRESENTED**

Charest attempts to plead claims against Bill Wynne under the Due Process Clause, the Equal Protection Clause, and the *Ex Post Facto* Clause of the Constitution. The Due Process claims attempt to incorporate both procedural due process and substantive due process claims. In other words, Charest claims that the procedures were unfair, and deprived him of liberty without due process, and he claims that the Board relied on false information to deny parole. The allegedly false information is a statement by some person to the effect that Charest has not changed during the years he has been in prison. Charest also claims that he has been treated differently than unspecified persons whom he contends were similarly situated. However, he also complains that he is treated differently than prisoners who did not commit violent crimes. Charest also complains that the Parole Board changed its rules in 2002, so as to change the frequency of parole consideration after parole is denied the first time. Charest further makes conclusory allegations that the Board conspired with the Governor, Attorney General and a victims rights group to violate his rights listed rights.

## DEFENSES

### Sovereignty

The Eleventh Amendment of the U.S. Constitution prohibits Plaintiff from prosecuting this action against the State of Alabama. The Board of Pardons and Paroles is an arm of the State of Alabama, and is not subject to suit.

Furthermore, the State of Alabama is not a "person" that can be liable under 42 U.S.C. §1983, *Will vs. Mich. Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Even if the Board were not immune, it could not be sued under §1983, as that statute creates a cause of action only against "persons" who act under color of State law. The U.S. Supreme Court has expressly held that States are not persons within the meaning of the statute on which Plaintiff relies.

Wynne participated in the parole consideration hearing wherein Charest was denied parole on 12-6-2005. (See Exhibit "A" of Special Report – Board Order dated 12-6-2005). Wynne was a Special Board Member at the time and has subsequently been appointed to the Board as its Chairman.

Charest does not seek monetary damages against Wynne. Immunity defenses to such claims are reserved.

## Due Process

Wynne denies violating Plaintiff's due process rights.

Alabama law does not establish a liberty interest in the desire to be released on parole. That desire is not protected by due process, *Thompson vs. Ala. Bd. of Pardons & Paroles,* 806 So. 2d 374 (Ala. 2001). The Constitution does not require a "fair" process to decide whether to grant discretionary parole, S*locum v. Georgia State Board of Pardons and Paroles*, 678 F.2d 940, 942 (11th Cir.1982); *O'Kelley vs. Snow,* 53 F.3d 319 (11th Cir. 1995). Charest simply cannot state a claim for procedural due process violations when he does not enjoy a liberty interest protected by due process.

Charest also seeks to present a substantive due process claim under *Monroe vs. Thigpen,* 932 F.2d 1437 (11th Cir. 1991). To make out such a claim, he must identify some information that is in fact false, that the Board knew to be false, and that the Board relied upon in denying parole, *Jones vs. Ray,* 279 F.3d 944 (11th Cir. 2001). The alleged statement Charest has identified appears, in the context in which he presented it, to be a statement of someone's opinion rather than a statement of fact. It is not susceptible of being proven clearly true or false. In any event, he has not alleged that the Board, or Wynne, *knew* the statement to be false. The gist of his complaint is

4

that he believes the Board could have and should have adopted further procedural safeguards to determine whether the statement was true.

Even reading these averments as generously as possible, Charest fails to state a claim upon which relief can be granted.

## Equal Protection

Wynne denies violating Plaintiff's equal protection rights.

The Complaint alleges that Charest, who is serving life sentences for rape first degree and sodomy first degree, is treated differently than prisoners convicted of less serious crimes. He is simply not similarly situated to any such person. It is rational for the State of Alabama to treat violent offenders differently than less serious offenders. The Constitution does not prohibit dissimilar treatment of dissimilarly situated persons.

Charest's conclusory averment that he is treated differently than similarly situated persons is not sufficiently specific to state a claim. He simply fails to identify or describe a class of prisoners who can reasonably be considered to be similarly situated. In the absence of more specific factual averments, this ground fails to state a claim upon which relief can be granted, *Jones vs. Ray, supra.*

## Ex Post Facto

Wynne denies involvement in amending the Board's operating procedures. Wynne was not a member of the Board in any capacity when the Board's operating rules were amended in 2002. Wynne further denies violating the ex post facto clause by his actions in voting to deny Charest parole on 12-6-2005.

The *ex post facto* claims should have been presented within two years after Plaintiff knew or should have known that the 2002 amendments to the Board's guidelines could apply to Plaintiff, *Lovett vs. Ra,* 327 F.3d 1181 (11th Cir. 2003); *Porter vs. Ray,* 461 F.3d 1315 (11th Cir. 2006); *Brown vs. Ga. Bd. of Pardons & Paroles,* 335 F.3d 1259 (11th Cir. 2003).

The amendments at issue have been highly controversial for several years. There have been dozens of cases litigated over this issue, and there have been many news articles published over this issue. The three-year set-off guideline was first extended to five years in 2002, in a highly publicized meeting of the Board. This particular provision was the focus of animated debate during that meeting. The Board published its 2002 Operating Procedures on its internet website shortly after adopting the new guidelines. The subsequent amendment of these guidelines in 2004 was designed to improve the likelihood of a prisoner being given earlier consideration if

6

appropriate circumstances arose. These guidelines are currently published on the Board's website. It is difficult to imagine any Alabama prisoner not realizing, before the end of 2004 at the latest, that the Board had acted in early 2002 and again in early 2004, to amend the scheduling guidelines to extend the set-off window from three years to five years. The Board most recently amended and republished its Operating Procedures in February of 2004, but without extending the set-off window any further.

In designing the challenged provisions, the Board carefully followed the guidance of *Garner vs. Jones,* 120 S.Ct. 1362 (2000). The provision Plaintiff challenges is Art. VI, §11 of the Board's Operating Procedures. That provision reads as follows:

> 11. If parole has been denied, the Board shall determine whether and when the case shall next be docketed for consideration, not to exceed five (5) years. The case will be considered again as near as practicable to the specified month and year.

However, that provision must also be read in light of the provisions in Article II pertaining to rescheduling of consideration. The Board specifically provided that prisoners who had been set off longer than three years (which had been the longest set-off the Board used) should have an avenue available to get back on an earlier docket if circumstances changed. Article II establishes an organized review process to consider whether circumstances

7

have changed that would warrant consideration earlier than otherwise scheduled. Art. II, §7 provides as follows:

> 7. If the Board has denied or revoked parole, and scheduled the next consideration three years or more after denial or revocation, the Committee may consider earlier scheduling, but such review shall not begin earlier than eighteen months after the Board has denied or revoked parole.

The original version of this provision referred to cases scheduled *more than three years* after denial, and allowed the Review Committee to take these cases up *twenty-four months* after denial. The current version addresses cases set off "three years or more" and allows for further review after eighteen months.

Sections 2 and 5 of Article II also provide extraordinary means of bringing cases back on the docket, without regard to any minimum time periods established in the Board's Operating Procedures. The current version of the Operating Procedures, adopted in February of 2004, can be found on the Board's website at http://pardons.state.al.us/ALABPP.

The simple truth, as unpleasant as it may be for Charest, is that very few sex offenders are ever paroled, and those who are paroled usually spend significant time in prison before being released. This is consistent with §15-22-26, Ala. Code, in that it is difficult for the Board to say with any degree of confidence that they are persuaded that sex offenders are likely to obey

8

the law in the future or that their release is compatible with society's welfare. As a practical matter, it is even more difficult to persuade the Board that a prisoner presents an acceptable risk when he is an adult who raped and sodomized a teenager. Charest was convicted of raping and sodomizing a sixteen-year old girl who became intoxicated with beverages he had provided.

It is highly unlikely that Charest would be any more likely to be released in 2008 than he would be in 2010. He has not pled any facts that would support an inference that he is likely to be released if considered earlier. If his circumstances have materially changed, the Board has procedures in place whereby those changed circumstances can be weighed against the very heavy negative circumstances of his case.

Charest is serving life sentences for his crimes. He is not entitled to be released, and he is not entitled to be considered for release at any particular time. The Board has broad discretion to determine whether and when his release is compatible with society's welfare. If he is released on parole at all, he will have received a gift from the bounty of the State's mercy. His sentence was lawful and just, and we cannot say that his punishment is undeserved. It is conceivable that, at some point in the future, he may persuade a majority of the Board that he presents an acceptable risk. At this

9

point, however, there is no reason apparent to the Board that this time will come soon. In any event, the Board intends to periodically review his case to see whether his circumstances change for the better.

## Conspiracy

Wynne denies conspiring with anyone to violate Charest rights.

The Complaint contains conclusory allegations that a conspiracy exists between the Board, the Attorney General, and the nonprofit corporation known as VOCAL. There are no facts averred to support that conclusion. There are no facts to support that conclusion, which is simply erroneous.

## EVIDENTIARY MATERIALS

Attached hereto are copies of the following documents:

Exhibit 1    Affidavit of Bill Wynne dated 6-30-08

## CONCLUSION

Charest has sued the State of Alabama, which is immune from suit. The State is not a person subject to §1983 liability.

Wynne has denied Charest's allegations.

Charest does not enjoy a liberty interest protected by procedural due process, and his substantive due process claim is fatally flawed. The allegedly false statement is an opinion, rather than a fact, and he cannot establish that

Wynne knew this statement was false or that Wynne relied on that fact to determine to deny Charest parole.

Charest's equal protection claim is equally flawed. He is not entitled to be treated the same as less serious offenders, and he has not identified a person or class of similarly situated offenders who were treated better than he.

Charest *ex post facto* claim should have been presented years ago. Even if he could evade the two year limitations period, he simply cannot show that he is likely to suffer enhanced punishment as a result of the 2002 amendment of the Board's scheduling guidelines.

Bill Wynne respectfully moves the Court to enter judgment in his favor and to dismiss this action.

                Respectfully submitted,

                GREGORY O. GRIFFIN, SR.
                CHIEF COUNSEL

                s/STEVE SIRMON
                ASSISTANT ATTORNEY GENERAL
                State Bar#:  ASB-5949-S61S
                Ala. Bd. Pardons and Paroles
                301 South Ripley Street
                P.O. Box 302405
                Montgomery, Alabama 36130
                Telephone: (334) 242-8700
                steve.sirmon@paroles.alabama.gov

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Joseph Patrick Charest AIS#182262
Limestone Correctional Facility
28779 Nick Davis Road
Harvest, Alabama 35749-7009

Done this 2nd day of July 2008.

Respectfully submitted,

s/STEVE SIRMON
ASSISTANT ATTORNEY GENERAL
State Bar#:  ASB-5949-S61S
Ala. Bd. Pardons and Paroles
301 South Ripley Street
P.O. Box 302405
Montgomery, Alabama 36130
Telephone: (334) 242-8700
steve.sirmon@paroles.alabama.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

PATRICK JOSEPH CHAREST,
   Plaintiff,

Vs.                                     Case #2:07-cv-984-MHT

ALABAMA BOARD OF
PARDONS & PAROLES, et al.,
   Defendants.

AFFIDAVIT OF
Defendant
Bill Wynne Jr.

Comes now BILL WYNNE JR., Chairman of the Alabama Board of Pardons & Paroles, named as Defendant in this action, and shows unto the Court as follows:

"My name is Bill Wynne Jr.. I a the Chairman of the Alabama Board of Pardons & Paroles, appointed and confirmed as provided in §15-22-20, Ala. Code. In 2005 I was a member of the Board of Pardons and Paroles "Special Board". On 12-6-2005 I sat on the panel of Special Board members that considered Patrick Charest, AIS# 182262, for parole. I was not of the opinion that he could be released without violating the law, now was I of the opinion that his release was not incompatible with the welfare of society.

'I deny violating Mr. Charest's due process or equal protection rights in reviewing his file, receiving statutorily required in-put from certain elected officials and victims, in voting to deny his parole, or in any other respect.

1


EXHIBIT A

'I was not a Board member when the 2002 rules were adopted and had not input in their construction. I applied the rules in effect in 2005 when considering Mr. Charest for parole on 12-6-2005. I deny violating the ex post facto clause concerning Mr. Charest parole consideration.

'I deny conspiring with anyone concerning Mr. Charest's parole consideration. I deliberated with the other Board members on the panel that heard his case and voted to deny parole.

'I further deny relying on any "know" false information in making my decision concerning Mr. Charest's parole. Had I know of false information offered I would not have considered it in making my decision. I make my decision after reviewing Mr. Charest's file, conducting a hearing in an open public meeting, and forming my opinion concerning his release as stated above."

                                                _____
                                                BILL WYNNE JR.
                                                Chairman
                                                Ala. Board of Pardons and Paroles

**SWORN TO AND SUBSCRIBED** before me this ____ day of _____ 2008.

                                            _____
                                            **NOTARY PUBLIC**
                                            **Commission Expires:**_____